# United States Court of Appeals

*for the*

# Eleventh Circuit

IRA KLEIMAN, as the Personal Representative of the Estate of David Kleiman,

*Plaintiff/Appellant,*

– v. –

CRAIG WRIGHT,

*Defendant/Appellee.*

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO: 9:18-cv-80176-BB
(Hon. Beth Bloom)

# PLAINTIFF-APPELLANT'S MOTION TO FILE CORRECTED BRIEF

ANDREW BRENNER
BOIES SCHILLER FLEXNER LLP
100 SE 2nd Avenue, Suite 2800
Miami, Florida 33131
abrenner@bsfllp.com

DEVIN (VELVEL) FREEDMAN
ROCHE FREEDMAN LLP
1 SE 3rd Avenue, Suite 1240
Miami, Florida 33131
(305) 753-3675
vel@rochefreedman.com

KYLE W. ROCHE *(Pro Hac Vice)*
ROCHE FREEDMAN LLP
99 Park Avenue, Suite 1910
New York, New York 10016
kyle@rochefreedman.com

*Counsel for Plaintiff/Appellant*

Ira Kleiman v. Craig Wright, 22-11150

## <u>CERTIFICATE OF INTERESTED PERSONS AND</u><br><u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Produce 26.1 and Eleventh Circuit Rule 26.1-1, Appellant IRA KLEIMAN, as the Personal Representative of the Estate of David Kleiman, respectfully submits the following Certificate of Interested Parties and Corporate Disclosure Statement:

1. The Honorable Judge Beth Bloom, *U.S. District Judge*

2. Boies Schiller Flexner LLP, *Counsel for Plaintiff-Appellant*

3. Brenner, Andrew, *Counsel for Plaintiff-Appellant*

4. BTCN 1610-491 LLC (CE)

5. Delich, Joseph, *Counsel for Plaintiff-Appellant*

6. Devine Goodman & Rasco, LLP, *Counsel for non-party Andrew O'Hagan*

7. Economides, Constantine Philip *Counsel for Plaintiff-Appellant*

8. Estate of David Kleiman, *Plaintiff-Appellant*

9. Fernandez, Amanda Lara, *Counsel for Defendant-Appellee*

10. Fernandez, Michael*, Counsel for Defendant-Appellee*

11. Freedman, Velvel, *Counsel for Plaintiff-Appellant*

12. Glaser, Patricia, *Counsel for non-party John Doe*

C-1

Ira Kleiman v. Craig Wright, 22-11150

13. Glaser Weil Fink Howard Avchen & Shapiro LLP, *Counsel for non-party John Doe*

14. Harrison, Laselve, *Counsel for Plaintiff-Appellant*

15. *Holtzman, Alexander, *Counsel for Plaintiff-Appellant*

16. Kass, Zalman, *Counsel for Defendant-Appellee*

17. Kleiman, Ira, *Plaintiff-Appellant*

18. Lagos, Stephen, *Counsel for Plaintiff-Appellant*

19. Licata, Samantha, *Counsel for Plaintiff-Appellant*

20. Lohr, Whitney, *Counsel for Defendant-Appellee*

21. *Markoe, Zaharah*, Counsel for Defendant-Appellee*

22. McGovern, Amanda *Counsel for Defendant-Appellee*

23. Mestre, Jorge, *Counsel for Defendant-Appellee*

24. Payne, Darrell Winston, *Counsel for non-party John Doe*

25. Pritt, Maxwell, *Counsel for Plaintiff-Appellant*

26. Rasco, Guy Austin, *Counsel for non-party Andrew O'Hagan*

27. The Honorable Judge Bruce Reinhart, *U.S. District Magistrate Judge*

28. Rivero, Andres, *Counsel for Defendant-Appellee*

29. Rivero Mestre LLP, *Counsel for Defendant-Appellee*

30. Roche Freedman LLP, *Counsel for Plaintiff-Appellant*

31. Roche, Kyle, *Counsel for Plaintiff-Appellant*

C-2

Ira Kleiman v. Craig Wright, 22-11150

32. Rolnick, Alan, *Counsel for Defendant-Appellee*

33. Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., *Counsel for non-party John Doe*

34. Wright, Craig, *Defendant-Appellee*

35. Zack, Stephen, *Counsel for Plaintiff-Appellant*

\* = no longer involved in representation

Appellant certifies that no publicly traded company or corporation has an interest in the outcome of the case of appeal.

## <u>PLAINTIFF-APPELLANT'S MOTION TO FILE CORRECTED BRIEF</u>

Plaintiff-Appellant, IRA KLEIMAN, as personal representative of the Estate of David Kleiman, by and through his undersigned counsel, respectfully move pursuant to Fed. R. App. P. 27 for leave to file a corrected Opening Brief.  The grounds for this motion are as follows:

1. On August 17, 2023, Plaintiff-Appellant timely filed their Opening Brief in the above captioned matter.

2. Plaintiff-Appellant's Opening Brief contains certain citations errors.

   a. First, the cite to "P306" on page 4 was made in error.  The correct cite is ECF [611-20], at 82:9-12, 82:16-21, 88:8-17, 89:6-90:9, 99:21-100:9, 101:1-7, 144:23-145:4.

   b. Second, the cite to Trial Transcript Day 5 at 68:7-21 on page 17 is missing a docket number and should include ECF [841].

   c. Third, the docket cite ECF [840] Trial Tr. Day 4 at 17:20-23 on page 16 is missing a number and should read 17**4**:20-23.

   d. Fourth, the cites [840] Trial Tr. Day 4 at 84:1-2 and ECF [838] Trial Tr. Day 2 at 184:19-24 on page 47 were made in error should be removed.

1

e. Lastly, the cite to ECF [839] Day 3 Trial Tr. at 19:23-20:1 on page 4 should instead be ECF [611-14] at 49:13-50:19, 139:8-16, 140:1-3.

3. In order to correct the citation errors, Plaintiff-Appellant has prepared a corrected brief, attached hereto as Exhibit A.

4. Defendant-Appellee, through counsel, does not oppose this motion.

WHEREFORE, for the foregoing reasons, Plaintiff-Appellant respectfully requests leave to file a corrected brief.

DATED this 24th day of August 2022.

Respectfully Submitted,

*/s/ Devin (Velvel) Freedman*
Devin (Velvel) Freedman
ROCHE FREEDMAN LLP
1 SE 3rd Avenue, Suite 1240
Miami, Florida 33131
(305) 753-3675
vel@rochefreedman.com

Kyle W. Roche *(Pro Hac Vice)*
ROCHE FREEDMAN LLP
99 Park Avenue, Suite 1910
New York, New York 10016
kyle@rochefreedman.com

Andrew Brenner
BOIES SCHILLER FLEXNER LLP
100 SE 2nd Avenue, Suite 2800
Miami, Florida 33131
abrenner@bsfllp.com

2

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) as the brief contains 239 words, excluding those parts exempted by 11th Cir. Local R. 32-4.

This motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) as this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

*/s/ Devin (Velvel) Freedman*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 24, 2022, a copy of the motion was served on all counsel of record via CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

*/s/ Devin (Velvel) Freedman*

4

# EXHIBIT A

**22-11150**

# United States Court of Appeals

*for the*

# Eleventh Circuit

IRA KLEIMAN, as the Personal Representative of the Estate of David Kleiman,

*Plaintiff/Appellant,*

– v. –

CRAIG WRIGHT,

*Defendant/Appellee.*

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO: 9:18-cv-80176-BB
(Hon. Beth Bloom)

# CORRECTED INITIAL BRIEF OF APPELLANT

ANDREW BRENNER
BOIES SCHILLER FLEXNER LLP
100 SE 2nd Avenue, Suite 2800
Miami, Florida 33131
abrenner@bsfllp.com

DEVIN (VELVEL) FREEDMAN
ROCHE FREEDMAN LLP
1 SE 3rd Avenue, Suite 1240
Miami, Florida 33131
(305) 753-3675
vel@rochefreedman.com

KYLE W. ROCHE *(Pro Hac Vice)*
ROCHE FREEDMAN LLP
99 Park Avenue, Suite 1910
New York, New York 10016
kyle@rochefreedman.com

*Counsel for Plaintiff/Appellant*

Ira Kleiman v. Craig Wright, 22-11150

## <u>CERTIFICATE OF INTERESTED PERSONS AND</u>
## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Produce 26.1 and Eleventh Circuit Rule 26.1-1, Appellant IRA KLEIMAN, as the Personal Representative of the Estate of David Kleiman, respectfully submits the following Certificate of Interested Parties and Corporate Disclosure Statement:

1. The Honorable Judge Beth Bloom, *U.S. District Judge*

2. Boies Schiller Flexner LLP, *Counsel for Plaintiff-Appellant*

3. Brenner, Andrew, *Counsel for Plaintiff-Appellant*

4. BTCN 1610-491 LLC (CE)

5. Delich, Joseph, *Counsel for Plaintiff-Appellant*

6. Devine Goodman & Rasco, LLP, *Counsel for non-party Andrew O'Hagan*

7. Economides, Constantine Philip *Counsel for Plaintiff-Appellant*

8. Estate of David Kleiman, *Plaintiff-Appellant*

9. Fernandez, Amanda Lara, *Counsel for Defendant-Appellee*

10. Fernandez, Michael*, Counsel for Defendant-Appellee*

11. Freedman, Velvel, *Counsel for Plaintiff-Appellant*

12. Glaser, Patricia, *Counsel for non-party John Doe*

Ira Kleiman v. Craig Wright, 22-11150

13. Glaser Weil Fink Howard Avchen & Shapiro LLP, *Counsel for non-party John Doe*

14. Harrison, Laselve, *Counsel for Plaintiff-Appellant*

15. *Holtzman, Alexander, *Counsel for Plaintiff-Appellant*

16. Kass, Zalman, *Counsel for Defendant-Appellee*

17. Kleiman, Ira, *Plaintiff-Appellant*

18. Lagos, Stephen, *Counsel for Plaintiff-Appellant*

19. Licata, Samantha, *Counsel for Plaintiff-Appellant*

20. Lohr, Whitney, *Counsel for Defendant-Appellee*

21. *Markoe, Zaharah*, Counsel for Defendant-Appellee*

22. McGovern, Amanda *Counsel for Defendant-Appellee*

23. Mestre, Jorge, *Counsel for Defendant-Appellee*

24. Payne, Darrell Winston, *Counsel for non-party John Doe*

25. Pritt, Maxwell, *Counsel for Plaintiff-Appellant*

26. Rasco, Guy Austin, *Counsel for non-party Andrew O'Hagan*

27. The Honorable Judge Bruce Reinhart, *U.S. District Magistrate Judge*

28. Rivero, Andres, *Counsel for Defendant-Appellee*

29. Rivero Mestre LLP, *Counsel for Defendant-Appellee*

30. Roche Freedman LLP, *Counsel for Plaintiff-Appellant*

31. Roche, Kyle, *Counsel for Plaintiff-Appellant*

C-2

Ira Kleiman v. Craig Wright, 22-11150

32. Rolnick, Alan, *Counsel for Defendant-Appellee*

33. Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., *Counsel for non-party John Doe*

34. Wright, Craig, *Defendant-Appellee*

35. Zack, Stephen, *Counsel for Plaintiff-Appellant*

\* = no longer involved in representation

Appellant certifies that no publicly traded company or corporation has an interest in the outcome of the case of appeal.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant, IRA KLEIMAN, as Personal Representative of the Estate of David Kleiman, respectfully requests oral argument to assist the Court's consideration of issues raised in this appeal.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT.................................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ...................................i

TABLE OF AUTHORITIES ....................................................................iv

STATEMENT OF JURISDICTION..........................................................1

STATEMENT OF ISSUES ON APPEAL .................................................1

STATEMENT OF THE CASE....................................................................2

    I.      PROCEEDINGS BELOW ....................................................2

    II.     FACTUAL BACKGROUND ...............................................3

        A.     The Estate's Partnership Claim...................................3

        B.     Wright Engaged in Serial Misconduct Designed To
              Shield Him From Liability.............................................5

        C.     Wright Repeatedly Breached the Motion in Limine
              Order To Prejudice the Estate's Partnership Claim .................12

STANDARD OF REVIEW .....................................................................23

SUMMARY OF ARGUMENT ................................................................24

ARGUMENT ..........................................................................................26

    I.      The District Court erroneously instructed the jury on
        partnership formation .........................................................26

    II.     The District Court erroneously vacated the Magistrate
        Judge's issue sanctions.........................................................30

        A.     The District Judge misapplied Supreme Court and
              Eleventh Circuit sanctions precedent and applied an
              erroneous legal standard that conflicts with Rule 37...............34

B.      Even if the District Judge applied the correct legal standard, it still abused its discretion by vacating the Magistrate Judge's order imposing issue sanctions..................41

C.      The Magistrate Judge correctly found that no lesser sanction would suffice to address Wright's pervasive misconduct ..............................................................................43

III.   The District Court abused its discretion in denying the estate's motion for a new trial despite Wright's multiple, intentional violations of the *in limine* order ........................................45

A.      A new trial should be ordered, because Wright's multiple, intentional violations of the *in limine* order influenced the jury's dispassionate consideration of the case ..............................................................................47

1.    The Estate did not waive the issue ..................................47

2.    The violations were of sufficient magnitude to warrant a new trial ........................................................49

CONCLUSION ............................................................................54

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Adamson v. R.J. Reynolds Tobacco Co.*,
  325 So. 3d 887 (Fla. Dist. Ct. App. 2021), *rev. denied*, 2021 WL 6140352
  (Fla. Dec. 30, 2021) .......................................................................... 44-45

*Alabama Aircraft Indus., Inc. v. Boeing Co.*,
  2022 WL 433457 (11th Cir. Feb. 14, 2022) ........................................ 23

*Allstate Ins. Co. v. James*,
  845 F.2d 315 (11th Cir. 1988) ............................................... 46, 52-53

*Chilcutt v. United States*,
  4 F.3d 1313 (5th Cir. 1993) ................................................................. 37

*Christopher v. Florida*,
  449 F.3d 1360 (11th Cir. 2006) ........................................................... 49

*City of Cleveland v. Peter Kiewit Sons' Co.*,
  624 F.2d 749 (6th Cir. 1980) ............................................................... 46

*Cox v. Target Corp.*,
  351 F. App'x 381 (11th Cir. 2009) ...................................................... 44

*Devaney v. Cont'l Am. Ins. Co.*,
  989 F.2d 1154 (11th Cir. 1993) ........................................................... 23

*Dreyfuss v. Dreyfuss*,
  701 So. 2d 437 (Fla. 3d DCA 1997) .................................................... 29

*Feeassco, LLC v. Steel Network, Inc.*,
  264 N.C. App. 327 (2019) ............................................................. 37, 38

*Fencorp Co. v. Ohio Kentucky Oil Corp.*,
  675 F.3d 933 (6th Cir. 2012) ............................................................... 37

*Flury v. Daimler Chrysler Corp.*,
  427 F.3d 939 (11th Cir. 2005) ............................................................. 24

*Fuente Cigar, Ltd. v. Roadway Exp., Inc.*,
  961 F.2d 1558 (11th Cir. 1992) ........................................................... 23

*Fuentes v. Classica Cruise Operator Ltd., Inc.*,
  32 F.4th 1311 (11th Cir. 2022) ........................................................... 43

iv

*Gen. Ins. Co. of Am. v. E. Consol. Utilities, Inc.*,
126 F.3d 215 (3d Cir. 1997) ....................................................................37

*Goodman v. Safeco Insurance Co. of Illinois*,
2015 WL 898696 (M.D. Fla. Mar. 3, 2015) .........................................49

*Hammond Packing Co. v. State of Arkansas*,
212 U.S. 322 (1909) ..................................................................................35

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
999 F.3d 1247 (11th Cir.) .........................................................................23

*In re KeyTronics*,
744 N.W.2d 425 (Neb. 2008) ..................................................................29

*Ingram v. Deere*,
288 S.W.3d 886 (Tex. 2009) ...................................................................28

*Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*,
456 U.S. 694 (1982) ......................................................................... passim

*Kislak v. Kreedian*,
95 So.2d 510 (Fla. 1957) ........................................................ 27, 28, 29

*Kucel v. Walter E. Heller & Co.*,
813 F.2d 67 (5th Cir. 1987) .....................................................................48

*Lawler v. Alexander*,
698 F.2d 439 (11th Cir. 1983) ................................................................48

*Lizarazo v. Miami-Dade Corr. & Rehab. Dep't*,
878 F.3d 1008 (11th Cir. 2017) ..............................................................24

*McWhorter v. City of Birmingham*,
906 F.2d 674 (11th Cir. 1990) ................................................................49

*Mega Life & Health Ins. Co. v. Pieniozek*,
585 F.3d 1399 (11th Cir. 2009) ..............................................................23

*National Hockey League v. Metropolitan Hockey Club, Inc.*,
427 U.S. 639 (1976) ..................................................................................40

*O'Rear v. Fruehauf Corp.*,
554 F.2d 1304 (5th Cir. 1977) ................................................................53

*Pinnacle Port Cmty. Ass'n., Inc. v. Orenstein*,
872 F.2d 1536 (11th Cir. 1989) ..............................................................27

*Rafael J. Roca, P.A. v. Lytal & Reiter, Clark, Roca, Fountain & Williams*,
  856 So.2d 1 (Fla. 4th DCA 2003) ...........................................................28

*Reilly v. Meffe*,
  6 F. Supp. 3d 760 (S.D. Ohio 2014) ....................................................28

*Ruiz v. Wing*,
  991 F.3d 1130 (11th Cir. 2021) ...........................................................45

*S. New England Tel. Co. v. Glob. NAPs Inc.*,
  624 F.3d 123 (2d Cir. 2010) ...............................................................40

*SEC v. Yun*,
  327 F.3d 1263 (11th Cir. 2003) ...........................................................23

*Serra Chevrolet, Inc. v. General Motors Corp.*,
  446 F.3d 1137 (11th Cir. 2006) .................................................. *passim*

*Simmons v. Bradshaw*,
  879 F.3d 1157 (11th Cir. 2018) ................................................ 23, 26, 30

*Singh v. Caribbean Airlines Ltd.*,
  13-CV-20639, 2014 WL 4101544 (S.D. Fla. Jan. 28, 2014) .............................53

*Smith v. Sch. Bd. of Orange Cnty.*,
  487 F.3d 1361 (11th Cir. 2007) ...........................................................39

*Stewart & Stevenson Servs., Inc. v. Pickard*,
  749 F.2d 635 (11th Cir. 1984) ...........................................................48

*United States v. Hernandez*,
  921 F.2d 1569 (11th Cir. 1991) ...........................................................48

*Vinson v. Koch Foods of Alabama, LLC*,
  12 F.4th 1270 (11th Cir. 2021) ............................................. 24, 45, 51

*Williams v. Obstfeld*,
  314 F.3d 1270 (11th Cir. 2002) ...........................................................29

*Yaffa v. Weidner*,
  717 F. App'x 878 (11th Cir. 2017) ......................................................36

**Statutes and Other Authorities:**

28 U.S.C. § 1291 ...............................................................................1

28 U.S.C. § 1332 ...............................................................................1

Fed. R. Civ. P. 26(c)(3) ......................................................................32

vi

Fed. R. Civ. P. 37 ............................................................................ *passim*

Fed. R. Civ. P. 37(a)(5)(A) ................................................................32

Fed. R. Civ. P. 37(b)(2) ............................................................... 35, 36

Fed. R. Civ. P. 37(b)(2)(A) ......................................................... 35, 43

Fed. R. Civ. P. 37(b)(2)(A)(i) ................................................ 35, 36, 37

Fed. R. Civ. P. 37(b)(2)(A)(iii) .........................................................36

Fed. R. Civ. P. 72(a) .........................................................................39

Fed. R. Civ. P. 103(b) .......................................................................48

Fla. Stat. § 620.8001 .........................................................................26

Fla. Stat. § 620.8202(1) .....................................................................27

Fla. Stat. § 620.8202(3)(c) .................................................................27

Fla. Stat. § 620.9902 .........................................................................29

Fla. Std. Jury Instr. in Civil Case 401.14(d) (Feb. 1, 2018) .................28

RUPA § 202 .......................................................................................27

Carolina Bolado, *No Proof Bitcoin 'Inventor' Owed Friend, Juror Tells Law360*, Law360, Dec. 23, 2021 ........................................... 21, 50, 51

Cheyenne Ligon, *Day 4 of Kleiman v. Wright: Craig Wright's Testimony Delayed*, Yahoo!, Nov. 4, 2021 .................................................19

Coingeek, *Kleiman vs Wright*, YouTube (last visited Jan. 1, 2022) ......................20

Jordan Atkins, *Satoshi Nakamoto Trial, the Biggest Revelations From Week 1 of Kleiman v Wright*, Coingeek, Nov. 6, 2021 ........................21

Patrick Thompson, *Ira Kleiman Shows Up on Day 3 of Kleiman v Wright Trial*, Coingeek, Nov. 4, 2021 ................................................20

Patrick Thompson, *Kleiman v Wright Day 4 Recap: What Ira Kleiman Knew About Dave Kleiman*, Coingeek, Nov. 5, 2021 ......................20

Steven Stradbrooke, *Ira Kleiman Serves Up a Bitcoin Turkey in Wright Lawsuit Testimony*, Coingeek, Nov. 5, 2021 .................................19

## STATEMENT OF JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §1291. The District Court entered final judgment on December 7, 2021, and an amended final judgment on March 9, 2022. The Estate of David Kleiman (the "Estate") timely filed a Notice of Appeal on April 8, 2022. The District Court had diversity jurisdiction under 28 U.S.C. §1332 because the amount in controversy exceeds $75,000, the Estate is administered under Florida law, and Appellee is a U.K. citizen.

## STATEMENT OF ISSUES ON APPEAL

1.   Did the District Court err by instructing the jury under prior partnership law (which required proof of five specific factors) instead of under the current law (which adopts a totality of the circumstances approach, with no factor deemed "required")?

2.   After affirming the Magistrate Judge's findings that Appellee's testimony was "intentionally false" and "part of a sustained and concerted effort to impede discovery, all of which resulted in prejudice to the Estate's ability to prove its case," did the District Court err by vacating issue sanctions imposed by the Magistrate Judge?

3.   Did the District Court err by denying a new trial despite Appellee's multiple, intentional violations of the *in limine* order, which clearly and improperly influenced the jury's dispassionate consideration of the case?

1

## STATEMENT OF THE CASE

### I.    PROCEEDINGS BELOW

The Estate, along with W&K Info Defense Research LLC ("W&K"), commenced this action against Craig Wright ("Wright") on February 14, 2018. At its core, the dispute concerns the ownership of certain bitcoin and blockchain-related technology: Wright claimed to be the sole owner of the assets at issue, while the Estate claimed that, as a result of a partnership between the decedent, David Kleiman ("David"), and Wright, it owns half of the bitcoin, and W&K claimed that it was the rightful owner of the relevant blockchain-related intellectual property.

As detailed below, the Estate's ability to prosecute this matter was severely impeded not only by Wright's failure to comply with basic discovery obligations, but also by his disregard of Court orders compelling his compliance. In imposing sanctions against Wright, Magistrate Judge Reinhart ultimately found—by clear and convincing evidence—that Wright repeatedly perjured himself, submitted forged documents to the Court, and willfully refused to comply with discovery. These factual findings were affirmed by the District Court (Bloom, J.), which nevertheless vacated Judge Reinhart's order to the extent that it deemed certain facts established in the Estate's favor.

The case proceeded to a jury trial, which lasted from November 1 to November 23, 2021. On December 6, the jury reached its verdict, finding for W&K

2

on its conversion claim, but otherwise finding for Wright. With respect to W&K's conversion claim, the jury awarded W&K $100 million in compensatory damages; that amount was reduced to a Final Judgment, which was later amended to include an additional $43 million in prejudgment interest. Post-judgment interest continues to accrue, as Wright—a self-described billionaire—has refused to make a single payment.

On January 4, 2022, the Estate—but not W&K—moved for a new trial. That motion was denied on February 28, 2022, and the Estate timely filed its Notice of Appeal on April 8.

## II.     FACTUAL BACKGROUND

### A. The Estate's Partnership Claim.

This appeal focuses on the Estate's claims that Wright and David formed a partnership to mine bitcoin. As set forth below, the Court erroneously instructed the jury on the elements of a partnership, forcing the Estate to prove things it should not have been required to prove. This error was exacerbated by the Court's failure to (i) properly address Wright's discovery misconduct (including repeated perjury, forgery, and refusal to provide discovery), and (ii) remediate the prejudice these actions caused the Estate. To be sure, Wright's discovery misconduct is beyond dispute: it was found by the Magistrate Judge by clear and convincing evidence after an in-person hearing at which Wright testified, and affirmed by the District Court,

and it was not appealed by Wright. What *is* at issue here is the District Court's failure to address Wright's misconduct appropriately, which allowed Wright to avoid liability to the Estate for his theft of his former business partner's bitcoin.

To understand the prejudice Wright's misconduct caused the Estate, it is important to understand the Estate's partnership claim as it related to bitcoin mining. In the years in which the bitcoin at issue was mined, from approximately 2009 to 2013, Wright repeatedly referred to David as his "partner," including in the context of bitcoin mining, and otherwise affirmed that he and David jointly mined bitcoin. For example:

- Wright told the CFO of his company that David and he mined bitcoin together (ECF [611-14] at 49:13-50:19, 139:8-16, 140:1-3);

- Wright told a journalist writing a long-form piece on him and his involvement with the creation of Bitcoin, that he and David mined bitcoin together (ECF [611-20], at 82:9-12, 82:16-21, 88:8-17, 89:6-90:9, 99:21-100:9, 101:1-7, 144:23-145:4);

- Wright told his wife and his lawyer that David handled their bitcoin mining (P149 at 1);

- Wright told the Australian police that David was in charge of their bitcoin mining (P464 at 7, 31-32);

- Wright told the Australian Tax Office (referred to throughout trial as the "ATO") that the bitcoin he controlled was mined in the United States, where David lived and he did not, and that David mined bitcoin for them (P189 at 1; P172 at 7; P173 at 7);

- After David died, Wright told David's best friends that David mined bitcoin for both of them (P122 at 4), and he later confirmed this to David's brother and personal representative of David's Estate, Ira Kleiman (P161 at 1).

Had the jury been instructed appropriately, the above admissions would surely have been sufficient to establish a partnership to mine bitcoin. Further, Wright's discovery misconduct (discussed below), and the Court's unwillingness to remediate it adequately, made proof of the partnership elements required in the Court's erroneous instruction too difficult to overcome.

## B. Wright Engaged in Serial Misconduct Designed To Shield Him From Liability.

Wright's misconduct ran unabated throughout the case, even during trial. For example, Wright filed four dispositive motions—two motions to dismiss, one motion for judgment on the pleadings, and one motion for summary judgment, and supported *each* of them with either false sworn statements or fabricated evidence. In support of his original motion to dismiss on personal jurisdiction, Wright submitted a sworn declaration claiming no relationship with W&K (ECF [012-2], at 2), which was directly contrary to a sworn declaration he submitted to courts in

Australia (ECF [083], at ¶¶160-170 (providing detailed description of perjury)).  In other words, Wright lied, under oath to try to defeat jurisdiction.

 He then submitted another perjurious declaration supporting his second motion to dismiss for *forum non conveniens*, in which he falsely swore he had "no documents" from "any ATO investigation." ECF [033-3] at ¶18. Discovery revealed the magnitude of the deception:  Wright had thousands of documents from the ATO.  ECF [127], at 7-8.  Again, he lied, under oath, to the Court.

 Later, Wright pivoted from perjury to forgery, submitting two forged exhibits in support of his motion for judgment on the pleadings.  *See* ECF [144-1]; [144-6]. Wright withdrew these documents when they were publicly exposed as forgeries. *See* ECF No [159], [154], and [242-2].  In denying Wright's motion and discussing Wright's pattern of deception, the District Court quoted Sir Walter Scott's *Marmion*: "Oh! What a tangled web we weave when first we practice to deceive." ECF [265], at 4, 10.

 Undeterred, Wright then moved for summary judgment.  There, in support of an argument that the Court lacked diversity jurisdiction, he submitted an alleged Australian "divorce decree" between Wright and his ex-wife from June 2011 that referenced her alleged interest in W&K.  ECF [488-17] at 147-148.  But the Estate and W&K obtained the Wrights' divorce records directly from the Federal Circuit

Court of Australia, which state there were not <u>any "binding</u> <u>agreements. . . . about</u> <u>family law . . . involving any of the parties.</u>" ECF [507-1], at Part E.21.[1]

Wright's pattern of lies came to head when he refused, despite the Magistrate's order ("Order"), to produce a list of the bitcoin he claimed to have mined (which the Estate alleged was mined as part of a partnership with David Kleiman).

Wright first argued that he was unable to comply with the Order, stating that "[i]n 2011, Dr. Wright transferred ownership of all of his Bitcoin into a blind trust [called the Tulip Trust] and that he was "not a trustee or a beneficiary of the blind trust." ECF [217] at 2. But those representations directly contradicted deposition testimony Wright gave just weeks earlier, when he swore that (1) he never put any bitcoin into a trust,[2] and (2) the trust he referred to as the "Tulip Trust" never came to hold the private keys to bitcoin addresses.[3] *See* ECF [373], at 4. When the Magistrate Judge did not accept this claim, Wright submitted a sworn statement

---

[1] This is by no means the extent of Wright's forgeries or perjury. *See generally* ECF [265].

[2] ECF [312-1], at 294:1-18 ("Q. Did you put Bitcoin into the trust in 2011? No. Q. Did you put Bitcoin into the trust in 2012? No. Q. Did you ever put Bitcoin into the trust? No. Q. Did anyone ever put Bitcoin into the trust? No.")

[3] ECF [312-1], at 294:20-295:6 ("Q. Did the Tulip Trust ever come to hold private keys to Bitcoin wallets? No. Q. Did it ever come to own or possess private keys to Bitcoin addresses? No. Q. What is the relationship between the Tulip Trust and Bitcoin? What the hell does that question even mean?")

that—incredibly—contradicted both his prior assertion and his deposition testimony. Specifically, he now affirmed to the Court that he (i) *did* put bitcoin into the trusts and that he *was* both (ii) a trustee and (iii) a beneficiary of the trusts.[4] But, he still said he could not comply with the Order, asserting the bitcoin remained locked in an encrypted file that could only be accessed with cooperation from a group of trustees.

Ultimately, the Magistrate Judge ordered Wright to produce documents to support his "impossibility" claims and set an evidentiary hearing on the issue. At that hearing, Wright "testified that it was impossible to comply with the Court's Orders regarding his Bitcoin Holdings" because he needed eight "key slices" to unlock the "encrypted file," but only had seven. ECF [373] at 9; ECF [236] at 125.

Dr. Matthew Edman, a cybersecurity engineer and forensic expert, also testified at the hearing. He explained that the trust documents, as well as other documents that Wright produced in response to the Order, and that Wright had relied

---

[4] ECF [222] (redacted) at ¶ 5; ("a formal trust document was executed, creating a trust whose corpus included the Bitcoin that I mined, acquired and would acquire in the future. The name of that trust is Tulip Trust."); *id.* at ¶ 7 ("the trustees for Tulip Trust 1 are . . . Craig Steven Wright . . . Satoshi Nakamoto (i.e., Craig Wright)."); *id*. at ¶ 14 ("I am the contact person for both beneficiaries"); *id.* at ¶ 20 ("the primary beneficiaries of Tulip Trust II are me and my wife . . .").

on to support his "impossibility" argument, were forgeries.  ECF [332], at 13-15 (detailing the evidence demonstrating the forgeries).

At the conclusion of the show cause hearing, the Magistrate Judge found, by clear and convincing evidence, that Wright had "intentionally submitted fraudulent documents to the Court, obstructed a judicial proceeding, and gave perjurious testimony."  ECF [277], at 28.  He also found Wright's testimony" was "intentionally false," and "part of a sustained and concerted effort to impede discovery . . . ."  *Id.* at 21.

The Magistrate Judge concluded that Wright's misconduct was "willful and in bad faith", and he imposed sanctions under Fed. R. Civ. P. 37, deeming the following facts established (the "Deemed Facts"): Wright and David Kleiman "entered into a 50/50 partnership to develop Bitcoin intellectual property and to mine bitcoin"; "all bitcoin mined" and "any Bitcoin-related intellectual property developed" by Wright prior to David's death "was property of the partnership," and the Estate retained "an ownership interest in the partnership's bitcoin, and any assets traceable to them."  *Id*.  The Magistrate Judge concluded that the Estate and W&K had been prejudiced, and that a lesser sanction was not adequate to punish or to ensure future compliance with the Court's Orders."  *Id*. at 27.  Minutes after the order was entered, Wright confirmed the veracity of the Magistrate Judge's findings in an interview with journalist Brendan Sullivan.  There, Wright indicated

9

he could in fact access his bitcoin but had elected not to, so that he would not "tank[] the market." ECF [332], at 17.

Shortly thereafter, Wright objected to the sanctions order. Although the District Court "agree[d] with [the Magistrate Judge's] credibility findings relating to [Wright]," ECF [373] at 15, and agreed that sanctions were warranted, it vacated the Deemed Facts part of the sanctions and instead left the sanction at just payment of attorney's fees associated with the discovery issue. The Court agreed to "indulge" Wright in yet another new story he concocted in his objection about an unknown bonded courier with the last key slice, and provided him until February 3, 2020 to "file a notice indicating whether or not this mysterious figure has appeared from the shadows and whether [Wright] now has access to the last key slice needed to unlock the encrypted file." *Id*. at 22. The Court told Wright it would leave sanctions at just attorney's fees if the courier arrived, but if not, it would "inform the jury of the [Wright]'s failure to disclose" the evidence. *Id* at 22.

Just four days later, Wright informed the Court "that a third party ha[d] provided the necessary information and key slice to unlock the encrypted file . . . ." ECF [376].

But the Notice of Compliance was y e t another egregious misrepresentation directly to the Court. No "key slice" had been turned over as Wright had claimed—instead Wright's wife supposedly requested a copy of his bitcoin holdings from a

Kenyan lawyer, who provided her with a *new* encrypted file that contained a list of Wright's bitcoin holdings. *See* ECF [404-1], at 4-7; [507-8]. The notice was thus a clear attempt to deceive the Court into believing that the "mysterious figure" had in fact "appeared from the shadows" and thus further sanctions were not warranted.

Perhaps as troubling, as explained in detail in ECF [507] and [541], this new list was also a forgery. Indeed, even Wright subsequently disavowed this list at trial. *See generally* ECF [843] Trial Tr. Day 7 at 152-154:19.

Wright's incessant forgeries and perjury deprived the Estate of evidence it needed to prove its claims, and Wright's only repercussion was to pay less than $166,000 in attorneys' fees. And, as set forth above, Wright's misconduct continued even *after* the District Court vacated the non-monetary sanctions imposed by the Magistrate Judge.

This Court cannot allow a litigant to flout the rules, perjure himself, submit forged documents to the courts and litigants, time and time again, all in an effort to avoid liability for billions of dollars in claims. It is a sad, but inescapable, conclusion that Wright has determined his misconduct is worth it as he continues to this day to make a mockery of the process. Wright must be made to understand that perjury, forgery, and purposeful obfuscation are not "efficient" breaches.

**C. Wright Repeatedly Breached the Motion in Limine Order To Prejudice the Estate's Partnership Claim.**

Before trial, the Estate correctly surmised that Wright would try to smear the relationship between Ira Kleiman ("Ira"), the personal representative of the Estate, and his brother, David, to paint Ira as an undeserving plaintiff. Of course, this relationship was irrelevant to any issue in the case. Accordingly, the Estate moved before trial to preclude Wright from presenting evidence regarding Ira's and David's relationship.

The District Court granted that motion and rendered a clear, definitive *in limine* order excluding evidence relating to the relationship. Notwithstanding this clear order, Wright intentionally violated it at least 10 times (despite several sustained objections to improper questions), thereby severely prejudicing the Estate.

Despite the clarity of the Court's order, Wright violated it multiple times during the trial. Wright's counsel first *tried* to inject the sibling relationship issue in opening statements, arguing to the Court that the Estate had opened the door to its introduction, which the Court rejected. ECF [837] Trial Tr. Day 1 at 210:16–211:21. Undeterred, Wright's counsel then asked Ira Kleiman twice in the very first moments of his cross-examination (his fourth and fifth questions) to confirm that despite Dave's death in 2013, a Thanksgiving dinner in 2009 was the "last day [Ira] saw his brother in life." While the Estate immediately objected to both questions, the objections were overruled and the Estate's request for sidebar denied without explanation:

12

Q. All right. You spoke very little -- if I remember correctly, the only thing you commented on in the period between 2008 and April of 2013 is Thanksgiving Day 2009; isn't that right?

A. Yes.

Q. Okay. And that was a -- that was November 26th, 2009, right?

A. Correct.

**Q. Okay. And you know that date because that's the last day you saw your brother in life, correct?**

MR. BRENNER: Objection. May we approach?

MR. RIVERO: Judge, I'll --

THE COURT: The objection is overruled at this point.

BY MR. RIVERO:

Q. Sir?

A. I'm not exactly certain if that's the very last day. But that's the -- I guess the best memory of last seeing him. I may have seen him other times after that, but I just don't recall it.

**Q. Sir, your testimony under oath and your best**

13

**memory is that that was the last day you saw your**

**brother in life, is it not?**

MR. BRENNER:  Same objection, Your Honor.

THE WITNESS:  Like I said, I'm not certain that that was

--

THE COURT:  The objection is noted.  It's overruled at

this point.

THE WITNESS:  I could have possibly seen him other

days.

ECF [839] Trial Tr. Day 3 at 149:22–150:24 (emphasis added).

The cross examination of Ira continued the next day.  Wright's counsel circled

back to this forbidden issue twice more, asking Ira whether Thanksgiving 2009 was

the last time he saw David in person.  Only then was a renewed objection to the

question sustained.  ECF [840] Trial Tr. Day 4 at 23:12–24:1 (emphasis added).  The

need for the Estate to object three times to this issue that the Court had already

clearly ruled on, and thereby highlight any perceived issue in the sibling relationship,

was exactly what the motion *in limine* and resulting order was meant to prevent.

Later that same day, Wright's counsel again violated the order, asking Ira a

question the Court expressly forbid:

**Q. You never saw him in the hospital?**

14

A. No.

ECF [840] Trial Tr. Day 4 at 84:1–2 (emphasis added); *compare* ECF [623], at 16 ("Indeed, whether Ira Kleiman visited his brother at the hospital . . . has limited probative value but substantial capacity to cause undue prejudice.").

Wright used every opportunity to suggest to the jury, in violation of the motion *in limine* order, that there was an estrangement between David and Ira. For example, although probative of no claim or defense in the case, Wright had Ira confirm that he didn't find out that Dave had died until days after he'd passed away and his body has been found. Further demonstrating Wright's intentional disregard of the court's *in limine* order was their failure to redact forbidden portions of exhibits. For example, Wright specifically highlighted portions of an exhibit the Court held violated its order on the motion *in limine* regarding the brothers' relationship, and later ordered that portion redacted (*see* ECF [828-3]):

> Q. Mr. Kleiman --
>
> **MR. RIVERO: Mr. Shah, if you could highlight the first two sentences of Paragraph 3**.
>
> BY MR. RIVERO:
>
> **Q. "Ira is David's brother. He had limited contact and personal knowledge as to David's financial affairs throughout David's life." Correct?**

A. Correct.

MR. BRENNER:  Your Honor, I have to ask to approach.

THE COURT:  I'm sorry?

MR. BRENNER:  I have to ask to approach, Your Honor,

and ask that it be taken down during the sidebar.

THE COURT:  All right. If we can take it down for a

moment.

ECF [840] Trial Tr. Day 4 at 173:13–25 (emphasis added).  On sidebar, the Court

stated that such information "certainly talks about the sibling relationship" and that

it "was directly what the Court ruled upon with regard to the motion in limine."  ECF

[840] Trial Tr. Day 4 at 174:20-23.  Wright also showed the jury—unredacted—

portions of the exhibit stating that "**Ira never saw [David] at the hospital**" and

"**may have seen David one time when David took a leave from the hospital**,"

both of which were later redacted as inconsistent with the Court's order.  *Compare*

D008 (emphasis added) *with* ECF [828-3].

The next day, Wright's counsel one again took the opportunity to insinuate

improperly that Ira did not speak with David as frequently as a deserving brother

should during the last year of David's life:

BY MR. RIVERO:

Q. Mr. Kleiman, before I come back to these email

16

exchanges between your brother and Craig Wright, I just want to talk with you about one other subject and that is your telephone communications with David Kleiman. **Would you agree with me that between March 12 and April 7th, 2013, on the cell phone at least, you spoke with David Kleiman six times?**

A. What time again?

**Q. This is between -- this is in the last year, the last 13 months of your brother's life.**

MR. BRENNER:  Objection, Your Honor.  Subject to court order.

THE COURT:  The objection is sustained.

MR. RIVERO:  I'll move on.

ECF [841] Trial Tr. Day 5 at 68:7–21 (emphasis added).

The misconduct was not constrained to the cross-examination of Ira Kleiman because counsel also asked David Kleiman's friend, Patrick Paige, about whether he had heard from David about Ira over the course of the relationship between Paige and David:

Q. So you knew David Kleiman for about 20 years.

A. Yeah. I believe it was about 20 years.

17

**Q. During that time, how many times did you hear of Ira Kleiman?**

**A. I can't really recall of any offhand, other than he had a brother.**

ECF [838] Trial Tr. Day 2 at 184:19–24 (emphasis added).

Unlike Wright, the Estate was careful not to introduce evidence about the sibling relationship, which would have revealed that the relationship Wright tried to paint as estranged was a multifaceted relationship with strong positive aspects as well. For example, Ira was very often in touch with David while the latter was in the hospital, including more than 100 phone calls between the two just during David's final hospitalization. *See, e.g.*, P721. And the Estate did not highlight how David's decision to make Ira the sole beneficiary of his estate, his personal representative, and his healthcare proxy likewise reflected positively on the brothers' relationship. *See* JE22 at 3 (last will and testament naming Ira as personal representative of the estate and sole beneficiary); D099 at 787; D102 at 25, 173 ("According to Mr. Kleiman, his brother Ira is his health care surrogate."), 184 (same), 274 ("Mr. Kleiman appointed his brother Ira Kleiman, as his health care surrogate."), 277. The Estate was punished, in effect, for complying with the Court's order in not introducing evidence of the brothers' relationship while Wright

disregarded that ruling.[5]

These violations were salient, intentional, and not subtle.  For example, the sibling relationship was extensively explored in media coverage of the trial.  Yahoo News, for example, reported that "Andres Rivero, lead counsel for Wright's defense, focused his cross-examination of Ira on his strained relationship with his brother Dave before the latter's death, in an attempt to depict Ira as purely motivated by financial gain."  *See* Cheyenne Ligon, *Day 4 of Kleiman v. Wright: Craig Wright's Testimony Delayed*, Yahoo!, Nov. 4, 2021, https://www.yahoo.com/now/day-4-kleiman-v-wright-235110145.html.

Wright's inappropriate suggestions about the sibling relationship was noticed by other media as well.  One article related that "despite living only a few miles apart, that Thanksgiving dinner was the last time the brothers ever saw each other face-to-face. . . . Ira's disinterest in Dave's welfare seems to have been matched only by his disinterest in (a) preserving the integrity of Dave's digital devices . . . ."  Steven Stradbrooke, *Ira Kleiman Serves Up a Bitcoin Turkey in Wright Lawsuit Testimony*, Coingeek, Nov. 5, 2021, https://coingeek.com/ira-kleiman-serves-up-a-

---

[5] This left Ira with the Hobson's choice whether to try to correct the record even though doing so would elevate an irrelevant issue that was designed to prejudice the Estate's claim.

19

bitcoin-turkey-in-wright-lawsuit-testimony/.[6]  Another article suggested that cross-examination of Ira "showed that [he] did not really know his brother Dave that well and that he had little to no knowledge of the matters going on in Dave's life until after he passed away."  Patrick Thompson, *Kleiman v Wright Day 4 Recap: What Ira Kleiman Knew About Dave Kleiman*, Coingeek, Nov. 5, 2021, https://coingeek.com/kleiman-v-wright-day-4-recap-what-ira-kleiman-knew-about-dave-kleiman/.  And it quoted a portion of an exhibit specifically excluded by the Court, suggesting the exhibit was visible to the jury for long enough for a juror (like the reporter) to copy down the prejudicial portion.  *Id.* ("'He [Ira] had limited contact and personal knowledge of David's financial affairs throughout Dave's life,' wrote Ira Kleiman's lawyer Joseph Karp in a letter to the Director of Treasury.").  Yet another article explained that "the defense" had "emphasized" in cross-examining Ira "that Ira did not actually know much about critical issues or issues of importance in his brother's life."  Patrick Thompson, *Ira Kleiman Shows Up on Day 3 of Kleiman v Wright Trial*, Coingeek, Nov. 4, 2021, https://coingeek.com/ira-kleiman-shows-up-on-day-3-of-kleiman-v-wright-trial/.  And another article stated that "despite Dave's health declining steeply from then until his death in 2013, Ira never

---

[6] The sibling relationship was also highlighted in videos released by Coingeek about the trial.  Coingeek, *Kleiman vs Wright*, YouTube, https://www.youtube.com/playlist?list=PLTpDsXEwfAQqeKnLhhKMq4blGCqX_ecoY (last visited Jan. 1, 2022).

visited Dave in hospital."  Jordan Atkins, *Satoshi Nakamoto Trial, the Biggest Revelations From Week 1 of Kleiman v Wright*, Coingeek, Nov. 6, 2021, https://coingeek.com/satoshi-nakamoto-trial-the-biggest-revelations-from-week-1-of-kleiman-v-wright/.

Following trial, Law360 secured an interview with one of the 10 jurors who served on the case. That interview confirmed the obvious, confirmed what the Estate was concerned about all along, and confirmed that the District Court was correct in its pre-trial order excluding these highly prejudicial comments because they impacted the consideration of the evidence and affected the verdict.  *See* Carolina Bolado, *No Proof Bitcoin 'Inventor' Owed Friend, Juror Tells Law360*, Law360, Dec. 23, 2021, https://www.law360.com/articles/1451020/no-proof-bitcoin-inventor-owed-friend-juror-tells-law360.  The article explained that Ira's failure to visit Dave in the hospital directly affected the jury's decision: "'In three years he didn't go to the hospital?'" the juror said.  'That clouded my view as far as what the actual record stated.'"  *Id.*

In light of the prejudice from the multiple violations of the *in limine* order, as expressly shown in the Law360 and other press articles, the Estate moved for a new trial.  ECF [861].  In his opposition, Wright did not deny that he sought to introduce evidence excluded by the order, but instead argued there was no "improper purpose" for such actions.  ECF [869] at 6 n.9.

The District Court denied the motion. First, even though the Estate *did* successfully object to several of Wright's efforts to violate the order, and even though the Court denied the Estate's request for a sidebar during one of Wright's first such attempts, the Court held that the Estate waived the issue because it "failed to object at trial to many of the questions with which it now takes issue" and "did not move to strike any testimony elicited regarding the brothers' sibling relationship, nor did it request a curative instruction at any point during the lengthy 21-day jury trial." ECF [887] at 6-7. Then, the Court concluded she was not persuaded that the "purported misconduct was so prejudicial as to warrant a new trial," because "Ira Kleiman voluntarily testified that he and David Kleiman did not discuss David's lengthy hospitalizations or serious health conditions," the juror interviewed in the Law360 article said the Plaintiffs "never proved to me without a shadow of a doubt that he was involved in bitcoin in any way," and Wright "never urged the jury at any point during trial, let alone during closing argument, to decide the Estate's claims on an improper basis [and] the jury was properly instructed that their decision must be based on the actual evidence presented and they must not be influenced by any sympathy or prejudice toward against any party." ECF [887] at 7-9.

## STANDARD OF REVIEW

A trial court's jury instructions are reviewed "simultaneously *de novo* and deferential" to "determine whether they misstate the law or mislead the jury." *Alabama Aircraft Indus., Inc. v. Boeing Co.*, 2022 WL 433457, at \*7 (11th Cir. Feb. 14, 2022); *Simmons v. Bradshaw*, 879 F.3d 1157, 1162 (11th Cir. 2018) (quotation marks omitted).  If an instruction does not accurately reflect the law, this Court will reverse and order a new trial so long as there is substantial doubt as to whether the jury was properly guided, *id.*, or whether the instructions "materially prejudiced" the appellant.  *SEC v. Yun*, 327 F.3d 1263, 1282 (11th Cir. 2003).

Also, "[i]nterpretation of the Federal Rules of Civil Procedure presents a question of law subject to de novo review[.]"  *Mega Life & Health Ins. Co. v. Pieniozek*, 585 F.3d 1399, 1403 (11th Cir. 2009); *see Devaney v. Cont'l Am. Ins. Co.*, 989 F.2d 1154, 1159 (11th Cir. 1993) ("We review de novo [a] claim[] . . . that the [district] court applied an erroneous legal standard under Rule 37."); *Fuente Cigar, Ltd. v. Roadway Exp., Inc.*, 961 F.2d 1558, 1561 (11th Cir. 1992) (reviewing de novo and vacating trial court's legal conclusion reversing magistrate judge's order).  "In interpreting a federal rule, [this Court] examine[s] its text and give[s] effect to its plain meaning."  *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1283 (11th Cir.).  "Application of an incorrect legal standard is an

abuse of discretion." *Lizarazo v. Miami-Dade Corr. & Rehab. Dep't*, 878 F.3d 1008, 1011 (11th Cir. 2017) (quotation and alteration omitted).

The Court reviews for abuse of discretion both a trial court's denial of a motion for a new trial based on counsel's misconduct during trial and a trial court's denial of discovery sanctions. *See Vinson v. Koch Foods of Alabama, LLC*, 12 F.4th 1270, 1277 (11th Cir. 2021) (counsel misconduct at trial); *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 943 (11th Cir. 2005) (denial of discovery sanctions).

## SUMMARY OF ARGUMENT

The District Court erred on an important issue of law by instructing the jury on Florida partnership law based on authorities applying the old, pre-1996 version of the law, which required five specific factual findings before a partnership could be found. In 1996, Florida adopted the Revised Uniform Partnership Act, which abolished the five-factor test and replaced it with a totality of the circumstances test, under which no single factor is dispositive, and the lone fact that an alleged partner has "receive[d] a share of the profits of a business" creates a rebuttable presumption that that person is "a partner in the business." This error greatly prejudiced the Estate and warrants a new trial.

The District Court also erred by vacating the issue sanctions imposed by the Magistrate Judge, even though the District Court fully affirmed the Magistrate Judge's findings, all based on clear and convincing evidence, that Wright's

24

testimony was "intentionally false," willful, in bad faith, and "part of a sustained and concerted effort to impede discovery, all of which resulted in prejudice to the Estate's ability to prove its case." The District Court misconstrued Rule 37, Fed. R. Civ. Pro., and this Court's decisions, which all make clear that issue sanctions are appropriate where, as here, the misconduct is relevant to a claim or defense. The District Court nevertheless held that the sanctions must "specifically relate to the discovery issue that was pending," which is far too narrow and inconsistent with Rule 37 and the decisions in *Serra Chevrolet, Inc. v. General Motors Corp.*, 446 F.3d 1137 (11th Cir. 2006), and *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982), The issue sanctions should be reinstated and the case remanded for a new trial.

Finally, the District Court also committed reversible error by denying a new trial despite Wright's multiple, intentional violations of the *in limine* Order, which clearly and improperly influenced the jury's dispassionate consideration of the case, the very reason the *in limine* Order was entered. The clear, definitive *in limine* Order specifically excluded evidence of the sibling relationship between Ira and David Kleiman. It was intended to preclude Wright's strategy of arguing to the jury that Ira was a "bad brother" who was unworthy of inheriting the billions stolen by Wright from his brother. Wright intentionally violated this order at least 10 times, despite several sustained objections, severely prejudicing the Estate.

## ARGUMENT

### I.  The District Court erroneously instructed the jury on partnership formation.

The centerpiece of the Estate's claims was that David Kleiman and Wright had formed a partnership to mine bitcoin and develop certain intellectual property, and that Wright misappropriated those assets after David's death in 2013.  The Court erroneously instructed the jury on the elements of a partnership, resulting in an adverse verdict for the Estate.

In 1995, the Florida legislature enacted the Revised Uniform Partnership Act ("RUPA"), Fla. Stat. §§ 620.8001 et seq., which substantially changed the law on the formation of partnerships.  Over the Estate's objection, ECF [851] Day 15 Trial Tr. at 9-10, the District Court incorrectly instructed the jury, ECF [800-1] at 8-10, to use the elements of partnership formation that existed under the prior law, which had much more stringent proof requirements. Thus, the Estate is entitled to a new trial, because the instructions did not accurately reflect the law, caused material prejudice to the Estate, and at the least induced "a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations." *Simmons v. Bradshaw*, 879 F.3d 1157, 1162 (11th Cir. 2018).

The Court's partnership instructions were based on pre-RUPA law, which required a party alleging the existence of a partnership to prove that all of five specific elements were "known and agreed to" by each partner: (1) a community of

26

interest in the performance of the common purpose, (2) joint control or right of control, (3) a joint proprietary interest in the subject matter, (4) a right to share in the profits, and (5) a duty to share in any losses which may be sustained.  *Kislak v. Kreedian*, 95 So.2d 510, 515 (Fla. 1957); *Pinnacle Port Cmty. Ass'n., Inc. v. Orenstein*, 872 F.2d 1536, 1539 (11th Cir. 1989).   The District Court instructed the jury *two times* that it could find for the Estate *only* if it found "each of these elements" had been proven.  ECF [800-1] at 8-9.[7]

These instructions were incorrect because RUPA changed the prior law by substituting a simpler rule which, with limited exceptions, provides that "the association of two or more persons to carry on as co-owners a business for profit forms a partnership, whether or not the persons intend to form a partnership."  Fla. Stat. § 620.8202(1).   Under RUPA, mere proof that an alleged partner has "receive[d] a share of the profits of a business" alone creates a rebuttable presumption that that person is "a partner in the business," subject to certain exceptions not applicable here.  *Id*. § 620.8202(3)(c).  *See* official comment 3 to RUPA § 202 ("The sharing of profits is recast as a rebuttable presumption of a partnership, a more contemporary construction, rather than as prima facie evidence thereof").[8]  Thus, under its plain statutory language, RUPA does not oblige a plaintiff

---

[7] The last two elements were combined in the District court's instruction.
[8] Available at http://www.federal-litigation.com/_01%20Hamed%20Docket%20Entries/RUPA%20Text.pdf.

to prove *any* of the five *Kislak* factors, let alone all five of them as the Court instructed the jury here. *See Rafael J. Roca, P.A. v. Lytal & Reiter, Clark, Roca, Fountain & Williams*, 856 So.2d 1, 6 (Fla. 4th DCA 2003) (finding sufficient evidence of a RUPA partnership without mention of the five-factor test).

Indeed, the current Florida pattern instruction on partnership makes no mention of any "required" *Kislak* elements. It simply states: "A partnership exists when two or more persons join together or agree to join together in a business or venture for their common benefit, each contributing property, money or services and each having an interest in any profits." Fla. Std. Jury Instr. in Civil Case 401.14(d) (Feb. 1, 2018).

This is fully consistent with RUPA, which implemented a "totality of facts and circumstances" test, and "since every business relationship is unique, no single fact or circumstance can operate as a conclusive test for the existence of a partnership, particularly when the parties have dealt casually with each other." *Reilly v. Meffe*, 6 F. Supp. 3d 760, 770, 772 (S.D. Ohio 2014). While the "common law [had] required proof of all five factors to establish the existence of a partnership," RUPA "contemplates a less formalistic and more practical approach to recognizing the formation of a partnership," with the previously required partnership factors now just "factors to consider." *Ingram v. Deere*, 288 S.W.3d 886, 895–96 (Tex. 2009). The five factors are now merely "indicia" of partnership, and "they are

not all necessary to establish a partnership relationship, and no single indicium of co-ownership is either necessary or sufficient to prove co-ownership." *In re KeyTronics*, 744 N.W.2d 425, 441 (Neb. 2008).

In overruling the Estate's objection and instructing the jury the Estate was required to prove all five *Kislak* factors to establish a partnership, the District Court apparently accepted Wright's argument that such an instruction was required by *Williams v. Obstfeld*, 314 F.3d 1270 (11th Cir. 2002) and *Dreyfuss v. Dreyfuss*, 701 So. 2d 437, 438-39 (Fla. 3d DCA 1997). But although these cases were decided after RUPA became law on January 1, 1996, both involved alleged pre-RUPA partnerships, and RUPA was not mentioned in either opinion. These cases are therefore inapplicable here as RUPA explicitly "does not affect any action or proceeding commenced or any right accrued before January 1, 1996," Fla. Stat. § 620.9902, whereas the conduct here all occurred post enactment of RUPA.

In *Obstfeld*, the appellant unsuccessfully argued that the parties "were either partners or joint venturers in the operation of South Star," a partnership allegedly formed in 1993. 314 F.3d at 1273-75. The appellant noted that RUPA "was enacted in 1995, well after the alleged conduct in this case." Appellant's Reply Br. at 9. Similarly, the putative partner in *Dreyfuss* alleged a 1982 oral partnership agreement, and the suit was filed 11 years later, before RUPA was enacted. 701 So. 2d at 438-39. Accordingly, *Obstfeld* and *Dreyfuss* involved pre-RUPA law, and

29

neither opinion supports the District Court giving the "five required factors" instruction in this case.

The District Court's instruction is plainly inconsistent with RUPA's statutory language and is not supported by relevant case law. The instruction obviously prejudiced the Estate by requiring proof of all five factors, even though *none* of the five is essential. Given the evidence adduced at trial and as set forth in the Factual Background section above, at the very least, there is "substantial and ineradicable doubt" whether the Court's erroneous instruction prejudiced the Estate. *Simmons*, 879 F.3d at 1162. Accordingly, this Court should reverse the judgment against the Estate and remand for a new trial on the Estate's claims.

## II.   The District Court erroneously vacated the Magistrate Judge's issue sanctions.

As set forth above, the Magistrate Judge found, and the District Judge affirmed, that Wright had "intentionally submitted fraudulent documents to the Court, obstructed a judicial proceeding, and gave perjurious testimony. ECF [277], at 28. Both judges agreed Wright's testimony" was "intentionally false," and "part of a sustained and concerted effort to impede discovery, all of which resulted in prejudice to the Estate's ability to prove its case. ECF [277], ECF [373]. The Magistrate made the following findings:

30

- "Dr. Wright's story [about his inability to identify his bitcoin holdings] was not supported by other evidence in the record, it defies common sense and real-life experience." … and is "inconceivable." ECF [277] at 19.

- "There was substantial credible evidence that documents produced by Dr. Wright to support his position in this litigation are fraudulent. There was credible and compelling evidence that documents had been altered." ECF [277] at 20.

- "The totality of the evidence in the record does not substantiate that the Tulip Trust exists. Combining these facts with my observations of Dr. Wright's demeanor during his testimony, I find that Dr. Wright's testimony that this Trust exists was intentionally false." ECF [277] at 21.

- "Ultimately, Dr. Wright's claim of inability to comply with the Court's Orders relies on the existence of an encrypted file in the Tulip Trust containing the information necessary to reconstruct Dr. Wright's bitcoin holdings. I find that this file does not exist…. After observing Dr. Wright's demeanor and the lack of any other credible evidence in the record that this file exists, I find that a preponderance of the evidence[9] establishes that no

---

[9] Magistrate Judge Reinhart also found this to be so by clear and convincing evidence. ECF [ 277] at 21 n.11 ("Although I am only required to make this finding by a preponderance of the evidence, I find clear and convincing evidence to support it.").

such file exists and that Dr. Wright's testimony was intentionally false." ECF [277] at 24.

- "In sum, after days of testimony, multiple discovery hearings, and lengthy pleadings, the sole evidence supporting Dr. Wright's claim that he cannot comply with the Court's Orders is the uncorroborated word of Dr. Wright. That word is insufficient to meet his evidentiary burden. Moreover, the totality of the evidence, including a negative inference drawn from Dr. Wright's incredible testimony and use of fraudulent documents, is more than sufficient to meet Plaintiffs' burden." ECF [277] at 26.

Based on these findings, and because the discovery at issue went to the core of the Estate's partnership claims as it aimed to identify the specific bitcoin the Estate alleged had been mined by the alleged partnership, the Magistrate Judge appropriately levied certain non-monetary sanctions, designed to ameliorate the prejudice caused to Plaintiffs.[10]  Specifically, the Magistrate Judge deemed the following facts established (the "Deemed Facts"):

---

[10] The Magistrate Judge also awarded reasonable expenses under Rules 26(c)(3) and 37(a)(5)(A), which the District Court affirmed.  ECF [373] at 18, 23.  Further, "[t]o conform to the [] established facts," the Magistrate Judge struck several of Wright's affirmative defenses.  ECF [277] at 16, 29.  Although the District Court overruled the Magistrate Judge's order striking the defenses, she later granted summary judgment and dismissed those same defenses.  ECF [615] at 77-79, 86-87, 90-92.

(1) Dr. Wright and David Kleiman entered into a 50/50 partnership to develop Bitcoin intellectual property and to mine bitcoin; (2) any Bitcoin-related intellectual property developed by Dr. Wright prior to David Kleiman's death was property of the partnership; (3) all bitcoin mined by Dr. Wright prior to David Kleiman's death ("the partnership's bitcoin") was property of the partnership when mined; and (4) Plaintiffs presently retain an ownership interest in the partnership's bitcoin, and any assets traceable to them. ECF [277] at 16, 28.

The imposition of this part of the sanctions was clearly warranted as the Magistrate Judge specifically found by "clear and convincing evidence" that "Wright's conduct [] prevented [the Estate] from obtaining evidence that the Court found relevant to [its] claim that Dr. Wright and David Kleiman formed a partnership to develop Bitcoin technology and to mine bitcoin," and that "Wright's non-compliance with the Court's Order [wa]s willful and in bad faith[.]" *Id.* at 27. As the Magistrate Judge explained, "no conduct is more antithetical to the administration of justice." *Id.* at 28. Accordingly, he found that the Deemed Facts were "necessary to achieve the remedial and punitive purposes of Rule 37. No lesser sanction would suffice." *Id.*

Wright objected to the District Judge that there was "absolutely no basis" for sanctions, that the Estate was not prejudiced, and that the issue sanctions violated due process. *See* ECF [311].  The District Judge rejected the former, agreeing with the Magistrate Judge that Wright "willfully obstructed th[e] [discovery] process" and "prevented the [Estate] from obtaining evidence" that the Court found "directly relevant to [its] claims."  ECF [373] at 18, 21, 22.  The District Judge nonetheless agreed with Wright that the issue sanctions violated his constitutional due process rights and vacated them because, according to the District Judge, the Deemed Facts "[we]re not specifically related to the particular discovery abuse at issue." *Id.* at 18-20.  That was error.

### A. The District Judge misapplied Supreme Court and Eleventh Circuit sanctions precedent and applied an erroneous legal standard that conflicts with Rule 37.

The District Judge interpreted this Court's decision in *Serra Chevrolet, Inc. v. General Motors Corp.*, 446 F.3d 1137 (11th Cir. 2006), and *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982), to create a prohibition on issue sanctions unless they "specifically relate to the discovery issue that was pending," or "cure" the discovery abuse by establishing the specific facts at issue in the discovery ordered by the court. *Id.* at 19-20.  But neither this Court nor the Supreme Court have imposed any such limitation on issue sanctions.  To the

contrary, such a limitation misreads precedent and violates the text of Rule 37(b)(2)(A)(i) itself.

In *Serra Chevrolet*, this Court recognized the Supreme Court's admonition that due process simply requires that sanctions "are both 'just' and 'specifically related to the particular "claim" which was at issue to provide discovery." 446 F.3d at 1151 (quoting *Ins. Corp.*, 456 U.S. at 707). That latter requirement—that a sanction must be specifically related to a particular claim at issue in the order to provide discovery—simply "reflects the rule of *Hammond Packing* [*Co. v. State of Arkansas*, 212 U.S. 322 (1909)]" that a party's non-compliance with a discovery order creates a "presumption that the refusal to produce evidence material to the administration of due process was but an admission of the want of merit in the asserted [claim or] defense." *Ins. Corp.*, 456 U.S. at 705 (quoting *Hammond*, 212 U.S. at 350-51). And as the Supreme Court explained, "Rule 37(b)(2)(A) itself embodies" that requirement. *Ins. Corp.*, 456 U.S. at 705 & 705 n. 11 (advisory committee notes to Rule 37 state that the Rule's provisions find support in *Hammond*). In other words, "[a] proper application of Rule 37(b)(2) will, as a matter of law" satisfy due process; nothing more is required. *Id.* at 706. Indeed, the text of Rule 37(b)(2) expressly requires that issue sanctions for not obeying a discovery order must be both "just," Fed R. Civ. P. 37(b)(2)(A), and "that the matters embraced

35

in the [discovery] order or other designated facts" be related to "the prevailing party['s] claims" in the action.  Fed. R. Civ. P. 37(b)(2)(A)(i).

Applying *Insurance Corp.*, this Court in *Serra Chevrolet* vacated partial terminating sanctions striking affirmative defenses imposed pursuant to Rule 37(b)(2)(A)(iii) because the district court "fail[ed] to give any justification for its decision" and the defenses "had no apparent relationship with the discovery abuse"; the defenses concerned "earlier litigation in the state courts," not any claim at issue in the federal action.  *Id.* at 1152.  *Serra Chevrolet* did not create any new prohibition on the imposition of sanctions or otherwise place limitations on Rule 37(b)(2).  Rather, as this Court later explained, *Serra Chevrolet*, like *Insurance Corp.* and the text of Rule 37(b)(2) itself, just "requires that a sanction have some rationale and some connection to the sanctioned conduct."  *Yaffa v. Weidner*, 717 F. App'x 878, 885 (11th Cir. 2017).

Here, the District Judge erroneously interpreted *Serra Chevrolet* to require that issue sanctions must "specifically relate *to the discovery issue* that was pending before the [court]."  ECF [373] at 20.  Not so.  As explained *supra*, the correct legal standard—as set forth by the Supreme Court, this Court, and the text of Rule 37(b)(2)(A)—is whether the sanction specifically relates *to the claim* (or defense) to which the discovery ordered was related, not the discovery issue itself.  Other Circuits likewise hold that the correct standard just requires the sanction to relate to

the claim or defense that the discovery sought was relevant. *See, e.g.*, *Fencorp Co. v. Ohio Kentucky Oil Corp.*, 675 F.3d 933 (6th Cir. 2012) (affirming judgment against defendants on preemption defense where they "disobeyed three separate discovery requests for documents related *to this defense*") (emphasis added); *Gen. Ins. Co. of Am. v. E. Consol. Utilities, Inc.*, 126 F.3d 215, 220-21 (3d Cir. 1997) ("[A] court, under Rule 37(b)(2)(A), cannot direct that designated facts be taken as true when those facts are unrelated *to the claim or defense* with respect to which the discovery is being sought.") (emphasis added); *Chilcutt v. United States*, 4 F.3d 1313, 1321 (5th Cir. 1993) (affirming sanction establishing plaintiffs' liability claims where defendant failed to produce accident log because had the log been produced "plaintiffs would have been able to investigate th[e] accidents and would likely have strengthened their liability allegations").

Moreover, applying the District Judge's erroneous legal standard that issue sanctions "relate to the discovery issue that was pending," *ibid.*, would abrogate Rule 37(b)(2)(A)(i)'s text, which provides that facts "other" than "matters embraced in the [discovery] order" may be deemed established. Rule 37(b)(2)(A)(i)'s text itself thus renders incorrect the District Court's assertion that the only permissible issue sanction would be "the amount of bitcoin owned by [Wright]," which was discovery that the Magistrate Judge had ordered Wright to produce. ECF [373] at 20. Likewise, as the court in *Feeassco, LLC v. Steel Network, Inc.* recognized, the erroneous legal

standard advocated by Wright and adopted by the District Judge that due process requires Rule 37 sanctions to be specifically related to "the issue upon which discovery was sought and refused," patently misreads *Insurance Corp.*, which "refer[s] to a 'claim' as opposed to an 'issue.'" 264 N.C. App. 327, 343 (2019) (affirming sanction striking answer and establishing liability in favor of plaintiffs where sanction was specifically related to plaintiffs' claims for breach of contract, quantum meruit, and unfair and deceptive trade practices at issue in discovery order).

There can be no dispute that the discovery at issue here related to the Estate's partnership claim, as it sought to identify the assets of the partnership itself. Both the Magistrate Judge and District Judge found the discovery the Estate sought, including a list of Wright's bitcoin holdings, was directly relevant to its claims, specifically its claims involving the parties' partnership. ECF [311] at 21, 22; ECF [277] at 27 (finding by "clear and convincing evidence" that "Wright's conduct [] prevented [the Estate] from obtaining evidence that the Court found relevant to [its] claim that Dr. Wright and David Kleiman formed a partnership to develop Bitcoin technology and to mine bitcoin"). The District Judge agreed that the Deemed Facts likewise were "aimed at establishing the partnership that is alleged to have existed between David Kleiman and [Wright,] and the determination of that partnership's property[.]" ECF [373] at 20. Indeed, had Wright produced a list of his actual bitcoin holdings, the Estate could have used those "digital bread crumbs" to obtain other

discovery relevant to establishing a partnership between the two men, including, among other things, whether there was deliberate coordination in the mining of the bitcoin.  *See, e.g.*,  https://www.nytimes.com/2021/06/09/technology/bitcoin-untraceable-pipeline-ransomware.html/ (last accessed August 17, 2022); *see also* ECF [332] at 19-21 (discussing the relevance of the requested discovery to the partnership issue).   Thus, applying the correct legal standard set forth in Rule 37 and both this Court's and the Supreme Court's precedent, *see supra* § II(A), the Deemed Facts are specifically related to the Estate's claim at issue in the discovery orders.[11]

Both the Magistrate Judge and the District Court also found the sanctions were "just."  After recounting the history of Wright's misconduct, ECF [277] at 2-11, the Magistrate Judge found by "clear and convincing evidence" that Wright's "non-compliance with the Court's Order [wa]s willful and in bad faith"; he "engaged in a willful and bad faith pattern of obstructive behavior, including . . . intentionally submit[ing] fraudulent documents to the Court, obstruct[ing] a judicial proceeding, and g[iving] perjurious testimony    No conduct is more antithetical to the

---

[11] In any event, the District Court held Wright waived the ability to challenge the Magistrate Judge's order that Wright's bitcoin holdings were relevant to the Estate's claims.  ECF [373] at 17 & n. 8; *see also, e.g.*, *Smith v. Sch. Bd. of Orange Cnty.*, 487 F.3d 1361, 1365 (11th Cir. 2007) ("[W]here a party fails to timely challenge a magistrate's nondispositive order before the district court, the party waive[s] his right to appeal those orders in this Court."); Fed. R. Civ. P. 72(a).

administration of justice." *Id.* at 27-28.  The District Judge agreed, finding "no doubt that the Plaintiffs were prejudiced by [Wright's] antics.  It is clear to the Court that [Wright's] conduct was anything but substantially justified or harmless.  [His] conduct delayed and obstructed the discovery process of this case[.]" ECF [373] at 21; *id.* at 18 (Wright "willfully obstructed th[e] [discovery] process").

Finally, the Magistrate Judge found, again by clear and convincing evidence, that "particularly given the extended pattern of non-compliance and its egregiousness[,] a lesser sanction [wa]s not adequate to punish [Wright's non-compliance] or to ensure future compliance with the Court's Orders."  ECF [277] at 27.[12]  The issue sanctions were "necessary to achieve the remedial and punitive purposes of Rule 37.  No lesser sanction would suffice."  *Id.* at 28.[13]  Accordingly,

---

[12] As detailed below, the Magistrate Judge was absolutely correct. Once left off the hook, Wright seemed to think that perjury and forgery were an effective strategy in federal court. His perjury and forgeries continued.

[13] Wright's *alleged* belated compliance does not moot the issue sanctions. *See, e.g.*, *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 149 (2d Cir. 2010) ("Even when a party finally (albeit belatedly) complies with discovery orders after sanctions are imposed, these purposes may still justify the sanctions:  If parties are allowed to flout their obligations, choosing to wait to make a response until a trial court has lost patience with them, the effect will be to embroil trial judges in day-to-day supervision of discovery, a result directly contrary to the overall scheme of the federal discovery rules. Moreover, . . . compulsion of performance in the particular case at hand is not the sole function of Rule 37 sanctions.  Under the deterrence principle of [*National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)], plaintiff's hopelessly belated compliance should not be accorded great weight.  Any other conclusion would encourage dilatory tactics, and

this Court should reverse the District Judge's order vacating the Magistrate Judge's order imposing issue sanctions and remand for a new trial on the Estate's claims with the Deemed Facts established.

Further, if left undisturbed by this Court, the erroneous legal standard created and applied by the District Judge will drastically restrict the ability of Courts to ensure compliance with discovery orders, as the incentive to not comply will often outweigh the potential sanctions for non-compliance. Accordingly, the Court should reverse the District Judge's order vacating the Magistrate Judge's order imposing issue sanctions to remedy Wright's willful and bad faith conduct.

## B. Even if the District Judge applied the correct legal standard, it still abused its discretion by vacating the Magistrate Judge's order imposing issue sanctions.

The District Court abused its discretion even if it were correct that, contrary to the text of Rule 37 and applicable precedent, *see supra* § II(A), facts could not be deemed established unless they specifically related to the discovery issue pending before the court. Specifically, the District Judge stated that the only discovery ordered by the Magistrate Judge was production of "evidence to document the existence and extent of [Wright's] bitcoin holdings[.]" ECF [373] at 20. Not so.

---

compliance with discovery orders would come only when the backs of counsel and the litigants were against the wall.") (alteration and quotations omitted).

But that is the point the District court missed. Had a real list of "Wright's" bitcoin been produced, Plaintiff could have had expert analysis to demonstrate an IP address, email address, or exchange records associated with that mined bitcoin which traced back to David Kleiman. Alternatively, the list could show that the partnership's bitcoin was mined during Eastern Standard Time (*i.e.,* Florida where Dave lived) and not Australian Eastern Standard Time (*i.e.,* Australia, where Wright lived). Moreover, if any of the bitcoin had been transacted, Plaintiff could have traced that activity across the public blockchain to potentially find the recipient and then depose that individual to discover that, *e.g.,* he/she had received that bitcoin from David Kleiman (and not Wright). Expert analysis could have also demonstrated the computing power expended by the person who mined the bitcoin, which could reveal the type of computer they used, which could have been shown to be Dave's computer systems and not Wright's. Indeed, subjecting the list of mined bitcoin to blockchain analysis could have revealed quirks in the mining pattern that indicated a coordinated mining effort, *i.e.,* a partnership. In sum, had Wright actually provided an authentic list of his bitcoin holdings, Plaintiff could have used it as an effective discovery tool to demonstrate Wright's partnership with David.

Accordingly, the discovery issues *do* specifically relate to the Deemed Facts, which likewise concerned the existence and assets of the partnership between the two men. *See* ECF [277] at 27-28 (finding that Wright's willful and bad faith non-

42

compliance with discovery orders "prevented Plaintiffs from obtaining evidence that the Court found relevant to Plaintiffs' claims that Dr. Wright and David Kleiman formed a partnership to develop Bitcoin technology and to mine bitcoin," and that "Plaintiffs have also been prejudiced by not being able to try to trace the bitcoin that was mined").

Accordingly, the District Judge's application of her own erroneous Rule 37(b)(2)(A) standard was an abuse of discretion and should be reversed. *See Fuentes v. Classica Cruise Operator Ltd., Inc*., 32 F.4th 1311, 1321 (11th Cir. 2022) (abuse of discretion where district court's decision concerning whether to impose sanctions "constitute[s] a clear error of judgment"); *Serra Chevrolet*, 446 F.3d at 1147 (abuse of discretion where district court "ignores or misunderstands the relevant evidence, and bases its decision upon considerations having little factual support").

## C. The Magistrate Judge correctly found that no lesser sanction would suffice to address Wright's pervasive misconduct.

As discussed *supra* in § II(A), the Magistrate Judge held that certain facts would be deemed admitted and that "no lesser sanction would suffice." ECF [277] at 28. The District Judge, however, revered the sanction deeming facts admitted.

Unfortunately, that ruling taught Wright that perjury and forgery are effective and efficient defenses in federal court. He resumed his pattern of perjury and submission of false evidence.

After spending millions of dollars in fees and costs trying to chase down and unpack all of Wright's continued misconduct, Plaintiffs filed an Omnibus Sanctions Motion (ECF [507]) seeking default judgment or in the alternative an order deeming certain facts admitted or an adverse inference instruction.  In ruling on the motion, the District Judge found that Wright's testimony had been "glaringly inconsistent" and that the Estate had raised "unsettling issues" about Wright's litigation conduct. ECF [595] at 36.  Nevertheless, the Court did not reinstate the prior sanctions, and refused to impose any new sanctions.

The extent, duration, and egregious nature of Wright's perjuries, forgeries, and misrepresentations, the fact that so many of them were directed at the Court (not just the Estate), and the fact that Wright was unrepentant, recalcitrant, and reverted to the exact same conduct after the District Court previously gave him the benefit of the doubt with a relatively minor sanctions order, all demonstrate that his acts were willful and in bad faith, that the Magistrate Judge was right, no lesser sanction would have sufficed, and the Magistrate Judge's sanctions should be reinstated.  At the very least, the Court should have granted the Estate's alternative request for an instruction to the jury regarding Wright's spoliation.  *See* ECF [618] at 37; ECF  [794]; *see also Cox v. Target Corp.*, 351 F. App'x 381, 383 (11th Cir. 2009) (spoliation instruction is "required" when spoliation "is predicated on bad faith"); *Adamson v. R.J. Reynolds Tobacco Co.*, 325 So. 3d 887, 896 (Fla. Dist. Ct. App. 2021) (bad faith

means "intentionally or willfully" done), *rev. denied*, 2021 WL 6140352 (Fla. Dec. 30, 2021).

### III.    The District Court abused its discretion in denying the estate's motion for a new trial despite Wright's multiple, intentional violations of the *in limine* order.

Notwithstanding that before trial the District Court rendered a clear, definitive in limine order excluding evidence of the sibling relationship between Ira and David Kleiman, Wright intentionally violated this order at least 10 times, despite several sustained objections, severely prejudicing the Estate. See Factual Background II.C., *supra.* In light of the repeated, intentional violations, the Estate moved for a new trial, which the trial court denied on the grounds that the Estate "waived" the issue by not objecting to every violation and the violations were not "so prejudicial as to warrant a new trial." ECF [887] at 6-8. This Court should reverse and order a new trial because there was no waiver and the misconduct was indeed sufficiently prejudicial to the Estate.

This Court evaluates the entirety of the circumstances "to determine whether the inappropriate remarks were such as to impair gravely the calm and dispassionate consideration of the case by the jury." *Vinson*, supra (quoting *Ruiz v. Wing*, 991 F.3d 1130, 1141 (11th Cir. 2021)). Although appellate courts are reluctant to grant a new trial when the lower court has declined to do so, "it is nevertheless clear that counsel should not introduce extraneous matters before a jury or, by questions or

remarks, endeavor to bring before it unrelated subjects, and, where there is a reasonable probability that the verdict of a jury has been influenced by such conduct, it should be set aside." *City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749, 756 (6th Cir. 1980).   In making this determination, the reviewing court "must examine, on a case-by-case basis, the totality of the circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case (e. g. whether it is a close case), and the verdict itself." *Id*. The appellant need not prove that the improper conduct was the sole or even primary cause of the verdict, only that there is a "reasonable probability that the verdict of a jury [was] influenced" or that the jury's deliberations were "gravely impaired." *Id.*

Thus, for example, if counsel improperly "impl[ies] a basis for the verdict other than the evidence presented" and the trial court nevertheless denies a new trial, this Court may reverse for abuse of discretion, if the wrongful conduct "could cause the jury to lose sight of the essential issue" and "impair its calm and dispassionate consideration of the case." *Allstate Ins. Co. v. James*, 845 F.2d 315, 319 (11th Cir. 1988) (reversing and granting new trial based on improper remarks during closing argument).

**A. A new trial should be ordered, because Wright's multiple, intentional violations of the *in limine* order influenced the jury's dispassionate consideration of the case.**

1. <u>The Estate did not waive the issue.</u>

There is no basis for the District Court's conclusion that the Estate waived its objection to Wright's violations of the in limine order. Quite the contrary, the Estate brought the issue to the court's attention several times. As detailed above, the Estate successfully objected at the outset, when Wright's counsel improperly tried to raise the brothers' relationship in his opening statement. ECF [837] Trial Tr. Day 1 at 210:16–211:2. The Estate objected again, twice, and even requested a sidebar when counsel violated the order at the very beginning of his questioning of Ira Kleiman, but the court without explanation overruled the objections and denied the requested sidebar. ECF [839] Trial Tr. Day 3 at 149:22–150:24. The next day, the Estate renewed the objection, and this time it was sustained. ECF [840] Trial Tr. Day 4 at 23:12–24:1. The Estate made additional objections throughout the trial. ECF [840] Trial Tr. Day 4 at 173:13–25; ECF [841] Trial Tr. Day 5 at 68:7–21.

Counsel for the Estate was in a difficult position because Wright simply persisted with his improper conduct, without the slightest regard for the Court's pretrial Order, or its multiple sustained objections. And each objection itself brought attention to the issue of the sibling relationship in a way that the in limine order was intended to prevent, as would any motion to strike or request for a curative

instruction. It is true that the Estate did not object to every single one of Wright's multiple, intentional violations, but it surely did do more than enough to "bring the matter to the Court's attention in a timely manner before the jury's verdict." ECF [887] at 7 (quotation omitted). A party that successfully moves for a clear and definitive *in limine* order should not be forced to play "whack-a-mole" and risk waiver when the opposing party simply decides to ignore the order.

Moreover, repeated objections are not required to preserve an issue. *See* Rule 103(b), Fed. R. Civ. Pro. ("Once the court rules definitively on the record — either before or at trial — a party need not renew an objection or offer of proof to preserve a claim of error for appeal"). All a party need do is bring the issue to the trial court's attention in a timely manner, which the Estate did repeatedly both before and during the trial. *See Stewart & Stevenson Servs., Inc. v. Pickard*, 749 F.2d 635, 643 (11th Cir. 1984) (no waiver where "the methods used by Stewart & Stevenson as a whole were reasonably sufficient to direct the court's attention to these issues"); *United States v. Hernandez*, 921 F.2d 1569, 1582 (11th Cir. 1991) (no waiver despite failure to object because "codefendant's objection brought issue to judge's attention"); *Lawler v. Alexander*, 698 F.2d 439, 441 (11th Cir. 1983) (no waiver despite no objection to order redefining the class, because "Plaintiffs' Motion to Compel and the subsequent conference … sufficiently called to the district court's attention their opposition to the redefinition order"); *Kucel v. Walter E. Heller & Co.*, 813 F.2d 67,

74 (5th Cir. 1987) ("Having once properly notified the court of the issue, it satisfied its duty," no waiver for failure to raise it again until motion for reconsideration).

Also, where, as here, the case involves attorney misconduct, a new trial is often appropriate, even when there has been no objection or other effort to call the matter to the attention of the trial court. *See McWhorter v. City of Birmingham*, 906 F.2d 674, 677 (11th Cir. 1990) (affirming new trial for single violation in closing argument to which the opposing party did not object); *Christopher v. Florida*, 449 F.3d 1360, 1365 (11th Cir. 2006) (same); *see also Goodman v. Safeco Insurance Co. of Illinois*, 2015 WL 898696, at *4 (M.D. Fla. Mar. 3, 2015) (same). "[W]here the interest of substantial justice is at stake, improper argument may be the basis for a new trial even if no objection has been raised." *McWhorter*, 906 F.2d at 677. It follows a fortiori there was no waiver here, where there were multiple, intentional violations of a clear order.

In light of the record as a whole and the above authorities, the District Court's finding of waiver should be reversed.

### 2. The violations were of sufficient magnitude to warrant a new trial.

The District Court expressly found in its Order on Plaintiffs' Motion in Limine that introduction of the sibling relationship evidence would "raise significant concerns that the jury will make a decision in this case premised on how 'good' of a brother Ira [Kleiman] was or whether [he] 'deserves' Dave [Kleiman's] fortune –

instead of basing their decision on the facts and merits of the case." ECF [623] at 15. The strong potential for substantial prejudice is obvious, and Law360 article confirms that this is exactly what occurred due to Defendant's repeated violations of this order. *See* Carolina Bolado, *No Proof Bitcoin 'Inventor' Owed Friend, Juror Tells Law360*, Law360, Dec. 23, 2021, https://www.law360.com/articles/1451020/no-proof-bitcoin-inventor-owed-friend-juror-tells-law360 ("In three years he didn't go to the hospital?" the juror said. 'That clouded my view as far as what the actual record stated.'") Nevertheless, the District Court said it was "not persuaded that Defendant's purported misconduct was so prejudicial as to warrant a new trial." ECF [887] at 7-8. The Estate respectfully submits that this was error. None of the court's stated reasons for its conclusion survives scrutiny.

First, the court said that "Ira Kleiman voluntarily testified that he and David Kleiman did not discuss David's lengthy hospitalizations or serious health conditions," which supposedly "demonstrate[ed] a limited relationship between Ira and David Kleiman." *Id.* at 8. With respect, it is difficult to fathom how Ira's statement that he never discussed Dave's health condition with his brother could conceivably relate to or open the door to the highly prejudicial and misleading material that Wright put in, such as "Ira never visited Dave in the hospital," "Ira never saw Dave in person after Thanksgiving 2009," and "Ira never communicated

50

with Dave during the final year of Dave's life," and "Ira was not aware of Dave's death for several days after Dave died." These are entirely different and far more prejudicial topics. The Court's comment is inconsistent with its own rulings during trial, where Wright twice argued that the door had been opened to sibling relationship evidence, and the Court rejected his arguments both times. ECF [837] Trial Tr. Day 1 at 211:20–21; ECF [840] Trial Tr. Day 4 at 176:13–15 ("THE COURT: Well, if you believe that he said anything to open the door with regard to the sibling relationship, he has not.").

The District Court next found that the Law360 article "does not support its position that the references of the siblings' relationship affected the jury's verdict," ECF [887] at 8, even though the juror stated unequivocally: "In three years he didn't go to the hospital? …. That *clouded my view as far as what the actual record stated*." *See* Carolina Bolado, *No Proof Bitcoin 'Inventor' Owed Friend, Juror Tells Law360*, Law360, Dec. 23, 2021, https://www.law360.com/articles/1451020/no-proof-bitcoin-inventor-owed-friend-juror-tells-law360. In other words, this juror, and surely others, did not give "calm and dispassionate consideration" to the actual evidence; their views were "gravely impaired" by Wright's violations of the order, and that is precisely what requires a new trial. *Vinson*, 12 F.4th at 1277.

The court ignored this quote and instead focused on the juror's statement that plaintiffs "never proved to me without a shadow of a doubt that he was involved in

51

bitcoin in any way." ECF [887] at 8. But this is the conclusion the juror reached with his view of the record admittedly "clouded" by the sibling relationship evidence. Indeed, even the juror's quote does not support the Court's conclusion as it appears that the juror's mind was so clouded he believed that plaintiffs were required to prove the partnership "without a shadow of a doubt," although in reality the standard of proof was just "preponderance of the evidence."

While the juror's statements to Law360 are compelling, the Estate submits they are far from necessary, as it is obvious that the improper statements on their face alone give rise to a reasonable probability that they impaired the jury's "dispassionate consideration" of the case. The juror's statements merely confirm the obvious and make even clearer that the Estate should be granted a new trial.

The District Court lastly found that a new trial was not warranted because Wright "never urged the jury at any point during trial, let alone during closing argument, to decide the Estate's claims on an improper basis—namely, that the siblings were estranged, and Ira Kleiman was, therefore, undeserving." ECF [887] at 9. Of course, however, that was the entire purpose of Wright's repeated efforts to evade the *in limine* Order, and it worked as Wright intended. Wright should not be allowed to reap the rewards of his misconduct simply because his counsel did not say explicitly what was so obviously, and intentionally, implied. *Allstate Ins. Co. v. James*, 845 F.2d at 319 (new trial may be ordered if counsel "impl[ies] a basis for

the verdict other than the evidence presented").  As the District Court itself stated in granting the Estate's *in limine* motion, it was enough that the mere introduction of the sibling relationship evidence raised "significant concerns" that the jury w[ould] 'make a decision in this case premised on how "good" of a brother Ira [Kleiman] was or whether [he] "deserves" Dave [Kleiman's] fortune – instead of basing their decision on the facts and merits of the case."  ECF [623] at 15.

The District Court finally commented that the wrongdoing did not warrant a new trial because "the jury was properly instructed that their decision must be based on the actual evidence presented and they must not be influenced by any sympathy or prejudice toward against any party."  ECF [887] at 9-10.  In the first place, in the instances where the Estate's objections were overruled and the request for a sidebar was denied, the improper evidence became part of the "the actual evidence presented," and the jury would have believed they were entitled to consider it. Furthermore, such an instruction is not effective once a jury has been exposed to highly prejudicial materials.  *See O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1309 (5th Cir. 1977) ("[Y]ou can throw a skunk into the jury box and instruct the jurors not to smell it, but it doesn't do any good"); *Singh v. Caribbean Airlines Ltd.*, 13-CV-20639, 2014 WL 4101544, at *1 (S.D. Fla. Jan. 28, 2014) ("In resolving evidentiary disputes before trial, motions in *limine* avoid the need to 'unring the bell' once inadmissible evidence has been presented to the jury").

For all of the above reasons, this Court should grant a new trial on the partnership claims due to the intentional violations of the order. The Estate's well-supported partnership claim is for a substantial amount of money, and it is only natural that a jury would be highly reluctant to rule for the Estate if it concluded that the primary beneficiary, Ira Kleiman, was a bad, undeserving brother. This Court should not allow Wright to get away scot-free with his multiple violations of the clear order.

## CONCLUSION

For the foregoing reasons, the Estate respectfully requests that this Court remand this case for a new trial on its claims.

Respectfully Submitted,

*/s/ Devin (Velvel) Freedman*
Devin (Velvel) Freedman
ROCHE FREEDMAN LLP
1 SE 3rd Avenue, Suite 1240
Miami, Florida 33131
(305) 753-3675
vel@rochefreedman.com

Kyle W. Roche *(Pro Hac Vice)*
ROCHE FREEDMAN LLP
99 Park Avenue, Suite 1910
New York, New York 10016
kyle@rochefreedman.com

Andrew Brenner
BOIES SCHILLER FLEXNER LLP
100 SE 2nd Avenue, Suite 2800
Miami, Florida 33131
abrenner@bsfllp.com

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) as the brief contains 12,550 words, excluding those parts exempted by 11th Cir. Local R. 32-4.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) as this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

*/s/ Devin (Velvel) Freedman*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 24, 2022, a copy of the brief was served on all counsel of record via CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.


*/s/ Devin (Velvel) Freedman*