# Composite Exhibit B

# NYSBA NY Rules of Professional Conduct (2021)

*Effective April 1, 2009, as amended through June 24, 2020, with commentary as amended through October 30, 2021.*

**Reproduced with permission by the
New York State Bar Association,
One Elk Street, Albany, NY 12207.**

**Please contact MRC@nysba.org for
permission to use or distribute this content.**

NEW YORK STATE BAR ASSOCIATION

**Use of this product confirms acceptance of the NYSBA license.**

# RULE 1.7

## CONFLICT OF INTEREST: CURRENT CLIENTS

**(a)    Except as provided in paragraph (b), a lawyer shall not represent a client if a reasonable lawyer would conclude that either:**

**(1)    the representation will involve the lawyer in representing differing interests; or**

**(2)    there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests.**

**(b)    Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:**

**(1)    the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;**

**(2)    the representation is not prohibited by law;**

**(3)    the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and**

**(4)    each affected client gives informed consent, confirmed in writing.**

**Comment**

**General Principles**

[1]    Loyalty and independent judgment are essential aspects of a lawyer's relationship with a client. The professional judgment of a lawyer should be exercised, within the bounds of the law, solely for the benefit of the client and free of compromising influences and loyalties. Concurrent conflicts of interest, which can impair a lawyer's professional judgment, can arise from the lawyer's responsibilities to another client, a former client or a third person, or from the lawyer's own interests. A lawyer should not permit these competing responsibilities or interests to impair the law-

yer's ability to exercise professional judgment on behalf of each client. For specific Rules regarding certain concurrent conflicts of interest, see Rule 1.8. For former client conflicts of interest, see Rule 1.9. For conflicts of interest involving prospective clients, see Rule 1.18. For definitions of "differing interests," "informed consent" and "confirmed in writing," see Rules 1.0(f), (j) and (e), respectively.

[2]     Resolution of a conflict of interest problem under this Rule requires the lawyer, acting reasonably, to: (i) identify clearly the client or clients, (ii) determine whether a conflict of interest exists, *i.e.*, whether the lawyer's judgment may be impaired or the lawyer's loyalty may be divided if the lawyer accepts or continues the representation, (iii) decide whether the representation may be undertaken despite the existence of a conflict, *i.e.*, whether the conflict is consentable under paragraph (b); and if so (iv) consult with the clients affected under paragraph (a) and obtain their informed consent, confirmed in writing. The clients affected under paragraph (a) include all of the clients who may have differing interests under paragraph (a)(1) and any clients whose representation might be adversely affected under paragraph (a)(2).

[3]     A conflict of interest may exist before representation is undertaken, in which event the representation must be declined, unless the lawyer obtains the informed consent of each client under the conditions of paragraph (b). *See* Rule 1.10(e), which requires every law firm to create, implement and maintain a conflict-checking system.

[4]     If a conflict arises after representation has been undertaken, the lawyer ordinarily must withdraw from the representation unless the lawyer has obtained the informed consent of the client under the conditions of paragraph (b). *See* Rule 1.16(b)(1). Where more than one client is involved, whether the lawyer may continue to represent any of the clients is determined both by the lawyer's ability to comply with duties owed to the former client and by the lawyer's ability to represent adequately the remaining client or clients, given the lawyer's duties to the former client. *See* Rule 1.9; *see also* Comments [5], [29A].

[5]     Unforeseeable developments, such as changes in corporate and other organizational affiliations or the addition or realignment of parties in litigation, might create conflicts in the midst of a representation, as when a company sued by the lawyer on behalf of one client is acquired by another client represented by the lawyer in an unrelated matter. Depending on the circumstances, the lawyer may have the option to withdraw from one of the representations in order to avoid the conflict. The lawyer

must seek court approval where necessary and take steps to minimize harm to the clients. See Rules 1.16(d) and (e). The lawyer must continue to protect the confidences of the client from whose representation the lawyer has withdrawn. *See* Rule 1.9(c).

## Identifying Conflicts of Interest

[6]     The duty to avoid the representation of differing interest prohibits, among other things, undertaking representation adverse to a current client without that client's informed consent. For example, absent consent, a lawyer may not advocate in one matter against another client that the lawyer represents in some other matter, even when the matters are wholly unrelated. The client as to whom the representation is adverse is likely to feel betrayed and the resulting damage to the client-lawyer relationship is likely to impair the lawyer's ability to represent the client effectively. In addition, the client on whose behalf the adverse representation is undertaken may reasonably fear that the lawyer will pursue that client's case less effectively out of deference to the other client, that is, that the lawyer's exercise of professional judgment on behalf of that client will be adversely affected by the lawyer's interest in retaining the current client. Similarly, a conflict may arise when a lawyer is required to cross-examine a client appearing as a witness in a lawsuit involving another client, as when the testimony will be damaging to the client represented in the lawsuit. On the other hand, simultaneous representation in unrelated matters of clients whose interests are only economically adverse, such as representation of competing economic enterprises in unrelated litigation, does not ordinarily constitute a conflict of interest and thus may not require consent of the respective clients.

[7]     Differing interests can also arise in transactional matters. For example, if a lawyer is asked to represent the seller of a business in negotiations with a buyer represented by the lawyer, not in the same transaction but in another, unrelated matter, the lawyer could not undertake the representation without the informed consent of each client.

[8]     Differing interests exist if there is a significant risk that a lawyer's exercise of professional judgment in considering, recommending or carrying out an appropriate course of action for the client will be adversely affected or the representation would otherwise be materially limited by the lawyer's other responsibilities or interests. For example, the professional judgment of a lawyer asked to represent several individuals operating a joint venture is likely to be adversely affected to the extent that the lawyer is unable to recommend or advocate all possible positions

that each client might take because of the lawyer's duty of loyalty to the others. The conflict in effect forecloses alternatives that would otherwise be available to the client. The mere possibility of subsequent harm does not itself require disclosure and consent. The critical questions are the likelihood that a difference in interests will eventuate and, if it does, whether it will adversely affect the lawyer's professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client.

**Lawyer's Responsibilities to Former Clients and Other Third Persons**

[9]    In addition to conflicts with other current clients, a lawyer's duties of loyalty and independence may be adversely affected by responsibilities to former clients under Rule 1.9, or by the lawyer's responsibilities to other persons, such as fiduciary duties arising from a lawyer's service as a trustee, executor or corporate director.

**Personal-Interest Conflicts**

[10]    The lawyer's own financial, property, business or other personal interests should not be permitted to have an adverse effect on representation of a client. For example, if the probity of a lawyer's own conduct in a transaction is in serious question, it may be difficult or impossible for the lawyer to give a client detached advice. Similarly, when a lawyer has discussions concerning possible employment with an opponent of the lawyer's client or with a law firm representing the opponent, such discussions could materially limit the lawyer's representation of the client. In addition, a lawyer may not allow related business interests to affect representation, for example, by referring clients to an enterprise in which the lawyer has an undisclosed financial interest. *See* Rule 5.7 on responsibilities regarding nonlegal services and Rule 1.8 pertaining to a number of personal-interest conflicts, including business transactions with clients.

[11]    When lawyers representing different clients in the same matter or in substantially related matters are closely related, there may be a significant risk that client confidences will be revealed and that the lawyer's family relationship will interfere with both loyalty and professional judgment. As a result, each client is entitled to know of the existence and implications of the relationship between the lawyers, before the lawyer agrees to undertake the representation. Thus, a lawyer who has a significant intimate or close family relationship with another lawyer ordinarily

may not represent a client in a matter where that other lawyer is representing another party, unless each client gives informed consent, as defined in Rule 1.0(j).

[12]    A lawyer is prohibited from engaging in sexual relations with a client in domestic relations matters. In all other matters a lawyer's sexual relations with a client are circumscribed by the provisions of Rule 1.8(j).

**Interest of Person Paying for Lawyer's Services**

[13]    A lawyer may be paid from a source other than the client, including a co-client, if the client is informed of that fact and consents and the arrangement does not compromise the lawyer's duty of loyalty or independent judgment to the client. See Rule 1.8(f). If acceptance of the payment from any other source presents a significant risk that the lawyer's exercise of professional judgment on behalf of a client will be adversely affected by the lawyer's own interest in accommodating the person paying the lawyer's fee or by the lawyer's responsibilities to a payer who is also a co-client, then the lawyer must comply with the requirements of paragraph (b) before accepting the representation, including determining whether the conflict is consentable and, if so, that the client has adequate information about the material risks of the representation.

**Prohibited Representations**

[14]    Ordinarily, clients may consent to representation notwithstanding a conflict. As paragraph (b) indicates, however, some conflicts are nonconsentable. If a lawyer does not reasonably believe that the conditions set forth in paragraph (b) can be met, the lawyer should neither ask for the client's consent nor provide representation on the basis of the client's consent. A client's consent to a nonconsentable conflict is ineffective. When the lawyer is representing more than one client, the question of consentability must be resolved as to each client.

[15]    Consentability is typically determined by considering whether the interests of the clients will be adequately protected if the clients consent to representation burdened by a conflict of interest. Thus, under paragraph (b)(1), notwithstanding client consent, a representation is prohibited if, in the circumstances, the lawyer cannot reasonably conclude that the lawyer will be able to provide competent and diligent representation. See Rule 1.1 regarding competence and Rule 1.3 regarding diligence.

[16]    Paragraph (b)(2) describes conflicts that are nonconsentable because the representation is prohibited by applicable law. For example, federal criminal statutes prohibit certain representations by a former government lawyer despite the informed consent of the former governmental client. In addition, there are some instances where conflicts are nonconsentable under decisional law.

[17]    Paragraph (b)(3) describes conflicts that are nonconsentable because of the institutional interest in vigorous development of each client's position when the clients are aligned directly against each other in the same litigation or other proceeding before a tribunal. Whether clients are aligned directly against each other within the meaning of this paragraph requires examination of the context of the proceeding. Although this paragraph does not preclude a lawyer's multiple representation of adverse parties to mediation (because mediation is not a proceeding before a "tribunal" as defined in Rule 1.0(w)), such representation may be precluded by paragraph (b)(1).

**Informed Consent**

[18]    Informed consent requires that each affected client be aware of the relevant circumstances, including the material and reasonably foreseeable ways that the conflict could adversely affect the interests of that client. Informed consent also requires that the client be given the opportunity to obtain other counsel if the client so desires. *See* Rule 1.0(j). The information that a lawyer is required to communicate to a client depends on the nature of the conflict and the nature of the risks involved, and a lawyer should take into account the sophistication of the client in explaining the potential adverse consequences of the conflict. There are circumstances in which it is appropriate for a lawyer to advise a client to seek the advice of a disinterested lawyer in reaching a decision as to whether to consent to the conflict. When representation of multiple clients in a single matter is undertaken, the information must include the implications of the common representation, including possible effects on loyalty, confidentiality and the attorney-client privilege, and the advantages and risks involved. *See* Comments [30] and [31] concerning the effect of common representation on confidentiality.

[19]    Under some circumstances it may be impossible to make the disclosure necessary to obtain consent. For example, when the lawyer represents different clients in related matters and one client refuses to consent to the disclosure necessary to permit the other client to make an informed decision, the lawyer cannot properly ask the latter to consent. In

some cases the alternative to common representation is that each party obtains separate representation with the possibility of incurring additional costs. These costs, along with the benefits of securing separate representation, are factors that may be considered by the affected client in determining whether common representation is in the client's interests. Where the fact, validity or propriety of client consent is called into question, the lawyer has the burden of establishing that the client's consent was properly obtained in accordance with the Rule.

**Client Consent Confirmed in Writing**

[20]    Paragraph (b) requires the lawyer to obtain the informed consent of the client, confirmed in writing. Such a writing may consist of (i) a document from the client, (ii) a document that the lawyer promptly transmits to the client confirming an oral informed consent, or (iii) a statement by the client made on the record of any proceeding before a tribunal, whether before, during or after a trial or hearing. *See* Rule 1.0(e) for the definition of "confirmed in writing." *See also* Rule 1.0(x) ("writing" includes electronic transmission). If it is not feasible to obtain or transmit the writing at the time the client gives informed consent, then the lawyer must obtain or transmit it within a reasonable time thereafter. The Rule does not require that the information communicated to the client by the lawyer necessary to make the consent "informed" be in writing or in any particular form in all cases. *See* Rules 1.0(e) and (j). The requirement of a writing does not supplant the need in most cases for the lawyer to talk with the client to explain the risks and advantages, if any, of representation burdened with a conflict of interest, as well as reasonably available alternatives, and to afford the client a reasonable opportunity to consider the risks and alternatives and to raise questions and concerns. Rather, the writing is required in order to impress upon clients the seriousness of the decision the client is being asked to make and to avoid disputes or ambiguities that might later occur in the absence of a writing. *See* Comment [18].

**Revoking Consent**

[21]    A client who has given consent to a conflict may revoke the consent and, like any other client, may terminate the lawyer's representation at any time. Whether revoking consent to the client's own representation precludes the lawyer from continuing to represent other clients depends on the circumstances, including the nature of the conflict, whether the client revoked consent because of a material change in circumstances, the reasonable expectations of the other clients, and whether material detriment to the other clients or the lawyer would result.

**Consent to Future Conflict**

[22]    Whether a lawyer may properly request a client to waive conflicts that might arise in the future is subject to the conditions set forth in paragraph (b). The effectiveness of advance waivers is generally determined by the extent to which the client reasonably understands the material risks that the waiver entails. At a minimum, the client should be advised generally of the types of possible future adverse representations that the lawyer envisions, as well as the types of clients and matters that may present such conflicts. The more comprehensive the explanation and disclosure of the types of future representations that might arise and the actual and reasonably foreseeable adverse consequences of those representations, the greater the likelihood that the client will have the understanding necessary to make the consent "informed" and the waiver effective. *See* Rule 1.0(j). The lawyer should also disclose the measures that will be taken to protect the client should a conflict arise, including procedures such as screening that would be put in place. *See* Rule 1.0(t) for the definition of "screening." The adequacy of the disclosure necessary to obtain valid advance consent to conflicts may also depend on the sophistication and experience of the client. For example, if the client is unsophisticated about legal matters generally or about the particular type of matter at hand, the lawyer should provide more detailed information about both the nature of the anticipated conflict and the adverse consequences to the client that may ensue should the potential conflict become an actual one. In other instances, such as where the client is a child or an incapacitated or impaired person, it may be impossible to inform the client sufficiently, and the lawyer should not seek an advance waiver. On the other hand, if the client is an experienced user of the legal services involved and is reasonably informed regarding the risk that a conflict may arise, an advance waiver is more likely to be effective, particularly if, for example, the client is independently represented or advised by in-house or other counsel in giving consent. Thus, in some circumstances, even general and open-ended waivers by experienced users of legal services may be effective.

[22A]    Even if a client has validly consented to waive future conflicts, however, the lawyer must reassess the propriety of the adverse concurrent representation under paragraph (b) when an actual conflict arises. If the actual conflict is materially different from the conflict that has been waived, the lawyer may not rely on the advance consent previously obtained. Even if the actual conflict is not materially different from the conflict the client has previously waived, the client's advance consent

cannot be effective if the particular circumstances that have created an actual conflict during the course of the representation would make the conflict nonconsentable under paragraph (b). *See* Comments [14]–[17] and [28] addressing nonconsentable conflicts.

**Conflicts in Litigation**

[23]   Paragraph (b)(3) prohibits representation of opposing parties in the same litigation, regardless of the clients' consent. On the other hand, simultaneous representation of parties whose interests in litigation may conflict, such as co-plaintiffs or co-defendants, is governed by paragraph (a)(1). A conflict may exist by reason of substantial discrepancy in the parties' testimony, incompatibility in positions in relation to an opposing party or the fact that there are substantially different possibilities of settlement of the claims or liabilities in question. Such conflicts can arise in criminal as well as civil cases. Some examples are those in which a lawyer is asked to represent co-defendants in a criminal case, co-plaintiffs or co-defendants in a personal injury case, an insured and insurer, or beneficiaries of the estate of a decedent. In a criminal case, the potential for conflict of interest in representing multiple defendants is so grave that ordinarily a lawyer should decline to represent more than one co-defendant. On the other hand, multiple representation of persons having similar interests in civil litigation is proper if the requirements of paragraph (b) are met.

[24]   Ordinarily a lawyer may take inconsistent legal positions in different tribunals at different times on behalf of different clients. The mere fact that advocating a legal position on behalf of one client might create precedent adverse to the interests of a client represented by the lawyer in an unrelated matter does not create a conflict of interest. A conflict of interest exists, however, if there is a significant risk that a lawyer's action on behalf of one client will materially limit the lawyer's representation of another client in a different case; for example, when a decision favoring one client will create a precedent likely to weaken seriously the position taken on behalf of the other client. Factors relevant in determining whether the clients need to be advised of this risk include: (i) where the cases are pending, (ii) whether the issue is substantive or procedural, (iii) the temporal relationship between the matters, (iv) the significance of the issue to the immediate and long-term interests of the clients involved, and (v) the clients' reasonable expectations in retaining the lawyer. Similar concerns may be present when lawyers advocate on behalf of clients before other entities, such as regulatory authorities whose regulations or rulings may significantly implicate clients' interests. If there is significant

risk of an adverse effect on the lawyer's professional judgment, then absent informed consent of the affected clients, the lawyer must decline the representation.

[25]  When a lawyer represents or seeks to represent a class of plaintiffs or defendants in a class-action lawsuit, unnamed members of the class are ordinarily not considered to be clients of the lawyer for purposes of applying paragraph (a)(1). Thus, the lawyer does not typically need to get the consent of such a person before representing a client suing the person in an unrelated matter. Similarly, a lawyer seeking to represent an opponent in a class action does not typically need the consent of an unnamed member of the class whom the lawyer represents in an unrelated matter.

**Nonlitigation Conflicts**

[26]  Conflicts of interest under paragraph (a)(1) arise in contexts other than litigation. For a discussion of such conflicts in transactional matters, see Comment [7]. Regarding paragraph (a)(2), relevant factors in determining whether there is a significant risk that the lawyer's professional judgment will be adversely affected include: (i) the importance of the matter to each client, (ii) the duration and intimacy of the lawyer's relationship with the client or clients involved, (iii) the functions being performed by the lawyer, (iv) the likelihood that significant disagreements will arise, (v) the likelihood that negotiations will be contentious, (vi) the likelihood that the matter will result in litigation, and (vii) the likelihood that the client will suffer prejudice from the conflict. The issue is often one of proximity (how close the situation is to open conflict) and degree (how serious the conflict will be if it does erupt). *See* Comments [8], [29] and [29A].

[27]  For example, conflict questions may arise in estate planning and estate administration. A lawyer may be called upon to prepare wills for several family members, such as husband and wife, and, depending upon the circumstances, a conflict of interest may be present at the outset or may arise during the representation. In order to avoid the development of a disqualifying conflict, the lawyer should, at the outset of the common representation and as part of the process of obtaining each client's informed consent, advise each client that information will be shared (and regardless of whether it is shared, may not be privileged in a subsequent dispute between the parties) and that the lawyer will have to withdraw from one or both representations if one client decides that some matter material to the representation should be kept secret from the other. *See* Comment [31].

[28]    Whether a conflict is consentable depends on the circumstances. For example, a lawyer may not represent multiple parties to a negotiation if their interests are fundamentally antagonistic to one another, but common representation is permissible where the clients are generally aligned in interest, even though there is some difference in interest among them. Thus, a lawyer may seek to establish or adjust a relationship between clients on an amicable and mutually advantageous basis. Examples include helping to organize a business in which two or more clients are entrepreneurs, working out the financial reorganization of an enterprise in which two or more clients have an interest, and arranging a property distribution in settlement of an estate. The lawyer seeks to resolve potentially adverse interests by developing the parties' mutual interests. Otherwise, each party might have to obtain separate representation, with the possibility of incurring additional cost, complication or even litigation. Given these and other relevant factors, the clients may prefer that the lawyer act for all of them.

**Special Considerations in Common Representation**

[29]    In civil matters, two or more clients may wish to be represented by a single lawyer in seeking to establish or adjust a relationship between them on an amicable and mutually advantageous basis. For example, clients may wish to be represented by a single lawyer in helping to organize a business, working out a financial reorganization of an enterprise in which two or more clients have an interest, arranging a property distribution of an estate or resolving a dispute between clients. The alternative to common representation can be that each party may have to obtain separate representation, with the possibility of incurring additional cost, complication or even litigation that might otherwise be avoided, or that some parties will have no lawyer at all. Given these and other relevant factors, clients may prefer common representation to separate representation or no representation. A lawyer should consult with each client concerning the implications of the common representation, including the advantages and the risks involved, and the effect on the attorney-client privilege, and obtain each client's informed consent, confirmed in writing, to the common representation.

[29A]    Factors may be present that militate against a common representation. In considering whether to represent multiple clients in the same matter, a lawyer should be mindful that if the common representation fails because the potentially adverse interests cannot be reconciled, the result can be additional cost, embarrassment and recrimination. Ordinarily, absent the informed consent of all clients, the lawyer will be forced

to withdraw from representing all of the clients if the common representation fails. *See* Rule 1.9(a). In some situations, the risk of failure is so great that multiple representation is plainly impossible. For example, a lawyer cannot undertake common representation of clients where contentious litigation or negotiations between them are imminent or contemplated. Moreover, because the lawyer is required to be impartial between or among commonly represented clients, representation of multiple clients is improper when it is unlikely that impartiality can be maintained. Generally, if the relationship between the parties has already assumed antagonism, it is unlikely that the clients' interests can be adequately served by common representation. For example, a lawyer who has represented one of the clients for a long period or in multiple matters might have difficulty being impartial between that client and one to whom the lawyer has only recently been introduced.

[30]    A particularly important factor in determining the appropriateness of common representation is the effect on client-lawyer confidentiality and the attorney-client privilege. With regard to the attorney-client privilege, the prevailing rule is that, as between commonly represented clients, the privilege does not attach. It must therefore be assumed that if litigation eventuates between the clients, the privilege will not protect any such communications, and the clients should be so advised.

[31]    As to the duty of confidentiality, continued common representation will almost certainly be inadequate if one client asks the lawyer not to disclose to the other client information relevant to the common representation. This is so because the lawyer has an equal duty of loyalty to each client, and each client has the right to be informed of anything bearing on the representation that might affect that client's interests and the right to expect that the lawyer will use that information to that client's benefit. *See* Rule 1.4. At the outset of the common representation and as part of the process of obtaining each client's informed consent, the lawyer should advise each client that information will be shared and that the lawyer will have to withdraw if one client decides that some matter material to the representation should be kept from the other. In limited circumstances, it may be appropriate for the lawyer to proceed with the representation when the clients have agreed, after being properly informed, that the lawyer will keep certain information confidential even as among the commonly represented clients. For example, the lawyer may reasonably conclude that failure to disclose one client's trade secrets to another client

will not adversely affect representation involving a joint venture between the two clients and agree to keep that information confidential with the informed consent of both clients.

[32]    When seeking to establish or adjust a relationship between clients, the lawyer should make clear that the lawyer's role is not that of partisanship normally expected in other circumstances and, thus, that the clients may be required to assume greater responsibility for decisions than when each client is separately represented. Any limitation on the scope of the representation made necessary as a result of the common representation should be fully explained to the clients at the outset of the representation. *See* Rule 1.2(c).

[33]    Subject to the above limitations, each client in the common representation has the right to loyal and diligent representation and the protection of Rule 1.9 concerning the obligations to a former client. The client also has the right to discharge the lawyer as stated in Rule 1.16.

**Organizational Clients**

[34]    A lawyer who represents a corporation or other organization does not, simply by virtue of that representation, necessarily represent any constituent or affiliated organization, such as a parent or subsidiary. *See* Rule 1.13(a). Although a desire to preserve good relationships with clients may strongly suggest that the lawyer should always seek informed consent of the client organization before undertaking any representation that is adverse to its affiliates, Rule 1.7 does not require the lawyer to obtain such consent unless: (i) the lawyer has an understanding with the organizational client that the lawyer will avoid representation adverse to the client's affiliates, (ii) the lawyer's obligations to either the organizational client or the new client are likely to adversely affect the lawyer's exercise of professional judgment on behalf of the other client, or (iii) the circumstances are such that the affiliate should also be considered a client of the lawyer. Whether the affiliate should be considered a client will depend on the nature of the lawyer's relationship with the affiliate or on the nature of the relationship between the client and its affiliate. For example, the lawyer's work for the client organization may be intended to benefit its affiliates. The overlap or identity of the officers and boards of directors, and the client's overall mode of doing business, may be so extensive that the entities would be viewed as "alter egos." Under such circumstances, the lawyer may conclude that the affiliate is the lawyer's client despite the lack of any formal agreement to represent the affiliate.

[34A] Whether the affiliate should be considered a client of the lawyer may also depend on: (i) whether the affiliate has imparted confidential information to the lawyer in furtherance of the representation, (ii) whether the affiliated entities share a legal department and general counsel, and (iii) other factors relating to the legitimate expectations of the client as to whether the lawyer also represents the affiliate. Where the entities are related only through stock ownership, the ownership is less than a controlling interest, and the lawyer has had no significant dealings with the affiliate or access to its confidences, the lawyer may reasonably conclude that the affiliate is not the lawyer's client.

[34B] Finally, before accepting a representation adverse to an affiliate of a corporate client, a lawyer should consider whether the extent of the possible adverse economic impact of the representation on the entire corporate family might be of such a magnitude that it would materially limit the lawyer's ability to represent the client opposing the affiliate. In those circumstances, Rule 1.7 will ordinarily require the lawyer to decline representation adverse to a member of the same corporate family, absent the informed consent of the client opposing the affiliate of the lawyer's corporate client.

**Lawyer as Corporate Director**

[35] A lawyer for a corporation or other organization who is also a member of its board of directors should determine whether the responsibilities of the two roles may conflict. The lawyer may be called on to advise the corporation in matters involving actions of the directors. Consideration should be given to the frequency with which such situations may arise, the potential intensity of the conflict, the effect of the lawyer's resignation from the board, and the possibility of the corporation's obtaining legal advice from another lawyer in such situations. If there is material risk that the dual role will compromise the lawyer's professional judgment, the lawyer should not serve as a director or should cease to act as the corporation's lawyer when conflicts of interest arise. The lawyer should advise the other members of the board that, in some circumstances, matters discussed at board meetings while the lawyer is present in the capacity of director might not be protected by the attorney-client privilege and that conflict of interest considerations might require the lawyer's recusal as a director or might require the lawyer and the lawyer's firm to decline representation of the corporation in a matter.

# Rule 1.7: Conflict of Interest: Current Clients

Share:

   

## *Client-Lawyer Relationship*

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

(1) the representation of one client will be directly adverse to another client; or

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) the representation is not prohibited by law;

(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4) each affected client gives informed consent, confirmed in writing.

Comment | Table of Contents | Next Rule

ABA  American Bar Association |
/content/aba-cms-
dotorg/en/groups/professional_responsibility/publications/model_rules_of_professional_conduct/rule_1_7_conflict_of_interest_current_clients

# NYSBA NY Rules of Professional Conduct (2021)

*Effective April 1, 2009, as amended through June 24, 2020, with commentary as amended through October 30, 2021.*

<u>Reproduced with permission by the
New York State Bar Association,
One Elk Street, Albany, NY 12207.</u>

<u>Please contact MRC@nysba.org for
permission to use or distribute this content.</u>

NEW YORK STATE BAR ASSOCIATION

**Use of this product confirms acceptance of the NYSBA license.**

# RULE 8.4

## MISCONDUCT

**A lawyer or law firm shall not:**

**(a)    violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;**

**(b)    engage in illegal conduct that adversely reflects on the lawyer's honesty, trustworthiness or fitness as a lawyer;**

**(c)    engage in conduct involving dishonesty, fraud, deceit or misrepresentation;**

**(d)    engage in conduct that is prejudicial to the administration of justice;**

**(e)    state or imply an ability:**

**(1)    to influence improperly or upon irrelevant grounds any tribunal, legislative body or public official; or**

**(2)    to achieve results using means that violate these Rules or other law;**

**(f)    knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law;**

**(g)    unlawfully discriminate in the practice of law, including in hiring, promoting or otherwise determining conditions of employment on the basis of age, race, creed, color, national origin, sex, disability, marital status, sexual orientation, gender identity, or gender expression. Where there is a tribunal with jurisdiction to hear a complaint, if timely brought, other than a Departmental Disciplinary Committee, a complaint based on unlawful discrimination shall be brought before such tribunal in the first instance. A certified copy of a determination by such a tribunal, which has become final and enforceable and as to which the right to judicial or appellate review has been exhausted, finding that the lawyer has engaged in an unlawful discriminatory practice shall constitute prima facie evidence of professional misconduct in a disciplinary proceeding; or**

**246**

**(h)    engage in any other conduct that adversely reflects on the lawyer's fitness as a lawyer.**

**Comment**

[1]    Lawyers are subject to discipline when they violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another, as when they request or instruct an agent to do so on their behalf. Paragraph (a), however, does not prohibit a lawyer from advising a client concerning action the client is legally entitled to take.

[2]    Many kinds of illegal conduct reflect adversely on fitness to practice law. Illegal conduct involving violence, dishonesty, fraud, breach of trust, or serious interference with the administration of justice is illustrative of conduct that reflects adversely on fitness to practice law. A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation.

[3]    The prohibition on conduct prejudicial to the administration of justice is generally invoked to punish conduct, whether or not it violates another ethics rule, that results in substantial harm to the justice system comparable to those caused by obstruction of justice, such as advising a client to testify falsely, paying a witness to be unavailable, altering documents, repeatedly disrupting a proceeding, or failing to cooperate in an attorney disciplinary investigation or proceeding. The assertion of the lawyer's constitutional rights consistent with
Rule 8.1, Comment [2] does not constitute failure to cooperate. The conduct must be seriously inconsistent with a lawyer's responsibility as an officer of the court.

[4]    A lawyer may refuse to comply with an obligation imposed by law if such refusal is based upon a reasonable good-faith belief that no valid obligation exists because, for example, the law is unconstitutional, conflicts with other legal or professional obligations, or is otherwise invalid. As set forth in Rule 3.4(c), a lawyer may not disregard a specific ruling or standing rule of a tribunal, but can take appropriate steps to test the validity of such a rule or ruling.

[4A]    A lawyer harms the integrity of the law and the legal profession when the lawyer states or implies an ability to influence improperly any officer or agency of the executive, legislative or judicial branches of government.

**NEW YORK RULES OF PROFESSIONAL CONDUCT**

[5]    Lawyers holding public office assume legal responsibilities going beyond those of other citizens. A lawyer's abuse of public office can suggest an inability to fulfill the professional role of lawyers. The same is true of abuse of positions of private trust such as trustee, executor, administrator, guardian, agent and officer, director or manager of a corporation or other organization.

[5A]    Unlawful discrimination in the practice of law on the basis of age, race, creed, color, national origin, sex, disability, marital status, or sexual orientation is governed by paragraph (g).

# Rule 8.4: Misconduct

Share:

    

## *Maintaining The Integrity Of The Profession*

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice;

(e) state or imply an ability to influence improperly a government agency or official or to achieve results by means that violate the Rules of Professional Conduct or other law;

(f) knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law; or

(g) engage in conduct that the lawyer knows or reasonably should know is harassment or discrimination on the basis of race, sex, religion, national origin, ethnicity, disability, age, sexual orientation, gender identity, marital status or socioeconomic status in conduct related to the practice of law. This paragraph does not limit the ability of a lawyer to accept, decline or withdraw from a representation in accordance with Rule 1.16. This paragraph does not preclude legitimate advice or advocacy consistent with these Rules.

Comment | Table of Contents | Next Rule



American Bar Association

/content/aba-cms-dotorg/en/groups/professional_responsibility/publications/model_rules_of_professional_conduct/rule_8_4_misconduct