UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

CASE NO. 22-11150-G

L.T. Case No. 9:18-cv-80176-BB

IRA KLEIMAN, as the Personal
Representative of the Estate of
David Kleiman,

     *Appellant,*

vs.

CRAIG WRIGHT,

     *Appellee.*

## PLAINTIFFS' OPPOSITION TO WRIGHT'S MOTION TO DISQUALIFY ROCHE FREEDMAN LLP

Devin (Velvel) Freedman, Esq.
Florida Bar No. 99762
ROCHE FREEDMAN LLP
1 SE 3rd Avenue, Suite 1240
Miami, FL 33131
vel@rochefreedman.com

Kyle W. Roche, Esq.
*Admitted Pro Hac Vice*
ROCHE FREEDMAN LLP
99 Park Avenue, Suite 1910
New York, NY 10016
kyle@rochefreedman.com

*Counsel to Appellant Ira Kleiman as Personal Representative of the Estate of David Kleiman.*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, Appellant IRA KLEIMAN, as the Personal Representative of the Estate of David Kleiman, respectfully submits the following Certificate of Interested Parties and Corporate Disclosure Statement:

1.    The Honorable Judge Beth Bloom, *U.S. District Judge*

2.    Boies Schiller Flexner LLP, *Counsel for Plaintiff-Appellant*

3.    Brenner, Andrew, *Counsel for Plaintiff-Appellant*

4.    BTCN 1610-491 LLC (CE)

5.    Delich, Joseph, *Counsel for Plaintiff-Appellant*

6.    Devine Goodman & Rasco, LLP, *Counsel for Non-Party Andrew O'Hagan*

7.    *Economides, Constantine Philip, *Counsel for Plaintiff-Appellant*

8.    Estate of David Kleiman, *Plaintiff-Appellant*

9.    Fernandez, Amanda Lara, *Counsel for Defendant-Appellee*

10.   Fernandez, Michael, *Counsel for Defendant-Appellee*

11.   Freedman, Devin ("Velvel"), *Counsel for Plaintiff-Appellant*

12.   Glaser, Patricia, *Counsel for Non-Party John Doe*

13.   Glaser Weil Fink Howard Avchen & Shapiro LLP, *Counsel for Non-Party John Doe*

14.   Harrison, Laselve, *Counsel for Plaintiff-Appellant*

15.   Henry, Allison, *Counsel for Defendant-Appellee*

16.   *Holtzman, Alexander, *Counsel for Plaintiff-Appellant*

17.   Kass, Zalman, *Counsel for Plaintiff-Appellant*

18.   Kleiman, Ira, *Plaintiff-Appellant*

19.   Kuntz, Robert, *Counsel for Defendant-Appellee*

20.   Lagos, Stephen, *Counsel for Plaintiff-Appellant*

21.   Licata, Samantha, *Counsel for Plaintiff-Appellant*

22.   *Lohr, Whitney, *Counsel for Plaintiff-Appellant*

23.   *Markoe, Zaharah, *Counsel for Defendant-Appellee*

24.   McGovern, Amanda, *Counsel for Defendant-Appellee*

25.   Mestre, Jorge, *Counsel for Defendant-Appellee*

26.   Payne, Darrell Winston, *Counsel for Non-Party John Doe*

27.   Pritt, Maxwell, *Counsel for Plaintiff-Appellant*

28.   Rasco, Guy Austin, *Counsel for Non-Party Andrew O'Hagan*

29.   The Honorable Judge Bruce Reinhart, *U.S. District Magistrate Judge*

30.   Rivero, Andres, *Counsel for Defendant-Appellee*

31.   Rivero Mestre LLP, *Counsel for Defendant-Appellee*

32.   Roche Freedman LLP, *Counsel for Plaintiff-Appellant*

33.   Roche, Kyle, *Counsel for Plaintiff-Appellant*

34.    Rolnick, Alan, *Counsel for Defendant-Appellee*

35.    Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., *Counsel for Non-Party John Doe*

36.    Wright, Craig, *Defendant-Appellee*

37.    Zack, Stephen, *Counsel for Plaintiff-Appellant*

* = no longer involved in representation

Appellant certifies that no publicly traded company or corporation has an interest in the outcome of this case or appeal.

## PLAINTIFFS' OPPOSITION TO WRIGHT'S MOTION
## TO DISQUALIFY ROCHE FREEDMAN LLP

Defendant Craig Wright ("Wright") seeks to disqualify Roche Freedman LLP ("RF") from this appeal on the basis that, in his view, certain surreptitiously recorded videos of Kyle Roche from an anonymous tabloid website justify the drastic remedy of disqualification. Wright, citing no authority for his extraordinary request beyond a handful of boilerplate cases, weakly suggests that this case – which was tried through to a jury verdict and found to be meritorious – was brought for some improper purpose. As detailed below, Wright's characterization of the videos and the inferences he draws are unsupported and false. There is no legal basis for disqualifying Mr. Roche from this case, let alone the entire firm.

To be clear, many of the remarks Mr. Roche made in the secretly recorded videos are inappropriate. While the meetings at which these recordings took place appear to have been part of a set up orchestrated by a defendant in an unrelated class action RF is pursuing, that does not excuse certain remarks made. RF has accordingly taken remedial measures to safeguard against even the appearance of impropriety in its class action practice and to avoid unnecessary distraction from its cases, some of which have already survived motions to dismiss and are therefore inherently meritorious (contrary to Wright's assertions in his motion).

But Wright now seeks to seize on the negative press from these recordings in an attempt to strategically disqualify the attorneys who have led this litigation since

5

its inception and who prevailed in securing a $100 million jury verdict against him in this matter. Tellingly, Wright's motion fails to cite *any* record evidence from the four- and half-year history of this litigation, including the fifteen-day jury trial. He also does not explain why Mr. Roche's statements, which were made after this matter was fully litigated, justify disqualifying the entire firm from *this* case.

Wright's improper and tactical motion to disqualify Plaintiffs' choice of counsel should be denied.

## FACTUAL BACKGROUND

On January 27, 2022, Mr. Roche attended a meeting in London to facilitate what he at the time understood to be a potential venture capital investment. Mr. Roche attended that meeting, which was recorded without his knowledge or consent, to pursue the interests of a technology start-up initiative. On August 26, 2022, a posting on an anonymous tabloid website leaked a series of highly edited video clips of Mr. Roche from that meeting that were taken out of context. Based on RF's investigation, the meeting appears to have been a set-up orchestrated by a defendant in an unrelated class action RF is pursing.

Unfortunately, at that meeting, Mr. Roche made inappropriate remarks apparently intended to impress the participants at the meeting. Some of these remarks were also untrue. Given that the untrue statements relate to RF's class action practice—which is not at issue in this litigation—the firm removed Mr. Roche from

that practice to protect against even the appearance of impropriety, and to avoid unnecessary distraction from the merits of its cases. None of this has anything to do with the case on appeal here.

As demonstrated below, the inferences Wright draws from these highly edited and incomplete videoclips are not just false, they are demonstrably false. And while Mr. Roche's statements are regrettable, there is no basis for his disqualification – let alone for RF's disqualification – in this action.

**A. The Firm did not use this litigation as a strategic instrument for the benefit of another client's interests**

In his motion, Wright argues that this entire case was brought in order to "take down" Wright, the self-professed "arch-nemesis" of the founder of Ava Labs, an innovative crypto company RF has represented. This argument is baseless, and indisputably belied by the facts and timeline of this case.

The Estate of David Kleiman, later joined by W&K Info Defense Research LLC ("W&K"), commenced this action against Wright on February 14, 2018. When the case was filed, the lead attorneys on the case were Devin "Velvel" Freedman and Kyle Roche. At that point, RF was not yet formed, both Mr. Freedman and Mr. Roche were attorneys at Boies Schiller Flexner LLP ("BSF"), and Ava Labs did not even exist, and would not even exist, for another six months.

Mr. Freedman and Mr. Roche formed RF in August 2019, and continued their pre-existing representation of Plaintiffs through their new firm and by co-counseling

with their old firm, BSF. RF did not begin representing Ava Labs until the end of

September 2019 – nearly two months after RF was formed and twenty-one months

after this litigation was commenced. The work RF did for Ava Labs was focused on

defense-side cases typical of any large corporation. Ava Labs had no input, control,

or insight into any of the firm's other cases and RF never filed any of those actions

on its behalf.

**B. The Firm did not share any confidential material.**

RF has never shared any confidential discovery material with any firm client

who is not a party to the litigation.[1] There is no evidence to the contrary. Importantly,

Mr. Roche's comments **do not** include a statement that he shared confidential

discovery materials, and he has explained that is not what he intended to convey.

What Mr. Roche intended to convey through his statements was that due to the

numerous (and high profile) lawsuits he has filed in the cryptocurrency space,

dozens of whistleblowers and other insiders have sent him information that has

proved useful in pursuing class action claims. Indeed, given the highly publicized

nature of this case in the crypto-asset community, numerous third parties reached

out to both RF and BSF to expose the fraudulent nature of the many documents

Wright submitted to the Court, actions at issue in this appeal.

---

[1] For the avoidance of doubt, RF has also never shared any confidential discovery
material with any third party who was not authorized to receive the materials.

**C. Mr. Roche's comments do not reflect the Firm's beliefs about jurors.**

The inappropriate comments Mr. Roche made regarding jurors do not reflect the view of the Firm or any of the other 24 other lawyers practicing at the Firm. These comments also do not reflect Mr. Roche's sincerely held beliefs and were made while under the influence of alcohol.

## LEGAL STANDARD

"Because a party is presumptively entitled to the counsel of his choice, that right may be overridden only if 'compelling reasons' exist." *In re BellSouth Corp.*, 334 F.3d 941, 961 (11th Cir. 2003) (quoting *Tex. Catastrophe Prop. Ins. Ass'n v. Morales*, 975 F.2d 1178, 1181 (5th Cir. 1992)). "Thus, courts consider disqualification of a party's chosen counsel to be 'a drastic remedy that should be resorted to sparingly.'" *JAWHBS, LLC v. Arevalo*, 224 F. Supp. 3d 1296, 1299 (S.D. Fla. 2016) (quoting *Armor Screen Corp. v. Storm Catcher, Inc.*, 709 F. Supp. 2d 1309, 1310 (S.D. Fla. 2010)). "The moving party bears the burden of proving grounds for disqualification." *Id.* (citing *In re BellSouth Corp.*, 334 F.3d at 961).

Under New York law, "except in rare cases, ethical issues regarding attorneys are properly dealt with in professional disciplinary bodies rather than by motions to disqualify counsel, which are subject to abuse." *Universal City Studios, Inc. v. Reimerdes*, 104 F. Supp. 2d 334, 358 (S.D.N.Y. 2000), *on reconsideration*, 2000 WL 1016649 (S.D.N.Y. July 19, 2000).

# ARGUMENT

Wright's insistence that RF be removed from this case is nothing more than a litigation tactic intended to remove Plaintiffs' preferred counsel – the lawyers responsible both for originating the case and leading the trial at issue in this appeal.

The underlying arguments for Wright's scattershot motion to disqualify RF appear to be premised on the flawed belief that: (i) Mr. Roche's statements reveal that this lawsuit was brought for an improper purpose and that the firm has a disqualifying conflict of interest; (ii) Mr. Roche shared discovery information from this case with other firm clients; and (iii) Mr. Roche's statements about jurors create some sort of manifest injustice in this case.

As demonstrated below, each of these arguments fail both factually and legally, and Wright's motion fails to show any concrete basis to disqualify RF.

**1) Wright's contention that this suit was brought on behalf of another client is frivolous.**

In his motion, Wright argues that this case was instituted for an improper purpose – namely to "take down" Wright, whom the motion describes as the "arch nemesis" of Ava Labs' founder. Wright's argument is unfounded.

This case was filed more than seventeen months before RF was even formed, more than six months before Ava Labs even existed, more than nineteen months before RF ever represented Ava Labs, and more than thirty-one months before the Ava Labs crypto-asset was even released. Under such circumstances, there could not

10

have been a "significant risk" that RF's subsequent representation of Ava Labs, almost two years into this case, would "materially limit" RF's ability to represent Plaintiff. *See* N.Y. RPC 1.7(a)(2). Indeed, Plaintiff is aware of no law in any district—and Wright cites to none—that would disqualify a firm from a representation simply because another client the firm represents is a "nemesis" (or even a business adversary) of the adverse party in the representation.

In addition, Wright's suggestion that this action was brought for an improper purpose defies logic. To state the obvious, this action was brought because Plaintiffs—who have never met anyone from and have no affiliation with Ava Labs—believed in good faith that Wright converted their valuable bitcoin and blockchain-related intellectual property. Those claims survived multiple dispositive motions (including a post-discovery motion for summary judgment) and proceeded to a fifteen-day jury trial, where Plaintiff W&K obtained a $143-million judgment against Wright.

Contrary to Wright's assertion, Mr. Roche has not "confessed to bringing pretextual lawsuits, for improper purposes, on behalf of undisclosed shadow clients." *See* Motion at 18. As detailed in the very declaration from Mr. Roche that Wright annexed to his motion, there is no truth to these statements. *See* Motion Ex. A at 17-19. The spliced video clips included statements that were taken out of context and others that were simply false and the result of intoxication. *See id.*

Wright nevertheless attempts (at 16) to support his theory by suggesting that RF acted improperly in connection with its representation of Ava Labs' CEO in litigation against Emre Aksoy. But Wright offers no explanation as to how RF's representation in that matter of its client, who was falsely labeled a "terrorist" by Mr. Aksoy and suffered damages as a result, was improper. There were no "undisclosed interested parties," as Wright insinuates; the plaintiff was Ava Labs' CEO, the individual who was defamed by Mr. Aksoy.

In any event, it is not necessary for this Court to conduct a fact-intensive inquiry into these issues in order to determine whether RF should be disqualified. As detailed above, not only did this matter begin before RF or Ava Labs were even formed, but the allegations against Mr. Roche also have nothing to do with the merits of this appeal, which concerns Wright's misconduct, Wright's counsel's misconduct, and various legal errors raised. Wright's motion, which consists of boilerplate citations and conclusory allegations, does not say otherwise.[2]

2) **The fact that some RF lawyers have a financial interest in various crypto-assets does not create a significant risk of impacting their professional judgment.**

---

[2] Wright's argument that this case was initiated for some improper purpose also completely ignores that at all times the Estate was also represented by BSF. Co-counsel litigated this case every step of the way, including signing pleadings and other papers under the threat of sanctions and reviewing and approving strategic decisions. Thus, the notion that Roche was simultaneously acting at the behest of some outside actor defies reality

Wright's suggestion that a disqualifying conflict of interest exists because some RF lawyers own AVAX tokens, or have a personal equity interest in Ava Labs, is similarly meritless. "[T]he mere existence of financial or business interests does not warrant disqualification." *Power Play 1 LLC v. Norfolk Tide Baseball Club, LLC*, No. 17CV4831, 2017 WL 5312193, at *4 (S.D.N.Y. Nov. 13, 2017). "Rather, there must be a 'significant risk' that these interests will 'adversely affect[]' the lawyer's exercise of professional judgment on behalf of the client." *Id.* (citing N.Y. Rule of Prof'l Conduct 1.7(a)(2) (finding that even though a lawyer's financial arrangement simply seemed "unseemly," the movant failed to explain how the lawyer's "financial and business interests . . . would impair his professional judgment or how it was adverse to Defendants' interests").[3]

Wright has done nothing to show such a "significant risk" exists in this case. At its core, his argument boils down to the idea that Mr. Roche's statements concerning an aggressive style of litigation (made more than a month after RF secured a $100-million jury verdict for one of the Plaintiffs in this matter, when he was intoxicated and being illegally recorded) have prejudiced settlement efforts in this case. Specifically, according to Wright, Mr. Roche's "newfound wealth" from

---

[3] The language of Fl. St. Bar Rule 4-1.7 is identical to Model Rule 1.7(a)(2). Both do not conflict with New York's version of Rule 1.7. Accordingly, there is no material difference between New York Law and Florida Law on these issues.

his representation of Ava Labs permits him to "disregard his clients' interests in the settlement process," including by, in this case, "breaching mediation confidentiality rules," publicizing settlement offers, and then rejecting those offers. Motion at 15-16. But Wright's accusations are entirely unsupported.

First, despite Wright's assertions (at 16) to the contrary, RF never made public confidential settlement discussions. On November 1, 2019, Plaintiffs filed a motion with the district court in this matter seeking to expedite certain discovery as a result of being informed by Wright that he could not follow through with a "non-binding settlement agreement." ECF [290], at 2. Importantly, the parties did not have *any* confidentiality agreement in place concerning those settlement discussions and Wright has never provided any evidence showing otherwise.

Second, the idea that the breakdown of settlement negotiations is evidence of a "significant risk" that Mr. Roche's personal interests "adversely affect[ed]" his professional judgment is demonstrably false. The referenced "non-binding settlement" was agreed to in principle on September 11, 2019, ECF [290], at 1-2, which was *before* RF was retained by Ava Labs and nearly a year before the AVAX crypto-asset was launched. In other words, even if Wright's personal-interest conflict argument had merit (it does not), it would have been impossible for such a conflict to exist at the time that these settlement discussions took place.

14

Finally, the breakdown in settlement was not a result of Mr. Roche rejecting the settlement offer. As stated in the filing with the district court, the non-binding settlement agreement was "breached" by Wright when Calvin Ayre, Wright's litigation funder, would no longer fund the settlement agreed to. Subsequent settlement offers by Wright are protected by confidentiality, but were unacceptably and unreasonably low (especially given the outcome of this litigation), and were rejected after consultation with both RF and BSF.

### 3) The Firm did not share any confidential information in any case.

As explained above, no confidential discovery material has ever been shared with any third party. None of the statements made by Mr. Roche in any of the videos communicate anything to the contrary.

Indeed, Wright does not even attempt to tie his assertion that Mr. Roche misuses confidential information and trade secrets learned from litigation to any of the statements made in the illegally recorded and spliced videos. Nor does Wright cite any evidence that there's been any discovery abuses (on the part of Plaintiffs or their counsel) in this case. There is no basis to compel disqualification of RF based on the unsupported inferences Wright draws from the videos at issue.

### 4) Mr. Roche's inappropriate remarks concerning juries do not support disqualification of him or RF.

The inappropriate comments Mr. Roche made regarding jurors and class members do not reflect the view of RF or any of the other 24 other lawyers practicing

at the Firm. They also do not represent Mr. Roche's true beliefs about juries and he is deeply regretful that he made these comments.

Wright's attempt to leverage these recorded comments to disqualify Mr. Roche and RF lacks any legal support. None of the authority he cites (at 18-19) comes anywhere close to providing a basis to disqualify RF on these facts. *See In re Herman*, 632 F. App'x 580, 584 (11th Cir. 2015) (finding disqualification appropriate where attorney filed false statements for compensation and for suborning false testimony in Chapter 7 bankruptcy proceeding); *Brown & Williamson Tobacco Corp. v. Daniel Int'l Corp.*, 563 F.2d 671, 673 (5th Cir. 1977) (finding no basis to disqualify attorneys for joint representation where no conflict of interest was present); *Greene v. Greene*, 47 N.Y.2d 447, 451-53 (1979) (disqualifying firm from representation of plaintiff where two partners of the firm were jointly and severally liable for the claims at issue in the case); *In re Liberty Music & Video, Inc.*, 54 B.R. 799, 803-805 (Bankr. S.D.N.Y. 1985) (disqualifying firm representing tenant against landlord where the general partner for landlord was also a general partner in limited partnership in which attorneys for law firm were limited partners). Moreover, Wright cites no authority to support the proposition that a statement of personal opinion by a law firm partner warrants disqualification of the remainder of the firm.[4]

---

[4] Indeed, Florida Rule of Professional Conduct 4-1.10(a) specifically does *not* impute personal interest conflicts of one lawyer to the remainder of the firm where the personal interest conflict "does not present a significant risk of materially

At bottom, while the remarks Mr. Roche made were inappropriate, there is no legal basis for those comments warranting his disqualification from this matter, let alone disqualification of RF.

## **CONCLUSION**

For the foregoing reasons we respectfully request that the Court deny Wright's motion to disqualify Roche Freedman LLP.

---

limiting the representation of the client by the remaining lawyers in the firm." Thus, to the extent Mr. Roche's comments give the Court pause, they should not serve as a basis to disqualify the entire firm. *See also* ABA Model Rule 1.10(a)(1).

## <u>CERTIFICATE OF COMPLIANCE</u>

This response complies with the type-volume limitation of Fed. R. App. P.

27(d)(2)(A) because it contains 3,034 words. This response also complies with the

typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements

of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced

typeface using Microsoft Word in 14-point Times New Roman font.


*/s/ Devin (Velvel) Freedman*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 16, 2022, a copy of the brief was served on all counsel of record via CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

*/s/ Devin (Velvel) Freedman*