IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

Case No. 22-11150-GG
L.T. Case No. 9:18-cv-80176-BB

---

IRA KLEIMAN, as the Personal Representative of the Estate of David Kleiman,
*plaintiff-appellant*,

v.

CRAIG WRIGHT,
*defendant-appellee*.

---

## REPLY IN SUPPORT OF APPELLEE'S MOTION TO DISQUALIFY ROCHE FREEDMAN LLP

---

Andrés Rivero
Alan H. Rolnick
Robert J. Kuntz, Jr.
RIVERO MESTRE LLP
2525 Ponce de León Blvd.,
Suite 1000
Miami, FL 33134
Tel: (305) 445-2500
Fax: (305) 445-2505
E-mail: arivero@riveromestre.com
Counsel for appellee

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Eleventh Circuit Rule 26.1, Appellee Dr. Craig Wright ("Dr. Wright"), respectfully submits the following Certificate of Interested Persons[1] and Corporate Disclosure Statement:

1. The Honorable Judge Beth Bloom, *U.S. District Judge*
2. Boies Schiller Flexner LLP, *Counsel for Plaintiff-Appellant*
3. Brenner, Andrew, *Counsel for Plaintiff-Appellant*
4. BTCN 1610-491 LLC (CE)
5. Delich, Joseph, *Counsel for Plaintiff-Appellant*
6. Devine Goodman & Rasco, LLP, *Counsel for non-party Andrew O'Hagan*
7. Economides, Constantine Philip *Counsel for Plaintiff-Appellant*
8. Estate of David Kleiman, *Plaintiff-Appellant*
9. Fernandez, Amanda Lara, *Counsel for Defendant-Appellee*
10. Fernandez, Michael Alexander, *Counsel for Defendant-Appellee*
11. Freedman, Velvel, *Counsel for Plaintiff-Appellant*
12. Glaser, Patricia, *Counsel for non-party John Doe*
13. Glaser Weil Fink Howard Avchen & Shapiro LLP, *Counsel for nonparty*

---

[1] Based on the facts set forth in this motion, Ava Labs and Emin Gun Sirer appear to be interested persons.

1

*John Doe*

14. Harrison, Laselve, *Counsel for Plaintiff-Appellant*

15. Henry, Allison, *Counsel for Defendant-Appellee*

16. *Holtzman, Alexander, *Counsel for Plaintiff-Appellant*

17. Kass, Zalman, *Counsel for Defendant-Appellee*

18. Kleiman, Ira, *Plaintiff-Appellant*

19. Kuntz, Robert, *Counsel for Defendant-Appellee*

20. Lagos, Stephen, *Counsel for Plaintiff-Appellant*

21. Licata, Samantha, *Counsel for Plaintiff-Appellant*

22. *Lohr, Whitney, *Counsel for Defendant-Appellee*

23. *Markoe, Zaharah*, Counsel for Defendant-Appellee*

24. McGovern, Amanda *Counsel for Defendant-Appellee*

25. Mestre, Jorge, *Counsel for Defendant-Appellee*

26. Payne, Darrell Winston, *Counsel for non-party John Doe*

27. Pritt, Maxwell, *Counsel for Plaintiff-Appellant*

28. Rasco, Guy Austin, *Counsel for non-party Andrew O'Hagan*

29. The Honorable Judge Bruce Reinhart, *U.S. District Magistrate Judge*

30. Rivero, Andres, *Counsel for Defendant-Appellee*

31. Rivero Mestre LLP, *Counsel for Defendant-Appellee*

32. Roche Freedman LLP, *Counsel for Plaintiff-Appellant*

33. Roche, Kyle, *Counsel for Plaintiff-Appellant*

34. Rolnick, Alan, *Counsel for Defendant-Appellee*

35. Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., *Counsel for non-party John Doe*

36. Wright, Craig, *Defendant-Appellee*

37. Zack, Stephen, *Counsel for Plaintiff-Appellant*

\* = no longer involved in representation

Appellee certifies that no other judges, attorneys, persons, associations of persons, firms, partnerships, or corporations have an interest in the outcome of this appeal.

# REPLY IN SUPPORT OF
# APPELLEE'S MOTION TO DISQUALIFY ROCHE FREEDMAN LLP

Kyle Roche, on camera, recently exposed the guiding principles and standard practices of his law firm, Roche Freedman LLP ("the Firm"): litigate on behalf of undisclosed business partners. Sue every competitor in sight to learn its secrets and keep regulators busy investigating those competitors. Employ litigation as a weapon to further personal vendettas. Never settle, no matter what a client's interests or common sense may demand. Hold everyone outside the Firm – clients, counsel, courts – beneath contempt.

Roche Freedman LLP's Response to the motion to disqualify the Firm is an exercise in serial irrelevancy, trivialization and dissociation. None of it has any merit, and all of it is unavailing. Roche has confessed to offenses not merely personal, but institutional, and they call for the Firm's disqualification.

1. **The Response is Largely Irrelevant**

It is irrelevant that the Firm's corporate masters, whom Roche has admitted the Firm serves, didn't exist in precisely their present corporate form when the Firm commenced the case that spawned this appeal.[2] Roche and the Firm had a glaring conflict in favor of those shadow clients ***for more than two years before***

---

[2] Response at 8.

4

***the case went to trial***, and the Firm has that conflict now, as Roche admitted on camera.

Indeed, the Response's assurance that Ava Labs ("Ava") was not a Roche Freedman client until "nearly two months after RF was formed"[3] is not merely irrelevant, but profoundly disingenuous. As corporate affairs are measured, the formation of the Roche Freeman law firm and its representation of Ava occurred essentially simultaneously. As Roche described it on camera, that "representation" is really better understood as a partnership, coordinated by players with conjoined interests, sharing not only office space, but also—as Roche boasted—top spots on the Ava cap table. The association of Ava and Roche Freedman was foundational to Roche's singular business plan to become a kingmaker and enforcer in the "crypto" world, where he would wield his law license like a cudgel against any Ava competitor.

Roche Freedman plainly has been in league with Ava and its founder, Emin Gün Serir, for the past three years—the majority of this case's lifespan—including two full years before the Firm took the case to trial to further its admitted goals of self-aggrandizement and harassment. Funded by shadow clients, working in their interests, the Firm conducted this case exactly as Roche described on camera. No true consideration was given to settlement, despite two formal mediations before

---

[3] Response at 8

5

two different mediators and substantial settlement offers on the table. Normal economic considerations never attended this litigation after Roche Freedman began working for Ava. The Firm was unconcerned with the dubious merits of a case it pursued through trial (where the Estate failed on every claim, then took this appeal), because the real purpose of the case wasn't to seek recovery for actual claims, but to vindicate Roche's business plan for Ava's benefit, which was in turn central to the Firm's own business. Roche admits on camera that—whyever and however the Firm may have **begun** the case—as soon as Emin Gün Serir was on board, the Firm was there to "take down" his perceived nemesis, Craig Wright.

It also is irrelevant that Roche and his co-founding partner **began** this case at the Boies Schiller firm.[4] One needn't speculate about why they left and took the matter with them. Roche's statements make the reasons plain: he left Boies Schiller to do exactly what he did in this case for the benefit of his undisclosed non-lawyer partners, his Attorney's Oath and clients' interests be damned. The Response points to bare dates as if they somehow explain away this conflict. Not even close.[5]

---

[4] Response at 7.

[5] It can be assumed that a proper inquiry – such as The Florida Bar may undertake – will reveal when the actual association between the firm Roche created and its benefactors at Ava was first conceived.

6

In the Firm's Response, irrelevancies come not as single spies, but in battalions. It is irrelevant that Roche's outrageous behavior was recorded surreptitiously, or by a "tabloid,"[6] because he said what he said and even Roche Freedman doesn't claim otherwise. It would be irrelevant, even if it were true, that the Firm hasn't disclosed confidential information in ***this*** matter.[7] Roche's admission that the Firm makes a regular practice of doing so would alone call the Firm's trustworthiness into unacceptable doubt.

It also is irrelevant that Roche claims to have been drunk when he said what he said about jurors, the Firm's litigation targets, the Firm's own clients, and the Firm's litigation practices,[8] ***none of which he denies.*** Whether he was drunk or sober, Roche is now on record as having admittedly said these scandalous things, which have made him a justly notorious figure. It would be (and is) irrelevant if disqualifying the Firm has "nothing to do with the merits of this appeal."[9] A motion to disqualify rarely, if ever, turns on the merits of a case, but rather on the worthiness of counsel to participate in it.

---

[6] Response at 5.

[7] Response at 8.

[8] Response at 11, 13.

[9] Response at 12.

7

Moreover, it also is irrelevant if "the mere existence of a financial interest does not warrant disqualification,"[10] because Roche has made it clear that we are far beyond a "mere existence" of a financial interest. The problem is not *merely* that Firm partners have enormous equity in Ava, or that Roche was, as he crowed, "the first person on the cap table."[11] The problem is Roche's unequivocal, on-camera declaration that his and his partners' own financial interests are what drive Roche Freedman's litigation practice, to the exclusion of their clients' interests, not to mention their obligations to this Court and every other court.

What *is* relevant, and cannot be denied, is that Roche's on-camera statements are admissions of his and his firm's conflicts of interest under Rule 1.7 of the New York Rules of Professional Conduct.[12] Further, the very statements

---

[10] Response at 13.

[11] https://d33wubrfki0l68.cloudfront.net/ba470e47132c5cb938f344be9ffd8261adc0eca2/6c3ea/videos/c3-01-office-deal-for-perc-token-supply.mp4.

[12] This Court applies the professional conduct rules of the state where a lawyer is licensed, to the extent they do not conflict with the Model Rules. Rule 1.A., 11th Cir. R. Addendum Eight (Rules Governing Attorney Discipline in the U.S. Court of Appeals for the Eleventh Circuit). Roche is licensed in New York (Bar No. 5517776), and appeared pro hac vice below. New York's version of Rule 1.7 does not conflict with Model Rule 1.7. *Compare* N.Y. RULES OF PROF'L CONDUCT R. 1.7 (Ex. B), *with* MODEL RULES OF PROF'L CONDUCT R. 1.7.

themselves constitute violations of Rules 8.4(c) and 8.4(d),[13] and admit to a prevailing, improper, unlawful litigation philosophy and law firm business model that not only violates, but is ***dependent*** on violating, Rule 8.4.

### 2. The Response Trivializes Roche's Profound Misconduct

When not relying on irrelevancy, the Response seeks refuge in soft-pedaling and trivializing Roche's manifest offenses. The Response almost exclusively characterizes Roche's appalling admissions as "inappropriate," describing them thus six times in twelve pages.[14] However, affixing an "inappropriate" label doesn't dispute the truthfulness of Roche's statements, which Roche has admitted. Nor should it distract the reader from the obvious conclusion that Roche has confessed to practices that could support an investigation and very serious sanctions.

"Inappropriate" just won't do. It would be "inappropriate" for Roche to argue before this Court without wearing a necktie. It would be "inappropriate" for him to keep talking when a judge asks a question. Roche's statements were not merely "inappropriate." They were frank, candid admissions of ongoing, pervasive,

---

[13] Rules 8.4(c) and 8.4(d) prohibit attorneys from engaging "in conduct involving dishonesty, fraud, deceit, or misrepresentation," and "conduct that is prejudicial to the administration of justice," respectively.

[14] To be fair, the Response does (once) call Roche's statements "regrettable." Response at 7. However, "regrettable" (like "inappropriate") displays the same contempt for the legal system as Roche's on-camera comments.

unethical conduct, and constituted a plenary denunciation of Roche's oath as a lawyer and his obligations to everyone—litigants, lawyers and judges—who participates in the legal system.

### 3. The Firm Cannot Disassociate from its Leader's Conduct

If distractions and downplaying won't work, Roche Freedman evidently hopes disassociation might. The Firm asserts that Roche's contemptible beliefs and practices are not those of his partners and associates. Response at 9. However, until Roche condemned himself out of his own mouth, then went silent, he was the founder, face and voice of his firm. Further, Roche founded the Firm, he admits, to pursue precisely the wrongful ends, by precisely the unethical means, that he described on camera. The suggestion that Roche's beliefs, strategy and fundamental legal philosophy somehow were unknown or unsubscribed to by his partners—while Roche Freedman continues to boast about Roche's "aggressive approach" on its website[15]—beggars belief. The Firm cannot distance itself from the legacy and sullied reputation of the lawyer whose name still headlines it.

On camera, Roche clearly described the precepts that guided his vision for his firm: to act for the Firm's own financial interests, heedless of the merits of any given case; to use litigation to learn Ava's competitors' secrets, so that information

---

[15] https://www.rochefreedman.com/attorneys/kyle-roche, last visited September 19, 2022.

can be fed to regulators, exposing the competitors, while shielding Ava; and to enforce Emin Gün Serir's personal vendettas. Kyle Roche didn't undertake these tasks on his own. He weaponized his law firm to do so.

New York Rule 1.10 is crystal clear: "While lawyers are associated in a firm, ***none*** of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rule 1.7, 1.8 or 1.9 . . . ." (emphasis added). Kyle Roche cannot be involved in this case, and neither can his partners. Roche Freedman is Roche's creation. The Firm is subject to the consequences Roche has brought upon it.

### 4. The Overwhelming Appearance of Impropriety Militates in Favor of Disqualification

The tenor of the Firm's Response can be summarized thusly: "Our partner, who created our firm and runs the show, said some 'inappropriate' and 'regrettable' things during moments of drunken excess. He confirms that he said all of these things, but we don't think they're such a big deal. But even if they are a big deal, we don't think he really meant them. But even if he meant them, well, um, that's not how ***we*** think."

But the law doesn't care what the Firm thinks. Disqualification is required because it is a remedy not only for actual impropriety (which abounds here), but also for the ***appearance*** of impropriety (which is all but blinding here).

Although the mere appearance of impropriety, standing alone, generally does not support disqualification,[16] it doesn't stand alone here, not by a long shot. The Firm's violations of Rules 1.7 and 8.4 turn the appearance of impropriety into a crucial factor. *E.g., McGriff v. Christie*, 477 F. App'x 673, 679 (11th Cir. 2012) (disqualification based, in part, on a clear appearance of impropriety did not violate due process). "In determining whether disqualification is appropriate, the court may consider: (1) whether the conflict might affect the pending litigation; (2) at what stage of litigation the disqualification issue was raised; (3) whether other counsel can handle the matter; (4) **the appearance of impropriety**; (5) and the costs of disqualification." *Kimberly-Clark Corp. v. Extrusion Grp., LLC*, 2021 WL 2291078, at *6 (N.D. Ga. 2021) (emphasis added).

Roche has admitted that his firm actually operates at the behest of its shadow clients, Emin Gün Serir and Ava. He has admitted to suing Ava's competitors and luminaries in the cryptocurrency world (such as Dr. Craig Wright), for the improper purpose of learning trade secrets that can be used for his shadow clients' business advantage, to enforce their vendettas, and to keep the regulators busy investigating their competitors. Further, Roche's disclosures could hardly be more

---

[16] *Armor Screen Corp. v. Storm Catcher, Inc.*, 709 F. Supp. 2d 1309, 1320 (S.D. Fla. 2010) (reconciling cases and concluding that a mere appearance of impropriety, absent an articulated violation of an attorney conduct rule, could not stand alone as grounds for disqualification).

notorious, especially among the many thousands of people whose professions intersect with the world of blockchain technology and the many millions whose fortunes are tied up in it. Since Roche's disclosures, major media outlets, such as Forbes, Bloomberg, Law 360, and Reuters all have reported on his misconduct and the Firm's conflicts.

We fully understand that "[d]isqualification of one's chosen counsel is a drastic remedy that should be resorted to sparingly." *Armor Screen Corp. v. Storm Catcher, Inc.*, 709 F. Supp. 2d 1309, 1310 (S.D. Fla. 2010). That said, whatever contrition might now reside in the hearts of the Firm's partners, anyone—any litigant, any lawyer, any judge, any member of the public—who considers this sordid affair must conclude that "this just doesn't look right." It looks wrong because it is wrong. Disqualifying Roche Freeman will right that wrong.[17]

## Conclusion

Through his scandalous statements and the unethical conduct they brazenly catalog, Kyle Roche has rendered Roche Freedman's continued presence in this matter improper and impossible. Disqualification is called for, and this motion should be granted.

---

[17] Disqualifying the Roche Freedman firm will cause no prejudice to the appellant, which will continue to be represented by competent, well-regarded counsel.

Date: September 23, 2022.                    Respectfully submitted,

                                                        By: s/ Andrés Rivero
ANDRÉS RIVERO
Florida Bar No. 613819
ALAN H. ROLNICK
Florida Bar No. 715085
ROBERT J. KUNTZ, JR.
Florida Bar No. 94668

**RIVERO MESTRE LLP**
2525 Ponce de Leon Boulevard, Suite 1000
Miami, Florida 33134
Telephone: (305) 445-2500
Fax: (305) 445-2505
Email: arivero@riveromestre.com
Email: arolnick@riveromestre.com
Email: rkuntz@riveromestre.com
Email:receptionist@riveromestre.com

## **CERTIFICATE OF COMPLIANCE**

This motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 2,222 words. This motion also complies with typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements Fed. R. App. P. 32(a)(6) because this motion has been prepared in a proportionally spaced typeface using Microsoft Word Office Version 2013 and 14-point Times New Roman type style.

                                                     /s/ Andrés Rivero

## **CERTIFICATE OF SERVICE**

I CERTIFY that on September 23, 2022, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served this day on all counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF.