# Composite Exhibit A

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   IN RE TETHER AND BITFINEX
     CRYPTO ASSET LITIGATION,
 4
                                     19 Civ. 9236 (KPF)
 5
                                     Decision
 6   ------------------------------x
                                     New York, N.Y.
 7                                   October 13, 2022
                                     2:15 p.m.
 8
     Before:
 9
                          HON. KATHERINE POLK FAILLA,
10
                                District Judge
11

12                              APPEARANCES

13   ROCHE FREEDMAN LLP
          Attorneys for Plaintiffs
14   BY:  CONSTANTINE PHILIP ECONOMIDES
          DEVIN FREEDMAN
15        EDWARD JOHN NORMAND
          -and-
16   SCHNEIDER WALLACE COTTRELL KONECKY WOTKYNS LLP
     BY:  TODD MICHAEL SCHNEIDER
17        MATTHEW SINCLAIR WEILER
          -and-
18   SELENDY GAY ELSBERG PLLC
     BY:  ANDREW RIGGS DUNLAP
19        MITCHELL D. NOBEL

20   KIRBY McINERNEY LLP
           Attorneys for Consolidated Plaintiffs
21   BY:   KAREN M. LERNER
           DAVID E. KOVEL
22      -and-
     RADICE LAW FIRM, P.C.
23   BY:   JOHN D. RADICE

24

25
```

APPEARANCES (Cont'd)

```
DEBEVOISE & PLIMPTON, LLP (NYC)
     Attorneys for Defendants iFinex, BFXNA, BFXWW, Tether
Holdings Limited, Tether Operations Limited, Tether
International Limited, DigFinex, Giancarlo Devasini, Ludovicus
Jan van der Velde, and Tether Limited
BY:  ELLIOT GREENFIELD
     MELANIE BURKE
     MAEVE L. O'CONNOR
     -and-
LAW OFFICES OF MICHAEL JASON LEE, APLC
     Attorneys for Defendant Potter
BY:  MICHAEL JASON LEE
     -and-
DILLON MILLER & AHUJA, LLP
BY:  SUNJINA KAUR AHUJA
     CHRISTOPHER BEAL

WILLKIE FARR & GALLAGHER LLP
     Attorneys for Defendant Potter
BY:  CHARLES DEAN CORDING
     AMANDA PAYNE

NELSON MULLINS RILEY & SCARBOROUGH LLP
     Attorneys for Defendant Poloniex, LLC
BY:  MATTHEW G. LINDENBAUM
     ROBERT LAURI LINDHOLM JR.

McNAUL EBEL NAWROT & HELGREN PLLC
     Attorneys for Defendant Bittrex, Inc.
BY:  ABBY FAITH RUDZIN
     GREGORY HOLLON
```

```
 1              (The Court and all parties present remotely)
 2              THE COURT:  The case has been called.  I'm not going
 3   to ask the parties to identify themselves because I'm aware
 4   that my deputy has already taken appearances.
 5              I am now going to be giving an oral decision on the
 6   applications regarding Mr. Roche and the Roche Freedman firm,
 7   and I'm going to ask you all, please, to mute your phones as I
 8   do so, so that there aren't interruptions once I begin.  I'll
 9   give you a second or two to mute your phones at this time.
10              Now I will begin.
11              As always, I thank you, those of you who have given me
12   written and oral submissions on these points, and I do
13   genuinely and sincerely appreciate your giving me some
14   opportunities, some time, to consider what was said at the
15   October 3 oral argument and to reflect on what I think is a
16   very serious issue.  For the reasons that I am about to
17   outline, I am modifying my order appointing interim class
18   counsel to remove the Roche Freedman firm from that class
19   counsel.
20              This decision does not require extensive citation to
21   cases.  Unlike Roche Freedman's framing of the issue as one of
22   disqualification of a firm, I find that this dispute actually
23   arises under Federal Rule of Civil Procedure 23(d)(2), which
24   allows an order under Rule 23(d)(1) to be altered or amended
25   from time to time and to be combined with an order under
```

1	Rule 16.
2	The order in question is my February 27, 2020, order
3	by way of minute entry appointing lead plaintiff and interim
4	class counsel, and it is the latter portion that I am being
5	asked to revisit.  I have considered the views of the named
6	plaintiffs in this case.  They are the putative class
7	representative, but, ultimately, I conclude that their
8	preferred counsel structure is not in the best interests of the
9	class, and of course, if that causes any of the plaintiffs, the
10	named plaintiffs, to wish to exit the case, I will hear from
11	them when it is appropriate to do so.
12	But before I get to the legal analysis, I do want to
13	spend a moment on the reasons why I am revisiting my prior
14	order, and this is not to beat the proverbial dead horse, but
15	rather just to provide a factual framework for my decision.
16	In January of 2022, nearly two years after my
17	appointment of an interim class counsel team that included the
18	Roche Freedman firm and before the production of discovery in
19	this case, one of the principals at the Roche Freedman, Kyle
20	Roche, made a series of ill-advised comments suggesting, if not
21	asserting, his close ties to and financial interest in Ava
22	Labs, a research and development company that is involved in
23	developing the Avalanche platform and the AVAX cryptocurrency,
24	as well as Mr. Roche's strategic deployment of class action
25	litigation to aid Ava Labs both by focusing regulators on Ava's

1   competitors and on obtaining confidential information
2   concerning those competitors through the class action process.
3           Mr. Roche claims that the video recordings of these
4   statements are highly edited and taken out of context, that he
5   was set up by a competitor, and that he was inebriated at the
6   time he made the statements.  All of that notwithstanding,
7   Mr. Roche has moved to withdraw from representing the class
8   plaintiffs in this case.  The Roche Freedman firm has
9   represented that it will or has walled him off financially from
10  receiving any fees from this case, and Mr. Roche is not
11  currently involved with the firm's plaintiff-side crypto-asset
12  class action practice.
13          Roche Freedman has suggested that this is sufficient
14  to allow them to remain on as one of the three interim class
15  counsel.  Their cocounsel, as well as defendants' counsel, and
16  an earlier contender for interim class counsel all disagree.
17          In an early effort to frame this issue, I considered
18  whether the factual bases for my decision to include Roche
19  Freedman in the trio of law firms appointed as interim class
20  counsel has changed.  That answer is an easy, indisputable yes.
21          At the February 24, 2020, oral argument, it was
22  Mr. Roche that I heard from first who began by explaining his
23  firm's expertise in the crypto-asset space, and in so doing
24  countering the position offering by the competing Robbins
25  Geller firm regarding the appropriate definition of the class.

|   |   |
|---|---|
| 1 | Ms. Halligan then came in to explain the selling |
| 2 | points of each firm and, more to the point, why I should |
| 3 | appoint all three of them.  Roche Freedman for their -- her |
| 4 | words, not mine -- unparalleled expertise in cryptocurrency; |
| 5 | Schneider Wallace for their class action experience; and what |
| 6 | was, I believe, then the Selendy & Gay firm, it's now Selendy |
| 7 | Gay & Elsberg, for their experience with complex litigation and |
| 8 | state law claims. |
| 9 | Mr. Roche and Ms. Halligan's arguments convinced me to |
| 10 | appoint the three firms as interim class counsel despite my |
| 11 | initial expressed hesitancy to do so. |
| 12 | In my oral decision, which I believe was issued |
| 13 | February 27 of 2020, I remarked, and I'm quoting here, that |
| 14 | "what interests me about this case is that it is an interesting |
| 15 | combination of old and new.  The cryptocurrency laws is quite |
| 16 | novel and lots of issues and not a lot of resolution, but there |
| 17 | is a lot of established law out there with respect to the |
| 18 | pleading requirements, with respect to traditional antitrust |
| 19 | issues and RICO and the Commodities Exchange Act." |
| 20 | I included the Roche Freedman to address the novel |
| 21 | legal issues that were expected to arise.  I did so based |
| 22 | largely on the oral advocacy and anticipated involvement of |
| 23 | Mr. Roche, and he is no longer involved in the litigation. |
| 24 | But that analysis, while accurate, is also a bit |
| 25 | facile.  We are more than two and a half years removed from my |

1  order appointing interim class counsel, and I daresay that we
2  all know more about crypto-assets, crypto exchanges,
3  stablecoin, and crypto commodities than we did when this
4  litigation began.  That said, Mr. Freedman, from the Roche
5  Freedman firm, has forcefully argued that the firm still has a
6  leg up on their cocounsel when it comes to this particular area
7  of the law.
8           On the other side of the equation is the additional
9  litigation that would ensue if the Roche Freedman firm were to
10 remain in the case.  Defense counsel has made it clear that
11 there will be additional litigation both during the discovery
12 phase if Roche Freedman continues to have access to materials
13 produced by the defendants under the protective order, and then
14 later in connection with the class certification stage.
15          I want to be clear, or I should say that I'm not
16 optimistic that discovery will be entirely free from disputes
17 if Roche Freedman is out of the case, particularly given the
18 disputes I've already resolved.  But I do acknowledge that
19 there will be additional litigation if and because the firm
20 remains in the case.
21          The question here distills to what counsel structure
22 is in the best interests of the putative class, and to me that
23 further distills to whether the incremental benefits of Roche
24 Freedman remaining as interim class counsel in terms of their
25 institutional knowledge and their expertise in one of the

1   substantive areas of the law implicated by the case outweigh
2   the additional litigation burdens occasioned by their
3   involvement.  Ultimately, I find that the burdens outweigh the
4   benefits.
5          For starters, we are two years into this litigation.
6   Everyone has benefited from the on-the-job instruction we've
7   received on crypto-assets and crypto exchanges.  And as a
8   result, I believe that the Selendy and the Schneider firms are,
9   or quickly can be, up to speed on that area of the law.
10  Further, I believe that they already have superior expertise in
11  other areas of the law implicated by this litigation, including
12  the Sherman Act, the Commodities Exchange Act, common law
13  fraud, and issues of class action certification.  So in
14  consequence, I find that the putative class will not suffer any
15  loss in the quality of their representation if the Roche
16  Freedman firm is discontinued as interim class counsel.
17         Now, just to amend what I've just said, I said we're
18  two years into this litigation.  I think we're closer to three.
19  We've been in this litigation for several years.  Let me look
20  at the converse position, though.
21         The parties have been fighting since long before
22  Mr. Roche's disclosures were made.  I am concerned that
23  establishing another front for the parties' disputes will
24  derail this litigation.  What is more, I cannot be sure at this
25  time of the size of this new front.  So in this regard, I don't

1    share Mr. Normand's view expressed in oral argument that this
2    additional litigation would be but a brief distraction and not
3    disabling.  These ancillary disputes will extend this
4    litigation, they cannot be dismissed summarily, and I don't
5    think that it's in the best interests of the class if they
6    persist.
7         Related to this point is my concern that Mr. Roche's
8    problems will extend to others at his firm or will otherwise
9    adversely impact the case before me.
10        Now, this is almost certainly a consequence of the
11   recency of these disclosures, but the fact is we, or anyone,
12   had not yet gotten to the bottom of the relationship that
13   Mr. Roche has or had with Ava Labs and, by extension, whether
14   the litigation strategies suggested in his recorded comments
15   were implemented by him with respect to Ava Labs or other
16   clients of the firm or by others at the firm.
17        It is too easy to say that Mr. Roche was drunk and
18   stupid.  His statements were coherent and logical and too
19   detailed for me to dismiss out of hand.  Roche Freedman has
20   offered a number of arguments seeking to mitigate or
21   contextualize these statements, but largely they do not
22   succeed.  For example, the firm asserts that their involvement
23   in the instant litigation, or their decision to bring the
24   instant litigation, predates the formation of or certainly the
25   retention by Ava Labs, and that may be.  But Mr. Roche's

1  comments did not suggest that his strategic use of class action
2  litigation only came into existence after his dealings with Ava
3  Labs.  Similarly, even if I accept Roche Freedman's arguments
4  that the defendants in this litigation are not competitors of
5  Ava Labs, I cannot say that Mr. Roche's professed class action
6  litigation strategy was limited to that one client.
7          Furthermore, given what Mr. Roche did say on the
8  point, I am not comforted by the fact that he did not
9  specifically say in the recordings that he shared confidential
10 materials produced in discovery in this case.  And I completely
11 reject the counterargument that removing the Roche Freedman
12 firm as interim class counsel would somehow incentivize
13 misconduct by defense attorneys.
14         Nor am I persuaded after reading and considering
15 Mr. Roche's declaration that he didn't capitalize on synergies
16 between this litigation and the interests of other Roche
17 Freedman clients.  To begin, I currently don't accept his
18 current explanation that he was merely referring to
19 whistleblowers or insiders, given the comments that were made.
20         More fundamentally, the issues created by -- for
21 Mr. Roche by these disclosures are evolving.  They clearly
22 extend beyond this case.  I have only limited visibility into
23 these issues, and I will not make findings about what
24 Mr. Roche did or did not do or meant or did not mean based on a
25 two-and-a-half page declaration without a more extensive

1    investigation.
2         Now, to be clear, I acknowledge that there is a
3    difference between Mr. Roche and the Roche Freedman firm, but
4    at this point in time, I have concerns about the firm as well.
5    I acknowledge that similar disclosures haven't been made about
6    other lawyers at the firm, but it remains the case that one of
7    the two named partners at the firm, and the very person who
8    persuaded me to add the Roche Freedman firm to the interim
9    class counsel team, touted a theory of class action litigation
10   that I believe amounts to improper purposes.
11        If Mr. Roche's boasts are true -- and, again, I can't
12   reject them out of hand -- then it would actually surprise me
13   if such an ethos were limited to Mr. Roche alone.  In any
14   event, the degree to which the Roche Freedman firm has
15   attempted to minimize Mr. Roche's statements gives me concern
16   that they don't appreciate the seriousness of those statements,
17   and I've already explained the dim view with which I hold the
18   firm's arguments in mitigation.
19        I want now to return to my earlier point, and that is
20   that allowing the Roche Freedman firm to continue as interim
21   class counsel with the metaphorical baggage they now carry is
22   not in the best interests of the class.  Put somewhat
23   differently, I see this as a case of subtraction by addition,
24   wherein three law firms will have a more difficult time
25   litigating this case than two law firms because of the

1    aftershocks of Mr. Roche's comments.
2              And to repeat, I do not believe that the class will
3    suffer any diminution in their representation if the Selendy
4    and the Schneider firms remain, and for all of these reasons, I
5    am amending my prior order to remove Roche Freedman as interim
6    class counsel.
7              There is one related issue to address, and that is
8    that the Kirby Radice team of attorneys argued that the best
9    course of action here was to start with a clean slate, whereby
10   the Kirby and Radice firms would take over at interim class
11   counsel and, if and as appropriate, new class plaintiffs could
12   be substituted in.
13             While I have given this option consideration, serious
14   consideration, I have ultimately rejected it.  We are too many
15   years into this litigation to switch horses entirely, and I see
16   nothing to suggest that the Selendy and the Schneider firms
17   have comparable issues that would impact their ability to
18   represent the putative class adequately.  So the Selendy and
19   the Schneider firms will remain interim counsel.
20             In short, I am granting Mr. Roche's earlier motion to
21   withdraw because I don't believe I have done that.  I am
22   modifying my prior order to remove Roche Freedman as one of the
23   three interim class counsel.  To the extent appropriate, I will
24   direct Roche Freedman to withdraw from any relevant protective
25   order entered in this case and to return any confidential

1   materials that are covered by that agreement.
2           That is my decision in this case.  I thank you all for
3   listening to it, and I appreciate your allowing me to give it
4   as an oral decision rather than a written.
5           I wish you, your families, and your clients continued
6   safety and good health in this pandemic.
7           We are adjourned.  Thank you.
8           (Adjourned)
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**Full docket text:**

Minute Entry for proceedings held before Judge Katherine Polk Failla: Telephone Conference held on 10/13/2022. Attorneys Devin Freedman, Constantine Philip Economides, Edward John Normand, Todd Michael Schneider, Matthew Sinclair Weiler, Andrew Riggs Dunlap and Mitchell D. Nobel representing Plaintiffs present. Attorneys David E. Kovel, Karen Lerner, and John D. Radice representing Consolidated Plaintiffs Eric Young, Adam Kurtz, David Crystal present. Attorneys Elliot Greenfield, Melanie Burke, Maeve L. O'Connor, Michael Jason Lee, Sunjina Kaur Ahuja and Christopher Beal representing iFinex Defendants present. Attorney Charles Dean Cording and Amanda Payne representing Defendant Philip G. Potter present. Attorneys Matthew G. Lindenbaum and Robert Lauri Lindholm, Jr., representing Defendant Poloniex, LLC, present. Attorneys Abby Faith Rudzin and Gregory Hollin representing Defendant Bittrex, Inc. present. The Court GRANTS Mr. Roche's motion to withdraw, and modifies its February 27, 2020 order to remove Roche Freedman as interim class counsel. Roche Freedman shall withdraw from the relevant protective order entered in this case and to return any confidential materials that are covered by that agreement. (Court Reporter Raquel Robles) (tn)

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 10/14/2022 11:48:00 | | | |
| **PACER Login:** | RiveroMestre | **Client Code:** | |
| **Description:** | History/Documents | **Search Criteria:** | 1:19-cv-09236-KPF |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |