**22-11150**

IN THE

# United States Court of Appeals

## FOR THE ELEVENTH CIRCUIT

◆◆

IRA KLEIMAN, as the Personal Representative
of the ESTATE OF DAVID KLEIMAN,

*Plaintiff-Appellant,*

W&K INFO DEFENSE RESEARCH, LLC,

*Plaintiff,*

—v.—

CRAIG WRIGHT,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

## BRIEF FOR DEFENDANT-APPELLEE

MICHAEL A. FERNÁNDEZ
AMY C. BROWN
RIVERO MESTRE LLP
565 Fifth Avenue, 7th Floor
New York, New York 10017
Telephone: (212) 880-9451
Facsimile:  (212) 504-9522
mfernandez@riveromestre.com
abrown@riveromestre.com

ANDRÉS RIVERO
JORGE A. MESTRE
AMANDA MCGOVERN
ALAN H. ROLNICK
ROBERT J. KUNTZ JR.
ALLISON HENRY
RIVERO MESTRE LLP
2525 Ponce de Leon Boulevard, Suite 1000
Miami, Florida 33134
Telephone: (305) 445-2500
Facsimile:  (305) 445-2505
arivero@riveromestre.com
jmestre@riveromestre.com
amcgovern@riveromestre.com
arolnick@riveromestre.com
rkuntz@riveromestre.com
ahenry@riveromestre.com

*Attorneys for Defendant-Appellee*

## <u>CERTIFICATE OF INTERESTED PERSONS AND<br>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and

Eleventh Circuit Rule 26.1, Appellee Dr. Craig Wright, respectfully submits the

following Certificate of Interested Persons[1] and Corporate Disclosure Statement:

1. The Honorable Judge Beth Bloom, *U.S. District Judge*

2. Boies Schiller Flexner LLP, *Counsel for Plaintiff-Appellant*

3. Brenner, Andrew, *Counsel for Plaintiff-Appellant*

4. BTCN 1610-491 LLC (CE)

5. Delich, Joseph, *Counsel for Plaintiff-Appellant*

6. Devine Goodman & Rasco, LLP, *Counsel for non-party Andrew O'Hagan*

7. Economides, Constantine Philip *Counsel for Plaintiff-Appellant*

8. Estate of David Kleiman, *Plaintiff-Appellant*

9. Fernandez, Amanda Lara, *Counsel for Defendant-Appellee*

10. Fernandez, Michael Alexander*, Counsel for Defendant-Appellee*

11. Freedman, Velvel, *Counsel for Plaintiff-Appellant*

12. Freedman Normand & Friedland LLP (formerly Roche Freedman LLP), *Counsel for Plaintiff-Appellant*

13. Glaser, Patricia, *Counsel for non-party John Doe*

---

[1] Based on the facts set forth in Appellee's Motion to Disqualify Roche Freedman LLP, Ava Labs and Emin Gün Sirer appear to be interested persons.

14. Glaser Weil Fink Howard Avchen & Shapiro LLP, *Counsel for nonparty John Doe*

15. Harrison, Laselve, *Counsel for Plaintiff-Appellant*

16. Henry, Allison, *Counsel for Defendant-Appellee*

17. *Holtzman, Alexander, *Counsel for Plaintiff-Appellant*

18. Kass, Zalman, *Counsel for Defendant-Appellee*

19. Kleiman, Ira, *Plaintiff-Appellant*

20. Kuntz, Robert, *Counsel for Defendant-Appellee*

21. Lagos, Stephen, *Counsel for Plaintiff-Appellant*

22. Licata, Samantha, *Counsel for Plaintiff-Appellant*

23. *Lohr, Whitney, *Counsel for Defendant-Appellee*

24. *Markoe, Zaharah*, Counsel for Defendant-Appellee*

25. McGovern, Amanda *Counsel for Defendant-Appellee*

26. Mestre, Jorge, *Counsel for Defendant-Appellee*

27. Payne, Darrell Winston, *Counsel for non-party John Doe*

28. Pritt, Maxwell, *Counsel for Plaintiff-Appellant*

29. Rasco, Guy Austin, *Counsel for non-party Andrew O'Hagan*

30. The Honorable Judge Bruce Reinhart, *U.S. District Magistrate Judge*

31. Rivero, Andres, *Counsel for Defendant-Appellee*

32. Rivero Mestre LLP, *Counsel for Defendant-Appellee*

33. Roche Freedman LLP (now Freedman Normand & Friedland LLP), *Counsel for Plaintiff-Appellant*

34. Roche, Kyle, *Counsel for Plaintiff-Appellant*

35. Rolnick, Alan, *Counsel for Defendant-Appellee*

36. Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., *Counsel for non-party John Doe*

37. Wright, Craig, *Defendant-Appellee*

38. Zack, Stephen, *Counsel for Plaintiff-Appellant*

\* = no longer involved in representation

Appellee certifies that no other judges, attorneys, persons, associations of persons, firms, partnerships, or corporations have an interest in the outcome of this appeal.

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellee respectfully suggests oral argument is unnecessary.

# **TABLE OF CONTENTS**

PAGE

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ............................................... C-1

STATEMENT REGARDING ORAL ARGUMENT ........................ C-3

TABLE OF AUTHORITIES .................................................... iv

JURISDICTIONAL STATEMENT............................................. 1

STATEMENT OF THE ISSUES ON APPEAL ............................. 1

STATEMENT OF THE CASE................................................... 1

    I.   PROCEEDINGS BELOW ............................................... 1

    II.  THE FACTS ............................................................... 3

        A.  Dave Kleiman Did Not Help Create Bitcoin, Was Not
            Craig Wright's Business Partner, and Never Mined Bitcoin .... 3

            1.   Kleiman Did Not Help Create Bitcoin, Could Not Have
                and Never Claimed He Did.................................... 3

            2.   Kleiman Wasn't Dr. Wright's Business Partner
                and Never Claimed Otherwise ............................... 6

            3.   There Was No Evidence That Kleiman Mined or Could
                Have Mined Any Bitcoins, or Ever Claimed to Have
                Done So ........................................................... 8

        B.  The Trial Judge Correctly Preserved the Jury's Role to
            Decide the Case on the Merits.................................... 10

STANDARD OF REVIEW....................................................... 13

SUMMARY OF THE ARGUMENT............................................ 13

ARGUMENT ....................................................................... 16

PAGE

I. THE DISTRICT COURT DID NOT ERR BY INSTRUCTING THE JURY ON PARTNERSHIP LAW AS PARTIALLY REQUESTED, AND OTHERWISE ACQUIESCED TO, BY THE ESTATE ........................................................... 16

    A. The Estate Waived Its Right to Seek Review of the Partnership Instruction ............................................... 16

    B. The Jury Instruction Correctly Stated Florida Partnership Law .................................................................. 19

II. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DECLINING TO IMPOSE SANCTIONS THAT WOULD HAVE TAKEN THE CASE FROM THE JURY .................................................................. 27

    A. The District Court Had Discretion to Review and Reject the Magistrate's Sanctions Order ................................. 30

    B. The District Court Correctly Applied the Law in Declining to Impose the Sanctions Ordered by the Magistrate ............. 31

    C. The District Court Did Not Abuse Its Discretion by Vacating the Sanctions Order...................................... 35

III. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING THE NEW TRIAL MOTION ........ 37

    A. The Estate Waived Any Claim of Error as to Questions to Which It Did Not Object........................................... 38

    B. Even If There Had Been No Waiver, the District Court Would Not Have Abused Its Discretion in Denying a New Trial....................................................... 45

        1. The Two Questions That Went Unanswered Because the Estate's Objections Were Sustained Were Not Evidence ...................................................... 45

PAGE

2.  The Two Questions That Were Answered Because the
    Estate's Objections Were Overruled Did Not Support a
    New Trial ...................................................... 47

C.  A Juror's Post-Trial Statements to the Media Are Not
    Evidence of Substantial Prejudice Warranting a New Trial .... 50

D.  Even If There Was Any Error, It Was Harmless Error .......... 52

CONCLUSION ................................................................ 53

CERTIFICATE OF COMPLIANCE ............................................ 54

CERTIFICATE OF SERVICE ................................................ 54

ADDENDUM

## <u>TABLE OF AUTHORITIES</u>

PAGE(S)

**Cases**

*Axiom Worldwide, Inc. v. Excite Med. Corp.*,
   591 F.App'x 767 (11th Cir. 2014) ........................................... 35

*B & L Servs., Inc. v. Coach USA*,
   791 So.2d 1138 (Fla. 1st DCA 2001) ...................................... 26

*Bartholomew v. Universe Tankships, Inc.*,
   263 F.2d 437 (2d Cir. 1959) ................................................. 50

*Baybrook Homes of Polk Cnty. LLC, v. Auburndale Estates Inc.*,
   2008-CA-003871-O (Fla. Cir. Ct. 2010) ................................. 22

*BCJJ, LLC v. Lefevre*,
   2011 U.S. Dist. LEXIS 71479 (M.D. Fla. 2011)......................... 22

*Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*,
   765 F.3d 1277 (11th Cir. 2014) ............................................. 13

*Brough v. Imperial Sterling Ltd.*,
   297 F.3d 1172 (11th Cir. 2002) ............................................. 53

*Burger v. Hartley*,
   896 F.Supp.2d 1157 (S.D. Fla. 2012)...................................... 22

*Byker v. Mannes*,
   641 N.W.2d 210 (Mich. 2002) ............................................... 21

*Cephus v. CSX Transp., Inc.*,
   771 F.Appx. 883 (11th Cir. 2019).......................................... 45

*Chilcutt v. U.S.*,
   4 F.3d 1313 (5th Cir. 1993)................................................. 34

*Christopher v. Florida*,
   449 F.3d 1360 (11th Cir. 1990) ............................................. 43

*Circa Ltd. v. City of Miami*,
   79 F.3d 1057 (11th Cir. 1996)............................................... 13

*City of Cleveland v. Peter Kiewet Sons' Co.*,
   624 F.2d 749 (6th Cir. 1980) ............................................... 38

iv

PAGE(S)

*Copeland v. Lake Shore Hma*,
2019 Fla. Cir. LEXIS 12549 (Fla. Cir. Ct. 2019) ......................... 22

*Delta Health Grp. Inc. v. Royal Surplus Lines Ins. Co.*,
327 F.App'x 860 (11th Cir. 2009) ......................................... 13

*Dev. Corp. of Palm Beach v. WBC Const., L.L.C.*,
925 So.2d 1156 (Fla. 4th DCA 2006) ...................................... 22

*Dreyfuss v. Dreyfuss*,
701 So.2d 437 (Fla. 3d DCA 1997) ........................................ 14

*Ford ex rel. Est. of Ford v. Garcia*,
289 F.3d 1283 (11th Cir. 2002) ........................................... 19

*Exposito v. Public Health Trust of Miami Dade County*,
2013 WL 11012796 (Fla. Cir. Ct. 2013) .................................. 22

*Fencorp, Co. v. Ohio Kentucky Oil Corp.*,
675 F.3d 933 (6th Cir. 2012) ............................................. 34

*Frederick v. Kirby Tankships, Inc.*,
205 F.3d 1277 (11th Cir. 2000) ........................................... 41

*Gibbs v. United States*,
865 F.Supp.2d 1127 (M.D. Fla. 2012),
*aff'd*, 517 F.App'x 664 (11th Cir. 2013) ................................. 30

*Hallock v. Holiday Isle Resort & Marina, Inc.*,
885 So.2d 459 (Fla. 3rd DCA 2004) ....................................... 22

*In re Hallucination Media, LLC*,
2022 WL 1537829 (Bankr. M.D. Fla. 2022) .............................. 22

*Harbaugh v. Greslin*,
2007 WL 595962 (11th Cir. 2007) ......................................... 23

*Harbaugh v. Greslin*,
436 F.Supp.2d 1315 (S.D. Fla. 2006) ................................. 22, 23

*Harker v. Peterson*,
72 P.3d 949 (Mont. 2003) ................................................. 25

*Herbert Warren & Assocs., Inc. v. Ramada Inns, Inc.*,
1991 WL 94382 (9th Cir. 1991) ........................................... 19

PAGE(S)

*Hillman v. Cannon*,
  2011 WL 6670657 (Iowa Ct. App. 2011)......................... 20, 21, 25

*Holder v. Anderson*,
  2018 WL 4956757 (M.D. Fla. 2018)..................................... 41

*Howard v. S. Baptist Hosp. of Fla.*,
  2018 Fla. Cir. LEXIS 5530 (Fla. Cir. Ct. 2018) ........................ 22

*Insurance Corp. of Ireland v. Campagnie des Bauxites de Guinee*,
  456 U.S. 694 (1982)............................................... 31, 32, 33

*Jackson-Shaw Co. v. Jacksonville Aviation Auth.*,
  510 F.Supp.2d 691 (M.D. Fla. 2007),
  *aff'd*, 562 F.3d 1166 (11th Cir. 2009) .................................. 22

*Kislak v. Kreedian*,
  95 So.2d 510 (Fla. 1957).................................................. 20

*Kucel v. Walter E. Heller & Co.*,
  813 F.2d 67 (5th Cir. 1987)............................................... 43

*Larmoyeux v. Montgomery*,
  963 So.2d 813 (Fla. 4th DCA 2007) ...................................... 21

*Lawler v. Alexander*,
  698 F.2d 439 (11th Cir. 1983)............................................ 43

*Lawrence v. Governor of Georgia*,
  721 F.App'x 862 (11th Cir. 2018) ........................................ 30

*Local Access, LLC v. Peerless Network, Inc.*,
  2021 WL 8200193 (M.D. Fla. 2021)...................................... 33

*In re Manke*,
  2018 WL 6629957 (M.D. Fla. 2018)...................................... 22

*Manning v. Progressive Am. Ins. Co.*,
  2020 WL 905593 (S.D. Fla. 2020)........................................ 33

*McWhorter v. City of Birmingham*,
  906 F.2d 674 (11th Cir. 1990)................................... 38, 43, 44

*ML Healthcare Servs., LLC v. Publix Super Markets, Inc.*,
  881 F.3d 1293 (11th Cir. 2018) ...................................... 47, 49

vi

PAGE(S)

*O'Rear v. Fruehauf Corp.*,
    554 F.2d 1304 (11th Cir. 1977) ........................................... 38

*Ohler v. United States*,
    529 U.S. 753 (2000) ..................................................... 41

*Owens v. Benton*,
    190 F.App'x 762 (11th Cir. 2006) ...................................... 27

*Pete's Towing Co. v. City of Tampa, Fla.*,
    378 F.App'x 917 (11th Cir. 2010) ...................................... 33

*Phx. Entm't Partners, LLC v. Orlando Beer Garden, Inc.*,
    2016 U.S. Dist. LEXIS 144168 (M.D. Fla. 2016) ....................... 22

*Progress Rail Servs. Corp. v. Hillsborough Reg'l Transit Auth.*,
    2005 WL 1051932 (M.D. Fla. 2005) ..................................... 22

*Race v. Smith*,
    2022 WL 3649650 (11th Cir. 2022) ..................................... 42

*Rafael J. Roca, P.A. v. Lytal & Reiter, Clark, Roca, Fountain & Williams*,
    856 So.2d 1 (Fla. 4th DCA 2003) ............................... 20, 24, 26

*Ray v. Ropes & Gray LLP*,
    799 F.3d 99 (1st Cir. 2015) ............................................ 19

*Rodriguez v. Powell*,
    853 F.App'x 613 (11th Cir. 2021) ...................................... 31

*Runway Farms, LLC v. Oakes Farms, Inc.*,
    2021 WL 2258504 (M.D. Fla. 2021) ..................................... 22

*Scott v. Dunnam*,
    2016 WL 1452413 (S.D. Ga. 2016) ...................................... 47

*Serra Chevrolet, Inc. v. General Motors Corp.*,
    446 F.3d 1137 (11th Cir. 2006) ................................. 31, 32, 33

*Stewart & Stevenson Servs., Inc. v. Pickard*,
    749 F.2d 635 (11th Cir. 1984) .......................................... 43

*U.S. upon rel. of Tenn. Valley Auth. v. Easement & Right-of-Way*
*Over 4.42 Acres of Land*,
    782 F.App'x 945 (11th Cir. 2019) ...................................... 33

PAGE(S)

*United States v. $116,850 in United States Currency*,
 2015 U.S. Dist. LEXIS 53863 (D.S.C. 2015) ............................ 22

*United States v. Blackwell*,
 459 F.3d 739 (6th Cir. 2006) ............................................... 50

*United States v. Clay*,
 832 F.3d 1259 (11th Cir. 2016) ............................................ 49

*United States v. Colston*,
 4 F.4th 1179 (11th Cir. 2021) ........................................ 47, 51

*United States v. Hernandez*,
 921 F.2d 1569 (11th Cir. 1991) ............................................ 43

*United States v. Krall*,
 835 F.2d 711 (8th Cir. 1998) ............................................... 51

*Veitch v. Virgin Mgmt. USA, Inc.*,
 2015 WL 13808110 (S.D. Fla. 2015) ..................................... 22

*Vicken Bedoyan v. Harout Samra*,
 2022 WL 4587419 (Fla. 3d DCA 2022) ............................. 23, 24

*Williams v. Obstfeld*,
 314 F.3d 1270 (11th Cir. 2002) ............................................ 14

*Woods v. Baptist Hosp., Inc.*,
 2019 WL 12030520 (Fla. Cir. Ct. 2019).................................. 22

*Wright v. Brown*,
 817 F.App'x 797 (11th Cir. 2020) ......................................... 31

*Yaffa v. Weidner*,
 717 F.App'x 878 (11th Cir. 2017) ......................................... 34

*Ziegler v. Dahl*,
 691 N.W.2d 271 (N.D. 2005)............................................... 21

**Statutes**

Fla. Laws ch. 72-108 (codified at Fla. Stat. §§ 620.56-.77 (1995),
 Uniform Partnership Act ("UPA")................................... 21, 24

Fla. Stat. § 620.8202....................................................... 20

PAGE(S)

Fla. Stat. § 620.8401(2) ....................................................... 26

Fla. Stat. § 620.8401(6) ....................................................... 26

Florida Revised Uniform Partnership Act ("RUPA").................*passim*

**Rules**

Fed. R. Civ. P. 16 ............................................................... 34

Fed. R. Civ. P. 37 ...........................................................*passim*

Fed. R. Civ. P. 37(b)(2) ...................................................... 34

Fed. R. Civ. P. 72 ......................................................... 15, 30

Fed. R. Evid. P. 103(b) ....................................................... 42

**Other Authorities**

Alaska Pattern Jury Instructions (Civil) 23.11 (Revised 2018),
   *available at* https://courts.alaska.gov/cvpji/docs/23.11.docx ........... 25

Matthew G. Dore, Partnership Law and Practice Under the New Iowa
   Uniform Partnership Act, 47 Drake L. Rev. 497 (1999) ................. 21

## JURISDICTIONAL STATEMENT

Appellee adopts Appellant's jurisdictional statement.

## STATEMENT OF THE ISSUES ON APPEAL

1.  Did the district court correctly instruct the jury on partnership law in the manner partially requested, and otherwise acquiesced to, by the Estate?

2.  Did the district court properly decline to impose a default, or a so-called "lesser sanction" tantamount to default, for discovery failings irrelevant to the merits of the Estate's claims?

3.  Did the district court properly deny a new trial motion predicated on the Estate's claim that a handful of questions—only two of which resulted in answers—and a subsequently redacted exhibit violated the court's order in limine?

## STATEMENT OF THE CASE

## I.    PROCEEDINGS BELOW

The Estate brought six claims against Dr. Craig Wright, all connected to Ira Kleiman's assertion that his deceased brother, David Kleiman, had secretly partnered with Wright to create, and then mine, Bitcoin.

After 15 days of trial and seven days of deliberation, the jury rejected each of the Estate's claims.[1] Following its loss at trial, the Estate appealed, asking this Court to undo the jury's work, citing three supposedly reversible errors.

---

[1] Throughout its initial brief, the Estate refers to the result at trial for a co-plaintiff, W&K Info Defense Research, LLC ("W&K")—a company whose ownership and

*First*, the Estate asks the Court to apply the Estate's own custom version of Florida partnership law, rather than the correct partnership law on which the district court instructed the jury—at the Estate's behest and, otherwise, with its acquiescence.

*Second*, the Estate asks this Court to travel back in time—past the jury verdict, past the trial judge's carefully exercised discretion expressed in two lengthy, detailed orders—to impose a default for Wright's alleged discovery misconduct over documents with no nexus to the merits of the Estate's claims.

*Third*, the Estate asks this Court to second-guess the trial judge's enforcement of her order in limine and grant a new trial on the basis of eight questions and one exhibit that allegedly departed from the order. It asks for this even though the Estate failed even to object to four of the purported violations, was overruled on several objections it did make, and prevailed on four objections— meaning those questions, which were not evidence, went unanswered.

---

control is presently the subject of litigation in several Florida state court actions. Given that W&K's trial result is irrelevant to any issue before the Court, Wright declines the Estate's invitation to discuss it here.

## II.    THE FACTS

### A. Dave Kleiman Did Not Help Create Bitcoin, Was Not Craig Wright's Business Partner, and Never Mined Bitcoin

The jury heard essentially every fact, inference and implication the Estate wished it to hear, then concluded the evidence established that Kleiman and Wright were not partners in the creation of Bitcoin or in mining bitcoins.

#### 1. Kleiman Did Not Help Create Bitcoin, Could Not Have and Never Claimed He Did

The testimony at trial established that Kleiman played no part in Bitcoin's creation. Dr. Wright testified that he first learned computer programing languages (including the C languages) as a young boy. ECF 850 at 69:16 (Wright). Initially tinkering with simple household applications for computer programs, Dr. Wright eventually obtained a deep fluency in many languages. ECF 850 at 70:6–12 (Wright). Over time, Dr. Wright learned to write computer code in numerous languages, including C, a language used for programming on a fundamental level. ECF 850 at 69:18–20; 70:14–23 (Wright). As computer languages developed, Wright kept up with them, learning Borland C and C++. ECF 850 at 70:25–71:2 (Wright).

Dr. Wright coded the original Bitcoin blockchain using 15,000 to 16,000 lines of C++ code. ECF 850 90:15–20; 92:11–21 (Wright). Kevin Madura, an expert on computer programing, blockchain technology, and the history of Bitcoin, corroborated Dr. Wright's claim. He testified that the Bitcoin software was

developed by "a fairly sophisticated C++ developer" who wrote the necessary 15,000 lines of code. ECF 847 at 17:15–17, 18–22 (Madura). Madura testified that all the code, containing no new cryptography, had been written by a single coder, in a single, old-fashioned style. ECF 847 at 17:6–13; 46:17–20; 47:1–2 (Madura).

As for David Kleiman, the evidence established that he *didn't* help create Bitcoin and *couldn't* have. Far from being a "fairly sophisticated C++ developer," Kleiman could hardly write any computer code. Kimon Andreou met Kleiman in 2002 or 2003, when they both worked for S-Doc, a software security company in West Palm Beach, where Kleiman was chief information security officer and Andreou was the head of application development and quality assurance. Andreou counted himself among Kleiman's best friends. ECF 848 (A.M.)[2] at 94:2–8 (Andreou). He testified that Kleiman couldn't code, much less in C++. ECF 847 at 48:6–11 (Andreou). He said Kleiman's coding ability was "minimal to nil." ECF 848 (A.M.) at 101:4–8 (Andreou). Simply put, Kleiman was not a computer programmer or coder at all. ECF 848 (A.M.) at 95:4–5; 100:24–25 (Andreou). He relied on others for all programming. ECF 848 (A.M.) at 94:13–17 (Andreou). Further, Kleiman never claimed to be able to code in the language used to create Bitcoin. ECF 847 at 49:9–13 (Madura).

---

[2] The trial Transcript for Day 12 is divided into morning and afternoon transcripts, both under ECF 848.

The only evidence of David Kleiman's involvement during the early days of Bitcoin—as his brother's testimony acknowledged—was that he *may* have helped edit The White Paper, which introduced Bitcoin to the world. ECF 840 at 122:1–20 (Kleiman). The earliest David Kleiman may have received a draft of The White Paper was March 2008 [ECF 840 at 16:14–23 (Kleiman)], merely seven months before the invention was announced and The White Paper was published. ECF 840 at 122:11–123:12 (Kleiman). By that time Dr. Wright had been at work—alone, for a long time—on Bitcoin.[3] Andreas Antonopoulos, the Estate's expert on blockchain technology and Bitcoin's history, confirmed this timing. ECF 838 at 37:20–22; 38:6–19.

Dr. Wright categorically denied that David Kleiman co-created Bitcoin. ECF 843 at 60:25–65:2 (Wright). Further, David Kleiman never claimed he'd been a Bitcoin inventor. Kleiman never told anyone—in person, by email, in text messages or otherwise—that he'd had anything to do[4] with this major

---

[3] "I don't recall an exact date, but 2007 was when Satoshi mentioned they had started the development of the code." ECF 846 at 223:5–7 (Madura); *see also* ECF 838 at 49:24–50:4 (Antonopoulos).

[4] This disconnect between David Kleiman's statements and the Estate's claims is perhaps explained by recent public admissions of the Estate's attorney, Kyle Roche, founder of the Roche Freedman law firm. These matters are fully explored in Appellee's Motion to Disqualify Roche Freedman LLP, filed September 6, 2022, and Appellee's Reply, filed September 23, 2022.

technological achievement of the early twenty-first century.[5] ECF 848 (P.M.) at 11:7–10 (Andreou).

Even more than a year after Bitcoin was introduced to the world, David Kleiman never told Andreou, his close friend and industry colleague, that he'd worked on the technology, and never told his friend he'd said otherwise to his brother. ECF 848 (P.M.) at 9:12–21; 10:2–4 (Andreou). Patrick Paige and Carter Conrad were also Kleiman's friends and his actual business partners.[6] Like Andreou, they confirmed that David Kleiman never claimed to have invented Bitcoin. ECF 838 at 174:24–177:2 (Paige); ECF 848 (P.M.) at 52:16–25: 53:9–11; 63:13–12 (Conrad).

### 2. Kleiman Wasn't Dr. Wright's Business Partner and Never Claimed Otherwise

Kleiman and Dr. Wright certainly were friends, and Dr. Wright sometimes would inflate Kleiman's accomplishments so he'd be well regarded and long remembered. ECF 843 at 78:5–79:4 (Wright). Nonetheless, the evidence established that they were never partners.

---

[5] In contrast to Wright, who claimed his creation to family members, government officials, and many others. ECF 843 at 44:19–24 (Wright).

[6] Paige met Kleiman at the Palm Beach County Sheriff's office, where he trained Kleiman and worked with him for years, becoming his best friend. ECF 838 at 123:14–21 (Paige). Kleiman and Conrad met some years later at a conference and became close friends who spoke daily. ECF 848 (P.M.) at 37:2–3; 8–9 (Conrad).

The Estate failed to offer a single document at trial memorializing any sort of Bitcoin partnership between Dr. Wright and Kleiman. There was no document describing any such agreement or its essential terms, assigning debts or duties, allocating profits, nothing. This was telling, because Kleiman plainly knew how to memorialize a business partnership where one existed. Together Kleiman, Conrad and Paige formed an actual business partnership, Computer Forensics, LLC. ECF 837 at 34:11–15 (Paige). That partnership, unlike the imaginary one with Dr. Wright, had an operating agreement that clearly specified each member's participation, ownership and control. ECF 848 (P.M.) at 12 40:5–8, 13–21; 44:13; 45:3; 45 12–21; 45:25–46:2; 46:3–6, 46:13 (Conrad).

There was no evidence that Kleiman ever claimed to be Dr. Wright's Bitcoin partner. Andreou testified to this. ECF 848 (P.M.) at 11:11–18 (Andreou). So did Kleiman's close friends and actual partners, Conrad and Paige. ECF 848 (P.M.) at 52:22–25 (Conrad); ECF 838 at 134:19–25; 176:24–177:5 (Paige). And while Kleiman never said he worked with Dr. Wright on The White Paper that introduced Bitcoin to the world, he *did* boast to his friends he worked on a separate white paper concerning the recovery of deleted electronic data—i.e., the "Data Wipe Fallacy White Paper"—with Dr. Wright. ECF 838 at 134:19–25; 180:12–25 (Paige); ECF 848 (P.M.) at 62:8–63:15 (Conrad).

7

Moreover, David Kleiman never claimed to own any bitcoins, although obtaining bitcoins was the object of the Estate's lawsuit. ECF 843 at 97:1–19 (Wright). Further, David Kleiman was consistently beset by financial troubles. ECF 838 at 181:1–182:1 (Paige); ECF 848 (A.M.) at 121:3–14 (Andreou); ECF 848 (P.M.) 64:6–12, 64:24–65:4 (Conrad). But although the first-mined bitcoins were worth a fortune, David Kleiman never told his close friends he had a claim to an asset worth hundreds of millions of dollars. ECF 838 at 182:2–11 (Paige); ECF 848 (P.M.) at 11:11–13 (Andreou).

### 3. There Was No Evidence That Kleiman Mined or Could Have Mined Any Bitcoins, or Ever Claimed to Have Done So

The jury heard abundant evidence that Kleiman didn't mine any bitcoins and couldn't have done so. The first block of bitcoins was mined on or after January 3, 2009.[7] ECF 838 at 38:15–19 (Antonopoulos). The jury learned in detail that Bitcoin mining is demanding and requires large expenditures of time, sophisticated technology, ample monetary resources, and substantial physical exertion. ECF 847 at 25:21–27:13 (Madura).

Dr. Wright confirmed that, from its earliest stages, Bitcoin mining was laborious. Dr. Wright installed five computers to manage four server racks of 69 other computers at his farm. In addition, he facilitated numerous other Bitcoin

---

[7] Transparency is a central feature of blockchain technology in general, and Bitcoin in particular. There is no dispute that this date, self-evident from the blockchain itself, is when the first bitcoins were mined.

mining operations at churches and homes of friends and family, persuading them to use their computers and utilities for mining. ECF 850 at 105:9–22; 106:2–8 (Wright). Dr. Wright was regularly assisted by Hector Malbburang, who helped keep these scores of computers, batteries and air conditioning online and running 24 hours a day, without whom he could not have maintained the mining operation. ECF 850 at 112:1–8 (Wright).

There was no evidence that David Kleiman undertook any such extensive, expensive efforts. He lacked the financial resources for this sort of project. His friends testified that his financial straits were so dire he was being dunned for credit card debt, suffered a foreclosure, and couldn't pay his utility bills. ECF 848 (A.M.) at 105:8–15 (Andreou); ECF 848 (P.M.) 64:8–65:10 (Conrad). In fact, both Paige and Conrad paid his cell phone bill on occasion.  ECF 838 at 181:10–19 (Paige); ECF 848 (P.M.) at 65:8–10 (Conrad). Moreover, a 1995 motorcycle accident had left Kleiman paralyzed from the chest down. He was wheelchair-bound and profoundly physically impaired. ECF 839 at 30:4–15 (Kleiman); ECF 838 at 124:3–5 (Paige).[8]

---

[8] Conrad testified that Kleiman was unable to reach under his desk to unplug a cable. ECF 848 (P.M.) at 38:2–8, 15–22 (Conrad). Even far less-demanding obligations of Kleiman's work with Computer Forensics, LLC, required physical assistance from Conrad or another person. ECF 848 (P.M.) at 38:7–11; 40:5–8 (Conrad).

Dr. Dugald Stewart MacIntyre gave expert testimony about David Kleiman's condition, including the extent to which his activities were limited by his physical condition, by the depressive impact of medications like Valium, and the way in which his life was dominated by medical treatments and hospital stays—the last one lasting 850 days before his death. ECF 848 (A.M.) at 30:15–19; 87:4–6; 96:11–15 (MacIntyre). David Kleiman simply was not fit for the physical and intellectual rigors of mining Bitcoin. ECF 848 (A.M.) at 15:4–20; 16:19–17:4; 20:22–21:4 (MacIntyre).

Just as the evidence belied the Estate's claims of Kleiman's alleged role in creating Bitcoin, and just as the evidence negated the Estate's claims of Kleiman's imaginary partnership with Dr. Wright, Kleiman himself *never* claimed to have mined any Bitcoin. ECF 848 (P.M.) at 52:16–25 (Conrad). Nor did he ever ask his friends to assist him in mining Bitcoin. ECF 838 at 184:17–20 (Paige). To the contrary, he only ever said he had financial problems—which owning bitcoins logically would have rectified. ECF 838 at 181:1–182:4 (Paige); ECF 848 (A.M.) at 11:7–10 (Andreou); ECF 848 (P.M.) 64:6–12, 64:24–65:4 (Conrad).

## B. The Trial Judge Correctly Preserved the Jury's Role to Decide the Case on the Merits

At an early stage of the litigation, the Estate sought from Dr. Wright a detailed listing of his Bitcoin holdings. Dr. Wright said he didn't have the list in his possession. The Estate moved to compel and for sanctions for noncompliance. ECF

210. The magistrate heard the motion and found Dr. Wright had not met his burden to show compliance was impossible, and the Estate had met its burden for imposing sanctions. The magistrate then imposed sanctions under Rule 37, awarded attorney fees against Dr. Wright, deemed four factual issues "established" (the "Deemed Facts sanction" ECF 277 at 16), and struck eight of Dr. Wright's affirmative defenses the magistrate said could not be sustained in light of the Deemed Facts.

Dr. Wright objected to the magistrate's order. ECF 311. In ruling on that objection, Judge Bloom accepted the magistrate's conclusions about Dr. Wright's credibility and failure to comply with discovery obligations. ECF 373. However, although Judge Bloom agreed that Rule 37 supported sanctions (fees and costs) (*id.* at 15), she reversed the Deemed Facts sanction and the striking of Dr. Wright's affirmative defenses. *Id.* at 15–19.

Later in the case, the Estate moved to default Dr. Wright for the *same* discovery derelictions, and asked Judge Bloom for the purported "lesser sanction" of deemed facts if she failed to impose a default. ECF 507. Judge Bloom again declined to strike Dr. Wright's pleadings, enter a default or order sanctions that amounted to a default. ECF 595.

Before trial, the Estate also sought a limitation on testimony regarding "sibling relationship evidence"—evidence of the estrangement between David

11

Kleiman and his brother Ira Kleiman, who, as the Estate's representative, brought the claims of authorship, partnership and ownership that David Kleiman hadn't ever made in life. ECF 510. The district court granted the motion—without prejudice—excluding "[e]vidence about Ira Kleiman's sibling relationship with [David] Kleiman . . . except as to the Thanksgiving Day 2009 dinner conversations."[9] ECF 623 at 16.

After losing, the Estate moved for a new trial based on eight questions—two of which went unanswered after its objections were sustained, four of which went unobjected to, and two where its objections were overruled—as well as an exhibit with two purportedly offending lines that subsequently were redacted. ECF 861. Judge Bloom was unpersuaded. In denying the motion [ECF 887], she noted that the Estate failed to object to some of the questions, failed to move to strike any purportedly offending answers, and failed to seek curative instructions—thereby waiving its right to post-trial consideration of any purported prejudice. She further held that the Estate entered its own "sibling relationship" evidence, that the defense never urged the jury to decide the Estate's case on any improper basis, and that some of the evidence, questioning the plausibility of the purported 2009 Thanksgiving dinner conversation, was expressly permitted under her order in limine. *Id.*

---

[9] At which Ira Kleiman claimed, a decade later, David Kleiman had privately told him he was working on developing a new currency with a wealthy foreign man.

## STANDARD OF REVIEW

This Court:

> appl[ies] a deferential standard of review to a district court's jury instructions. If the instructions accurately reflect the law, the trial judge is given wide discretion as to the style and wording. Furthermore, [the Court] will not disturb a jury's verdict unless the charge, taken as a whole, is erroneous and prejudicial.

*Delta Health Grp. Inc. v. Royal Surplus Lines Ins. Co.*, 327 F. App'x 860, 863

(11th Cir. 2009) (cleaned up); *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*,

765 F.3d 1277, 1289–90 (11th Cir. 2014).[10]

The Estate correctly notes that the Court reviews for abuse of discretion a

district court's denial of motions for discovery sanctions and for a new trial based

on defense counsel's alleged misconduct during trial.[11]

## SUMMARY OF THE ARGUMENT

This case was overseen by an experienced district judge presiding over a

three-week jury trial. There is no merit to any theory the Estate advances for

undoing the hard work of the district court and jurors.

---

[10] An error in one jury instruction does not require a retrial of claims involving distinct questions of law. *E.g., Circa Ltd. v. City of Miami*, 79 F.3d 1057, 1064 (11th Cir. 1996).

[11] The Estate states an irrelevant truism in observing that the standard of review for "interpretation of the Federal Rules of Civil Procedure" (Initial Br. at 23–24) is de novo. But no issues on appeal—even as the Estate defines them (Initial Br. at 1)—raise a question whether Judge Bloom properly *interpreted* Rule 37, only whether she properly *applied* it.

The district court's jury instructions on Florida partnership law do not warrant a new trial. First, the Estate waived its right to challenge the instruction requiring the Estate to prove the elements required by *Williams v. Obstfeld*[12] and *Dreyfuss v. Dreyfuss.*[13] After objecting to those elements, the Estate then requested inclusion of certain language if the district court required the *Williams* elements. The district court adopted virtually all the Estate's proposed language and instructed the jury accordingly. Having affirmatively requested and received alterations to the jury instructions, the Estate waived its challenge to those instructions.

Second, the district court's instruction was proper. The Estate assigns error on the theory that Florida's adoption of the Revised Uniform Partnership Act ("RUPA") eliminated its obligation to prove *Williams/Dreyfuss* elements. But the instructions were consistent with Florida federal and state decisions after RUPA's enactment and offer no reason to disturb the jury's verdict.

Nor did Judge Bloom abuse her discretion in reversing the magistrate's imposition of case-ending sanctions for Dr. Wright's alleged discovery violations. The magistrate's order awarded Rule 37 attorney fees, deemed key facts admitted, and struck Dr. Wright's affirmative defenses regarding those facts—which amounted to a de facto default judgment. Judge Bloom sustained the award of fees, but overturned the

---

[12] 314 F.3d 1270, 1275 (11th Cir. 2002) ("Williams").

[13] 701 So. 2d 437, 438-39 (Fla. 3d DCA 1997) ("Dreyfuss").

14

Deemed Facts sanction and the striking of Dr. Wright's affirmative defenses, because they lacked a nexus to the alleged discovery violation. She plainly had authority under Rule 72 to review, and reject, the magistrate's recommended sanctions, and in doing so correctly applied Rule 37 and Eleventh Circuit and Supreme Court precedent. On the Estate's omnibus sanctions motion, the district court comprehensively considered and rejected for a second time the Estate's demand for sanctions (that amounted to a default) in a 39-page order the Estate conveniently ignores.

Finally, Judge Bloom did not err in denying a new trial based on "attorney misconduct" because there was none. The purported "misconduct" consisted of eight questions and one exhibit that purportedly violated the order in limine excluding "sibling relationship evidence." But the Estate didn't object to four of the questions or to introduction of the exhibit—which was immediately removed from the jury's view following a sidebar. The Estate thus waived any post-trial claim of error. As to the four other questions, two went unanswered after the Estate's objections were sustained, and the answers to the other two questions— asked on the third day of a 15-day trial—do not and cannot require a new trial.

**ARGUMENT**

**I.    THE DISTRICT COURT DID NOT ERR BY INSTRUCTING THE JURY ON PARTNERSHIP LAW AS PARTIALLY REQUESTED, AND OTHERWISE ACQUIESCED TO, BY THE ESTATE**

The Estate contends the jury charge on Florida partnership law is erroneous because Florida's 1995 adoption of RUPA purportedly did away with long-standing Florida precedent requiring parties alleging a partnership to prove its essential terms. Initial Br. at 26–30. In addition to being wrong on the law, the Estate ignores the fact that it challenges an instruction it had a hand in crafting, which is barred by well-established waiver rules.

Even if the Estate's argument weren't barred, it would remain incorrect as a matter of law. The district court's jury instructions regarding a partnership's elements were consistent with countless Florida federal and state court decisions after RUPA's enactment. The Estate relies on a single opinion (which does not expressly conflict with the great weight of authority validating the district court's instructions) and a curated set of non-Florida decisions (which conflict with other non-Florida decisions). None of this supports disturbing the jury's verdict.

**A. The Estate Waived Its Right to Seek Review of the Partnership Instruction**

In the joint proposed jury instructions, Dr. Wright relied on *Williams* and *Dreyfuss* to request instructions defining an oral partnership as possessing four elements: (1) a common purpose; (2) a joint proprietary interest in the subject

matter or purpose of the oral partnership; (3) the right to share profits and the duty
to share losses; and (4) joint control or right of control over the oral partnership.
ECF 618 at 41. At the charging conference, Dr. Wright reiterated his request that
the instructions read to the jury include those elements. ECF 850 at 64-68.

After the charging conference, the district court circulated a proposed set of
instructions. ECF 800-1. The court then provided a further opportunity to lodge
objections to the jury instructions. The Estate handed up a document stating its
views on how an oral partnership should be defined. ECF 802-1. In that document,
the Estate noted that elements in the district court's instructions came from this
Court's *Williams* decision, and argued they were no longer appropriate because of
Florida's adoption of RUPA. However, instead of pressing the district court to
exclude the language it disputed, the Estate invited the court to add certain
language if it kept the instruction:

> **If the Court is going to keep the new instruction,** we would ask that
> the court include that you don't have to intend to form a partnership—
> Florida Statutes 620.8202(1)—and the relevant RUPA defaults on
> sharing of profits and losses and joint control in Florida Statutes
> 620.8201(2) and (6).

*Id*. at 2 (emphasis added). Specifically, the Estate requested the district court
include the language set off here in bold:

> A 'partnership' means an association of two or more persons to carry
> on as co-owners of a business for profit, **whether or not the persons**
> intend to form a partnership.
> . . . .

17

On the issue of determining the respective parties' ownership share in the partnership, I instruct you that in the absence of a contrary agreement among the partners, the partners in a partnership are entitled to share equally in the assets and profits of the partnership**, and the losses of the partnership. In addition, in the absence of a contrary agreement among the partners, each partner has equal rights in the management and conduct of the partnership business**. [14]

*Id.* at 3.

Judge Bloom accepted the Estate's invitation to keep the *Williams* elements and included nearly all the Estate's additional language in her charge to the jury, which she read as follows:

A partnership means an association of two or more persons to carry on as co-owners of a business for profit, whether or not the persons intend to form a partnership.

A partnership based on a written or oral agreement must include each of the following elements: Number one, a common purpose. Two, a joint proprietary interest in the subject matter or purpose of the partnership. Three, the right to share profits and the duty to share losses. And four, joint control or right of control over the partnership.

Plaintiffs must prove each of these elements by a preponderance of the evidence to establish the existence of a partnership.
. . . .

On the issue of determining the respective parties' ownership share in the partnership, I instruct you that in the absence of a contrary agreement among the partners, the partners in a partnership are entitled to share equally in the assets and profits of the partnership and the losses of the partnership.

---

[14] Consistent with its submission, the Estate argued for the district court *either* to omit the *Williams* elements *or* add its requested language. ECF 851 at 64-68.

(ECF 851 at 29). The Estate made no further objection regarding this instruction and filed no post-trial motion challenging it.

The Estate's objection to the district court's draft partnership instruction was equivocal, suggesting that *either* omitting the *Williams* elements *or* adding its proposed language would be acceptable. The district court gave the jury an instruction including nearly all of the Estate's proposed language (to which the Estate did not object). Having affirmatively requested alterations to the jury instructions (which were largely incorporated by the district court), and having failed to object to the altered instruction, the Estate did not preserve the issue for appeal. *See Ford ex rel. Est. of Ford v. Garcia*, 289 F.3d 1283, 1294 (11th Cir. 2002) ("Where, as here, the instruction eventually given to the jury reflected changes that Appellants themselves proposed and to which they did not later object, we may find . . . that they have waived any assertion of error on appeal."); *accord Ray v. Ropes & Gray LLP*, 799 F.3d 99, 112 (1st Cir. 2015); *Herbert Warren & Assocs., Inc. v. Ramada Inns, Inc.*, 1991 WL 94382, at *2 (9th Cir. 1991).

## B. The Jury Instruction Correctly Stated Florida Partnership Law

Even assuming arguendo that the Estate hadn't waived its right to appeal the partnership instruction, there still would be no basis to disturb the verdict, because the instruction as given accurately reflected longstanding Florida law that survived

RUPA's adoption and was the law of Florida on the day the jury was instructed. None of it was inconsistent with RUPA.

The Estate's argument is built on a false syllogism: (1) Florida adopted RUPA in 1995; and (2) "RUPA changed the prior law by substituting a simpler rule"; therefore (3) "RUPA does not oblige a plaintiff to prove any of the five [*Kislak v. Kreedian*, 95 So.2d 510, 515 (Fla. 1957)] factors, let alone all five of them as the Court instructed the jury here." Initial Br. at 26–27. The Estate cites a single Florida case, *Rafael J. Roca, P.A. v. Lytal & Reiter, Clark, Roca, Fountain & Williams*, 856 So.2d 1 (Fla. 4th DCA 2003). But that decision did not discard the factors in *Williams, Dreyfuss,* and *Kislak,* or otherwise cast doubt on pre-RUPA cases.

The Estate's argument fails even under cursory scrutiny. The initial premise—that RUPA ***displaced*** pre-RUPA law on the elements of a partnership— is contrary to language contained in RUPA itself. As the Uniform Comment to Fla. Stat. § 620.8202 states, "[s]ection 202 combines UPA Sections 6 and 7. The traditional UPA Section 6(1) 'definition' of a partnership is recast as an operative rule of law. **No substantive change in the law is intended**." (emphasis added).

In light of this comment, non-Florida courts applying RUPA have properly rejected similar arguments demanding that pre-RUPA cases on partnership formation be jettisoned. *E.g., Hillman v. Cannon,* 2011 WL 6670657, at *3 (Iowa

20

Ct. App. 2011) ("Iowa caselaw on partnership formation predating the 1998 IUPA is still good law.").[15] Tellingly, the Estate cites no Florida case that rejects pre-RUPA caselaw on partnership formation as inconsistent with RUPA. This is so because Florida law requires that "any legislative intent either to abolish or to limit the common law must indicate such change clearly, or else the rule of common law stands." *Larmoyeux v. Montgomery*, 963 So. 2d 813, 820 (Fla. 4th DCA 2007) (RUPA did not supersede pre-RUPA common law providing for an equitable award of attorney fees in certain actions).

Because RUPA did not expressly overrule pre-RUPA cases concerning partnership formation, Florida courts interpreting RUPA have continued to apply common-law principles pre-dating adoption of the Uniform Partnership Act ("UPA") that later were incorporated into UPA case law.[16] Since RUPA was adopted nearly twenty-five years ago, the *Williams/Dreyfuss* factors have been

---

[15] "The revised act added the phrase, 'whether or not the persons intend to form a partnership,' to the previous definition of a partnership. However, the drafters of the revised uniform law explained no substantive change in the definition of a partnership was intended by that addition." *Hillman,* 810 N.W.2d at *3; *Ziegler v. Dahl*, 691 N.W.2d 271, 275 (N.D. 2005); *Byker v. Mannes*, 641 N.W.2d 210, 214 (Mich. 2002); *accord* Matthew G. Dore, Partnership Law and Practice Under the New Iowa Uniform Partnership Act, 47 Drake L. Rev. 497, 502 (1999) ("[T]he new statute preserves many long-standing principles of the law of partnership. For example, the rules governing 'formation' of a partnership are basically the same in both IUPA (1998) and IUPA (1971).").

[16] Florida enacted UPA in 1972. Fla. Laws ch. 72-108 (codified at Fla. Stat. §§ 620.56-.77 (1995)).

applied by numerous Florida federal[17] and state courts[18] when addressing the

question of whether a partnership was formed. The same factors have been applied

by Florida federal and state courts to determine if a joint venture existed,[19] which

also is "governed by . . . Florida's Revised Uniform Partnership Act." *Hallock v.*

*Holiday Isle Resort & Marina, Inc.*, 885 So. 2d 459, 462 (Fla. 3rd DCA 2004).

Appellate courts also have affirmed decisions requiring alleged partners to

prove the *Williams/Dreyfuss* factors. In *Harbaugh v. Greslin*, 436 F. Supp. 2d 1315

(S.D. Fla. 2006), a judgment creditor impleaded a third party, alleging that it held

funds owned by or due to judgment debtors and was an alter ego or partner to one

---

[17] *E.g., In re Hallucination Media*, *LLC*, 2022 WL 1537829, at *10 (Bankr. M.D. Fla. 2022); *Runway Farms, LLC v. Oakes Farms, Inc.,* 2021 WL 2258504, at *3 (M.D. Fla. 2021); *In re Manke,* 2018 WL 6629957, at *3 (M.D. Fla. 2018); *Phx. Entm't Partners, LLC v. Orlando Beer Garden, Inc.*, 2016 U.S. Dist. LEXIS 144168, at *22-23 (M.D. Fla. 2016); *Veitch v. Virgin Mgmt. USA, Inc.*, 2015 WL 13808110, at *9 (S.D. Fla. 2015); *United States v. $116,850 in United States Currency*, 2015 U.S. Dist. LEXIS 53863, at *1 (D.S.C. 2015); *Burger v. Hartley*, 896 F. Supp. 2d 1157, 1167 (S.D. Fla. 2012); *BCJJ, LLC v. Lefevre,* 2011 U.S. Dist. LEXIS 71479, at *42-43 (M.D. Fla. 2011).

[18] *E.g., Copeland v. Lake Shore Hma,* 2019 Fla. Cir. LEXIS 12549, *13 (Fla. Cir. Ct. 2019); *Howard v. S. Baptist Hosp. of Fla.*, 2018 Fla. Cir. LEXIS 5530, *2 (Fla. Cir. Ct. 2018); *Exposito v. Public Health Trust of Miami Dade County,* 2013 WL 11012796, at *1 (Fla. Cir. Ct. 2013); Addendum Ex. A, *Baybrook Homes of Polk Cnty. LLC, v. Auburndale Estates Inc.,* 2008-CA-003871-O, Jury Instructions (Fla. Cir. Ct. 2010).

[19] *E.g., Jackson-Shaw Co. v. Jacksonville Aviation Auth.*, 510 F. Supp. 2d 691, 727 (M.D. Fla. 2007), *aff'd*, 562 F.3d 1166 (11th Cir. 2009); *Progress Rail Servs. Corp. v. Hillsborough Reg'l Transit Auth.*, 2005 WL 1051932, at *2 (M.D. Fla. 2005); *Dev. Corp. of Palm Beach v. WBC Const., L.L.C.*, 925 So. 2d 1156, 1161 (Fla. 4th DCA 2006); *Woods v. Baptist Hosp., Inc.,* 2019 WL 12030520, at *1 (Fla. Cir. Ct. 2019).

or more judgment debtors. *Id.* at 1318-1319. The district court analyzed whether there was a partnership under RUPA by reference to the *Dreyfuss* factors. *Id.* at 1321. Because the "Judgment Creditor provides no evidence that Impleaded Third Party had control or a right of control over Judgment Debtors' business activities related to the underlying contract in this dispute," (*id.*), the court concluded that the "Judgment Creditor has failed to demonstrate the Court can exercise personal jurisdiction over Impleaded Third Party under Florida's long-arm statute through business activities in Florida accomplished in a partnership with Judgment Debtors." *Id.* at 1322.  On appeal, this Court found "no error in the court's determination that appellant failed to establish the jurisdictional prerequisites of Florida's long-arm statute, and thus affirm[ed] the court's dismissal of the interpleader complaint." *Harbaugh v. Greslin*, 2007 WL 595962, at *1 (11th Cir. 2007).

Recently, Florida's Third District Court of Appeal affirmed a jury verdict in *Vicken Bedoyan v. Harout Samra*, 2022 WL 4587419 (Fla. 3d DCA 2022) where the jury was instructed to use the *Kislak* factors to determine the existence of an alleged oral partnership. In that case, Samra sued Bedoyan, inter alia, for breach of an oral partnership agreement. In a March 2017 trial on liability, Judge William Thomas instructed the jury that:

> A partnership exists when each of the following elements is present:
> One, a community of interest in the performance of a common

23

purpose of partnership; two, joint control or right of control; three, joint proprietary interest in the subject matter; four, a right to share in profits; and five, a duty to share in any losses.

Addendum Ex. B, Transcript of Proceedings, Vol. VI at 60-61 (Mar. 1, 2017).

The jury found for Samra, concluding that Samra and Bedoyan had an oral partnership agreement. On appeal, the Third DCA affirmed, in a written opinion that cast no doubt on the propriety of the jury instructions. *Bedoyan*, 2022 WL 4587419, at *3.

In the face of all this contrary authority, the Estate cites a single Florida case, *Roca*, which it erroneously contends jettisoned the well-settled *Williams/Dreyfuss* factors.  In *Roca*, the Fourth DCA reviewed a directed verdict by a trial court setting aside a jury verdict finding a partnership. The Fourth DCA summarized the trial judge's conclusion:

> By its express terms, the December 1996 withdrawal agreement precluded the formation of a subsequent oral partnership among the parties. Further, the judge found that any attempt to form a partnership by oral agreement failed as a matter of law because there was no "meeting of the minds" and the agreement lacked essential terms.

856 So.2d at 4.

The Fourth DCA relied extensively on UPA and pre-UPA cases in analyzing the directed verdict. [20] In reversing the trial court, the Fourth DCA carefully

---

[20] In *Roca*, the Fourth DCA cited pre-UPA and UPA cases in holding that "Florida law provides that a partnership results from either an express or *implied* agreement to share profits and to carry on the business as co-owner." *Rafael J. Roca, P.A.*,

distinguished *Dreyfuss* but did not criticize it—or, for that matter, any other pre-RUPA cases it analyzed (and relied on).

Unable to cite any Florida authority rewriting Florida partnership law, the Estate cites out-of-state, non-binding decisions to argue that RUPA implemented a "totality of facts and circumstances" test. Initial Br. at 28–29. This argument was never made below and was not preserved. Even if it had been, that is not the universally accepted test to determine whether parties are partners under RUPA. Florida is hardly unique among states adopting their own variants of RUPA requiring, as Florida does, that certain elements be proven to establish a partnership. *E.g.,* Alaska Pattern Jury Instructions (Civil) 23.11 (Revised 2018);[21] *Hillman*, 2011 WL 6670657 at *2; *Harker v. Peterson*, 72 P.3d 949, 952 (Mont. 2003).

At bottom, the Estate ignores the fact that the *Williams/Dreyfuss* factors are merely a stylized version of RUPA's default provisions. Regarding the first two factors, the Estate conceded that "[t]he concepts of a shared common purpose or shared proprietary interest are **subsumed** by RUPA's statutory definition of a partnership." D.E. 802 at 2 (emphasis added).  In turn, the third element in the

---

856 So. 2d at 5 (citing *In re Porton*, 30 B.R. 374, 376 (Bankr. M.D. Fla. 1983) which, in turn, cited *A.J. Richey Corp. v. Garvey*, 132 Fla. 602, 182 So. 216 (1938) and *Greiner v. Gen. Elec. Credit Corp.*, 215 So.2d 61, 63 (Fla. 4th DCA 1968)).

[21] *Available at* https://courts.alaska.gov/cvpji/docs/23.11.docx

district court's instruction—the right to share profits and duty to share losses—is coextensive with Fla. Stat. 620.8401(2): "[e]ach partner is entitled to an equal share of the partnership profits and is chargeable with a share of the partnership losses in proportion to the partner's share of the profits."[22] Finally, the fourth element—joint control or right of control—is coextensive with Fla. Stat. 620.8401(6): "[e]ach partner has equal rights in the management and conduct of the partnership business."

In short, there is no Florida law overturning the *Dreyfuss* and *Williams* decisions relied on below. Florida's adoption of RUPA did not diminish the continued vitality of those decisions, which have been followed consistently by Florida courts for a quarter century. "Where the legislature fails to make substantive changes to the pertinent statutory language, it is assumed the legislature accepted the prior judicial construction of the statute." *B & L Servs., Inc. v. Coach USA*, 791 So. 2d 1138, 1142 (Fla. 1st DCA 2001). The Estate's theory would result in a radical and unsupported transformation of Florida partnership law that is beyond the purview of a federal court. The Estate has not demonstrated grounds for reversal based on the oral partnership instruction.

---

[22] Evidence of this factor was critical in *Roca,* on which Estate relies. "In contrast to *Dreyfuss,* here, there was evidence on the manner in which the profits would be divided. Additionally, unlike *Dreyfuss,* here, the one claiming the existence of the partnership, Roca, testified that he also agreed to share partnership losses and be responsible for partnership debts." 856 So. 2d at 6.

## II.   THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DECLINING TO IMPOSE SANCTIONS THAT WOULD HAVE TAKEN THE CASE FROM THE JURY

"There is a strong preference that cases be heard on the merits instead of imposing sanctions that deprive a litigant of his day in court." *Owens v. Benton*, 190 F. App'x 762, 762-63 (11th Cir. 2006) (no abuse of discretion in declining to impose "drastic remedy" of default judgment). Notwithstanding this bedrock principle, the Estate asserts—for the *third* time—that the district court should have taken the case away from the jury. Initial Br. at 30–45. The district court twice rejected this invitation to error, and the Estate cites no authority to support a different result on its third attempt.

The Estate's demand for sanctions arose from Dr. Wright's delay in producing a list showing how many bitcoins he owned and controlled, where they were stored, and how they could be accessed—facts relevant *only* to collection efforts if the Estate were to meet its burden (which it didn't) of proving a secret oral partnership entitling David Kleiman to a share of the original block of bitcoins. Dr. Wright said he didn't possess such a list, and the Estate moved to compel. ECF 210.

The magistrate found that Dr. Wright had not demonstrated his inability to provide such a list and entered a sanctions order under Rule 37 deeming four

27

factual issues "established" (the "Deemed Facts"[23]) and striking eight of Dr. Wright's affirmative defenses the magistrate deemed unsustainable because of the Deemed Facts. ECF 277. The Deemed Facts amounted to a default order, and would have handed the Estate a victory without trial.

When Dr. Wright objected to this de facto default [ECF 311], Judge Bloom reversed the Deemed Facts order and reinstated Dr. Wright's affirmative defenses. ECF 373 at 19. She found no nexus between the alleged discovery violation— failure to disclose the amount and location of Dr. Wright's Bitcoin holdings—and the ultimate merits issue, whether an oral partnership between Dr. Wright and Kleiman ever existed. *Id*. at 19–20. Without the Deemed Facts, there was no basis for striking Dr. Wright's affirmative defenses. *Id.*

Later, the Estate *expressly* demanded default judgment or, alternatively, establishment of the Deemed Facts,[24] to punish the same alleged discovery failings. ECF 507. In a 39-page decision (which the Estate would blink away), the district court again refused to impose ultimate sanctions that would have taken the case

---

[23] The "Deemed Facts" included: (1) Wright and Kleiman had a 50/50 oral partnership to develop Bitcoin intellectual property and mine bitcoins; (2) any Bitcoin-related intellectual property developed by Wright before Kleiman's death was property of this partnership, (3) all bitcoins mined by Wright prior to Kleiman's death were property of the partnership when mined; and, (4) Appellant retained an ownership interest in the partnership's bitcoins and any assets traceable to them. ECF 277 at 16.

[24] The Deemed Facts the Estate sought the second time differed slightly from the magistrate's version, but still would have been dispositive on liability. ECF 595.

from the jury. ECF 595. The Initial Brief mentions this order only in passing, but the order addressed *all* the discovery violations alleged, *all* the issues raised, and *all* the sanctions sought, with a degree of detail that cannot fairly be ignored. Without disturbing any of the magistrate's fact-finding [*Id.* at 36], Judge Bloom concluded that neither the ultimate sanction of default, nor any sanction with the same effect, was warranted. Instead, she held that the case should go to the jury:

> [S]ignificant factual disputes abound regarding the evidence presented, the role and importance of various pieces of evidence in the case, Defendant's intentions, and the credibility of witnesses. These determinations, and factual inferences and legal conclusions to be derived from them, are best suited for a jury to make as fact finder at trial, not for the Court to make.

*Id*. at 36–37.

Thus, the case went to the jury which, after hearing the evidence, found no evidence of a partnership between Dr. Wright and David Kleiman. What is more, although Judge Bloom reversed the "Deemed Facts" sanction and the magistrate's dismissal of affirmative defenses tied to those facts, she later dismissed those affirmative defenses on summary judgment. ECF 615. Thus, the Estate can hardly complain that Judge Bloom's reversal of the magistrate's affirmative defense dismissals worked any prejudice. Further, even without affirmative defenses, Dr. Wright prevailed at trial by rebutting the Estate's evidence, which failed to persuade the jury on any claim.

29

The Estate now appeals Judge Bloom's *first* order—ignoring her comprehensive, carefully reasoned *second* order—seeking the same sanctions for a *third* time, arguing that the district court, in rejecting the "issue" sanctions the magistrate ordered, applied the wrong legal standard under Rule 37. That argument has no merit. The Estate cites no decision granting the relief it seeks and, after a diligent search, Dr. Wright hasn't found one.

### A. The District Court Had Discretion to Review and Reject the Magistrate's Sanctions Order

As the Estate concedes, the district court had the power and discretion to review the magistrate's order following Dr. Wright's objection. "[T]he district court retains total control and jurisdiction and exercises the ultimate authority to issue an appropriate order." *Lawrence v. Governor of Georgia*, 721 F. App'x 862, 863–64 (11th Cir. 2018) (cleaned up). In fact, a district judge may review de novo a magistrate's legal conclusions, even if no objection was timely filed. *Gibbs v. United States*, 865 F. Supp. 2d 1127, 1132 (M.D. Fla. 2012), *aff'd*, 517 F. App'x 664 (11th Cir. 2013).

Importantly, the only difference between a magistrate's order and a report and recommendation is the nature of the district court's review. The district court reviews non-dispositive matters under a clearly erroneous standard, while dispositive matters are reviewed de novo. Fed. R. Civ. P. 72. Here, Judge Bloom reviewed the magistrate's sanctions order under the stricter clearly erroneous

standard, noting that it's "extremely deferential" and a "high bar" that is "rarely invoked." ECF 373 at 12.[25] Even applying that deferential standard, the district court declined to impose the sanctions recommended by the magistrate, as it plainly had the authority to do.

### B. The District Court Correctly Applied the Law in Declining to Impose the Sanctions Ordered by the Magistrate

The Estate claims the district court erred in refusing to order "issue sanctions" that did not specifically relate to the alleged discovery derelictions. Initial Br. at 35–41. Misinterpreting the Supreme Court's decision in *Insurance Corp. of Ireland v. Campagnie des Bauxites de Guinee*, 456 U.S. 694 (1982), and this Court's decision in *Serra Chevrolet, Inc. v. General Motors Corp.*, 446 F.3d 1137 (11th Cir. 2006), the Estate argues that Rule 37 requires only some relation between the sanction and a "claim" for which the discovery was sought. Initial Br. at 35-41. This is incorrect.

---

[25] Without the parties' consent (absent here), a magistrate cannot rule on dispositive matters, period. *Rodriguez v. Powell*, 853 F. App'x 613, 618 (11th Cir. 2021). Instead, a magistrate only can make *recommendations* as to dispositive issues, which the district court may accept or reject. *Wright v. Brown*, 817 F. App'x 797, 799 (11th Cir. 2020). The magistrate's sanctions order was dispositive and subject to de novo review because it: (1) rendered the central, disputed Deemed Facts established, which would have resulted in a victory for the Estate without trial; and (2) wholly disposed of eight affirmative defenses. The district court could have conducted a de novo review, under a standard that respected its own authority.

In *Insurance Corp. of Ireland*, the Supreme Court explained that Rule 37 contains two standards limiting a district court's discretion regarding the imposition of sanctions. 456 U.S. at 707. First, any sanction must be "just." Second, the sanction must be "specifically related to the particular 'claim' **which was at issue in the order to provide discovery**." *Id*. (emphasis added). Applying those standards, the Supreme Court held a sanction establishing personal jurisdiction did not violate due process where the defendants refused to produce ordered discovery that would have proven whether (or not) personal jurisdiction existed. Because defendants failed to produce such discovery, plaintiff could not demonstrate "the full extent of the contacts between [defendants] and [the forum state], the critical issue in proving personal jurisdiction." *Id*. at 709. A sanction that assumed personal jurisdiction existed did not violate due process there, because "[t]he purpose and scope of the ordered discovery were directly related to the issue of jurisdiction and the [R]ule 37 sanction was tailored to establish as admitted those jurisdictional facts . . . that the plaintiff was unable to adduce through discovery." *Id*. at 700. There was thus a clear nexus between the discovery abuse and the sanction imposed.

In *Serra Chevrolet*, applying the Rule 37 standards of *Insurance Corp. of Ireland*, this Court held that the sanction violated due process, because the stricken defenses "had no apparent relationship with the discovery abuse." 446 F.3d at 1152. There, the district court struck defendant's affirmative defenses of res

judicata, collateral estoppel and other issue preclusion defenses arising from a judgment previously obtained in a related state court proceeding. *Id.* at 1145. But the discovery abuse in question—the defendant's alleged failure to produce vehicle allocation data—had nothing to do with the state court proceeding. *Id*. at 1152. In *Serra*, as here, there was no nexus between the documents the court ordered produced and the magistrate's sanction. *Id*.

This Court repeatedly has analyzed Rule 37 sanctions under the standards of *Serra Chevrolet*, requiring that sanctions have a close nexus to underlying discovery derelictions. *E.g., U.S. upon rel. of Tenn. Valley Auth. v. Easement & Right-of-Way Over 4.42 Acres of Land*, 782 F. App'x 945, 948–49 (11th Cir. 2019); *Pete's Towing Co. v. City of Tampa, Fla.*, 378 F. App'x 917, 920 (11th Cir. 2010). District courts also have correctly applied *Serra Chevrolet* to require that discovery sanctions specifically relate to the alleged discovery violations. *E.g., Local Access, LLC v. Peerless Network, Inc.*, 2021 WL 8200193, at *3 (M.D. Fla. 2021); *Manning v. Progressive Am. Ins. Co.*, 2020 WL 905593, at *2 (S.D. Fla. 2020). Further, as the Supreme Court made clear in *Insurance Corp. of Ireland*, when the sanction is in the form of "established facts," the facts "deemed established" should only be those the party was seeking to establish through the discovery sought. 464 U.S. at 709.

33

*Yaffa v. Weidner*, 717 F. App'x 878, 885 (11th Cir. 2017) is the only case cited by the Estate from this Circuit to support its contention that "the text of Rule 37(b)(2) itself, merely 'requires that a sanction have some rationale and some connection to the sanctioned conduct.'" Initial. Br. at 36. However, *Yaffa* involved a *monetary sanction* under Rule 16, not a case-ending "issues sanction" under Rule 37.

The remaining federal decisions the Estate cites are neither binding nor otherwise availing. For example, in *Chilcutt v. U.S.*, 4 F.3d 1313, 132 (5th Cir. 1993), the "deemed facts" did not amount to a default judgment. That court "allowed the Government to present its case in chief on its affirmative defense issue," and *the case went to the jury. Id.* "Because the court's ruling did not preclude the Government from presenting its case in chief, the sanction was a far cry from a default judgment." *Id.*[26]

In contrast, the "Deemed Facts" sanction in this case *would have been a default judgment by another name* if the district court had adopted it and taken the case from the jury. The district court, relying on *Serra Chevrolet*, correctly concluded that such a de facto default would have violated due process under Rule

---

[26] In *Fencorp, Co. v. Ohio Kentucky Oil Corp.*, 675 F.3d 933, 942 (6th Cir. 2012), on which the Estate also relies, the circuit court affirmed a sanction voiding a federal preemption defense where defendants not only failed to produce relevant documents [on which the preemption defense relied], but where "there had been a company-wide order to destroy them." Even there, the sanction was directly related to the discovery derelictions at issue.

37 because there was no nexus between the discovery derelictions and the Deemed Facts sanction. ECF 373 at 19.

### C. The District Court Did Not Abuse Its Discretion by Vacating the Sanctions Order

Further compounding its invitation to error, the Estate argues that, even if Judge Bloom applied the correct legal standard, vacating the magistrate's order was itself an abuse of discretion. Initial Br. at 41–43. An abuse of discretion regarding the imposition of sanctions only occurs when a district court "misconstrues its proper role, ignores or misunderstands the relevant evidence, and bases its decision upon considerations having little factual support." *Axiom Worldwide, Inc. v. Excite Med. Corp.*, 591 F. App'x 767, 774–75 (11th Cir. 2014) (citation omitted). The district court did nothing of the sort.

Notably, the Estate cites *no* cases—and Dr. Wright is aware of none—in which a circuit court ever held that a district court abused its discretion in *declining* to impose case-ending issue sanctions. This shouldn't be the first time.

To support its argument that the district court abused its discretion by not ordering a de facto default, the Estate hypothesizes ways it "could have" used a list of Dr. Wright's Bitcoin holdings "as an effective discovery tool to demonstrate Dr. Wright's partnership with David," then posits theoretical evidence it "could have" uncovered to show that "the discovery issues *do* specifically relate to the Deemed Facts." Initial Br. at 42. (emphasis in original.)

35

The Estate's hypothesized ways it might have used the Bitcoin list to its advantage hardly demonstrate that Judge Bloom abused her discretion in concluding that case-dispositive sanctions were not warranted by Dr. Wright's failure to produce such a list. Again, Judge Bloom carefully considered this issue not once, but *twice*, and the second time issued a 39-page opinion the Estate would prefer didn't exist. ECF 595. In that opinion, the district court conducted a detailed review of Dr. Wright's derelictions and concluded that the Estate did not carry its burden to take the case from the jury. *Id*. at 36–38.[27]

It was well within the district court's discretion to allow the case to proceed to trial, and the Estate has not cited a single case requiring reversal.

---

[27] Although Judge Bloom denied the Estate a default as a sanction, she still permitted it to present to the jury any evidence it wished of the Estate's allegations of Dr. Wright's alleged "inconsistencies, contradictory statements, and suspicions." *See, e.g.,* ECF 843 at 120:7–16; 217:19–23; 218:11–18; ECF 845 at 158:9–13; 210:8–12. After hearing it all for 15 days, the jury rejected all the Estate's claims.

## III.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING THE NEW TRIAL MOTION

The Estate argues that it was an abuse of discretion to deny its motion for new trial based on the district court's alleged violation of her own order in limine [ECF 623] excluding "sibling relationship evidence." Initial Br. at 56–65. The alleged violations consist of eight questions[28] posed at trial by Dr. Wright's counsel—four that were answered *after no objection* by the Estate, two that went unanswered after Judge Bloom sustained the Estate's objections, and two that were answered after its objections were overruled. The Estate also claims Dr. Wright's counsel violated the order in limine by asking one question about, and submitting into evidence *without objection*, an unredacted exhibit containing two allegedly prejudicial statements about the Kleiman brothers' estranged relationship. The exhibit was immediately taken down after a request for sidebar, then redacted, which left the jury no opportunity to review it.[29]

To inflate improperly the purported impact of these purported violations, the Estate pejoratively labels them "attorney misconduct." The cases the Estate cites

---

[28] The Estate refers to "at least ten" violations of the in limine order, but its initial brief only identifies eight questions it claims were objectionable.

[29] The Estate also complains that Wright "tried to inject the sibling relationship issue into opening statements, arguing to the Court that the Estate had opened the door to its introduction, which the Court rejected." Initial Br. at 12, quoting ECF 837 at 210:16-211:21. The colloquy that took place before Judge Bloom—outside the presence of the jury—cannot have been "error" of any kind, because the jury heard none of it.

undermine its argument. They require severe misconduct that the district court did not find had occurred (and did not occur). *E.g., McWhorter v. City of Birmingham*, 906 F.2d 674, 677 (11th Cir. 1990) (Counsel's remarks during closing were so contrary to the court's ruling that it ordered counsel incarcerated overnight.); *City of Cleveland v. Peter Kiewet Sons' Co.*, 624 F.2d 749, 758 (6th Cir. 1980) (Counsel's offending remarks "permeated the entire trial, from opening statement through closing argument" in a "continuing pattern of misconduct" over the "almost constant objection of counsel."); *O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1306-07 (11th Cir. 1977) (Counsel repeatedly referred to parallel court proceedings, including in closing, in violation of an order in limine.). Nothing remotely resembling this conduct occurred below, and no "misconduct" analysis is appropriate here. Instead, the question is whether the Estate waived its right to appeal this issue (it did), and whether, even if no waiver had occurred, the Estate suffered prejudice as a result (it didn't).

### A. The Estate Waived Any Claim of Error as to Questions to Which It Did Not Object

The Estate alleges error regarding eight questions (out of thousands) over the course of a 15-day trial. Four of its eight alleged instances of "misconduct" involved questions to which it did *not* object. Three were posed to Ira Kleiman, as follows:

**Q. Right. The last time you spoke to David Kleiman in life was in 2009, right?**

A. Correct—well, no, no. Actually, I shouldn't say that. . . . That's the last time I recall seeing him.

. . . .

ECF 840 at 23:12–17.

**Q. You never saw him in the hospital?**

A. No.

ECF 840 at 84:1–2.

**Q. All right. To be clear, just to make this crystal clear, you didn't learn of Dave's death until a few days after his body was found?**

A. Yes.

Q. And he—you don't know the exact date, but he had died some days before?

A. I believe so.

ECF 840 at 135:22–136:3.

The fourth question was posed to Patrick Paige, a close friend of David

Kleiman, as follows:

**Q.  So you knew David Kleiman for about 20 years.**

A. Yeah.  I believe it was about 20 years.

**Q. During that time, how many times did you hear of Ira Kleiman?**

A. I can't really recall of any offhand, other than he had a brother.
ECF 838 at 184:19–24.

The Estate *did not object* to any of these questions, did not move to strike the answers, and did not seek any curative instructions.

Regarding these questions to which the Estate did not object, it was no abuse of discretion for Judge Bloom to conclude that the Estate had "waived its ability to raise any objection post-trial on the basis that Defendant's questions and/or the testimony Defendant elicited were unduly prejudicial." ECF 887 at 7. Her order in limine had expressly noted its preliminary nature, stating: "[A]ny party may seek reconsideration at trial in light of the evidence actually presented and shall make contemporaneous objections when evidence is elicited." ECF 623 at 3 (citation omitted).

The Estate also assigns error to Dr. Wright's question about (and publication of) Exhibit D0008, a letter from Ira Kleiman's counsel to the United States Department of Treasury (with a copy to Ira Kleiman) concerning information the government requested regarding the Estate's financial affairs. ECF 840 at 172:1–22. Dr. Wright moved this exhibit into evidence *without objection* on the fourth day of trial, during the cross-examination of Ira Kleiman. ECF 840 at 171:21–25. In preparing to question Kleiman about the exhibit, Dr. Wright's counsel published it to the jury and read from it, eliciting the Estate's request for a sidebar. ECF 840 at 173:3–25.  The exhibit was immediately removed from the jury's view. At sidebar, the Estate's counsel objected to publication of the document because it

referred to Ira Kleiman's "limited contact" with his brother and said that Ira "never saw Dave at the hospital," contending that this content violated the order in limine. *Id*. at 174:13. The Estate's counsel conceded that he "made a mistake" in failing to object to the exhibit's admission, and asked that it be redacted to remove the language regarding the brothers' relationship. *Id*. at 174:14–175:19. The district court responded as follows:

> THE COURT: [Y]ou should know the exhibits. It's not for the Court to tell you. The expectation is that you understand the exhibit before you agree to allow it into evidence. It's now in evidence.
>
> . . . .
>
> I would suggest that as officers of the court that we agree to redact that portion before it's further shown to the jury. The exhibit will be in evidence, but those portions—as it appears that your technician is able to clearly do—he can take out those portions.

*Id*. at 174:24–175:2; 176:3–7. The exhibit was immediately redacted. *Id*. at 177:18.

"Generally, a party must object to preserve error in the admission of testimony, even when a party or a court violates an in limine ruling." *Frederick v. Kirby Tankships, Inc*., 205 F.3d 1277, 1285 (11th Cir. 2000). This is so because orders in limine are, by definition, preliminary and subject to revision when evidence is proffered at trial. *E.g., Ohler v. United States,* 529 U.S. 753, 758 n.3 (2000) ("[I]n limine rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial."); *Holder v. Anderson*, 2018 WL 4956757, at *1 (M.D. Fla. 2018) ("In light of the preliminary or preemptive

41

nature of motions in limine, any party may seek reconsideration at trial in light of the evidence actually presented and shall make contemporaneous objections when evidence is elicited.") (cleaned up).

Attempting to dig out from under its waiver, the Estate now mischaracterizes the order in limine as a "clear and definite" pre-trial ruling that obviated its duty to object at trial. But an order in limine is definitive only where it is "final or with prejudice." *Race v. Smith*, 2022 WL 3649650, at *3 (11th Cir. 2022) (citation omitted). If a ruling—like the order here—is tentative or without prejudice, then the court has *not* ruled definitively and the objecting party must renew its objection at trial. *Id.*

Nor does Rule 103(b) of the Federal Rules of Evidence rescue the Estate from its waiver. Initial Br. at 48. Rule 103(b) provides that a party need not renew an objection at trial to preserve a claim of error only where the court has ruled "*definitively on the record*."  Fed. R. Evid. 103(b) (emphasis added). As the Advisory Committee Notes to Rule 103(b)'s 2000 Amendments state: "[n]othing in the amendment prohibits the court from revisiting its decision when the evidence is to be offered. . . . [I]f the opposing party violates the terms of the initial ruling, objection must be made when the evidence is offered to preserve the claim of error for appeal."

42

Judge Bloom did *not* grant the Estate's motion in limine with prejudice here. Quite the opposite. Her order expressly noted the "preliminary" nature of motions and orders in limine and the requirement that a party object when evidence is introduced. ECF 623 at 3. The order in limine was plainly without prejudice, and to preserve any claim of error, the Estate was required to object contemporaneously to questions it believed violated the order.[30]

The Estate argues that where a case involves attorney misconduct (which this one does not), a new trial may be appropriate even where there has been no objection or other effort to call the matter to the attention of the court. But that is true only "where the interest of *substantial justice* is at stake." *McWhorter v. City of Birmingham*, 906 F.2d 674, 677 (11th Cir. 1990) (emphasis added); *Christopher v. Florida*, 449 F.3d 1360, 1365 (11th Cir. 1990) (same; quoting *McWhorter*).

In *McWhorter*, a civil rights action, this Court affirmed a district court's new trial order because defense counsel *repeatedly argued during closing* that a police

_____

[30] None of the cases the Estate cites supports its theory that a party may fail to object to introduction of evidence at trial but nonetheless preserve a claim of error. *United States v. Hernandez*, 921 F.2d 1569, 1582 (11th Cir. 1991) (in criminal trial of five defendants, objection by one defendant preserved issue for all defendants); *Kucel v. Walter E. Heller & Co.*, 813 F.2d 67, 74 (5th Cir. 1987) (party preserved choice-of-law question by objecting to application of Texas law in both his original and amended motions to dismiss); *Stewart & Stevenson Servs., Inc. v. Pickard*, 749 F.2d 635, 641 (11th Cir. 1984) (discussing two methods for preserving claim of error regarding submission of a special interrogatory to the jury); *Lawler v. Alexander*, 698 F.2d 439, 441 (11th Cir. 1983) (in class action, question of proper class definition was preserved for review where parties litigated discovery requests regarding that question on a motion to compel).

officer was fired for refusing to cooperate in another lawsuit, an argument the district court had prohibited. 906 F.2d at 677. Counsel also referred in closing to an exhibit that was not admitted into evidence. *Id*. The district court considered these transgressions so egregious that it ordered counsel incarcerated overnight. *Id*. Although the court characterized plaintiff's failure to object as "troublesome," it ordered a new trial to "vindicate the authority of the Court." *Id*. at 678.

This was a business dispute over an imaginary oral partnership, not a civil rights action, and there was no "substantial interest of justice" at stake, unlike *McWhorter*, *Christopher*, and the other cases on which the Estate travels. Moreover, Dr. Wright's counsel committed no misconduct. As the district court's order denying the Estate's new trial motion explained:

> Here, Defendant never urged the jury at any point during trial, let alone during closing argument, to decide the Estate's claims on an improper basis—namely, that the siblings were estranged, and Ira Kleiman was, therefore, undeserving. Rather, the Court can ascertain several proper purposes for the challenged evidence. This includes establishing the implausibility of the Thanksgiving Day 2009 conversation, relevant dates, and Ira Kleiman's personal knowledge of David Kleiman's finances. Moreover, the jury was properly instructed that their decision must be based on the actual evidence presented and they must not be influenced by any sympathy or prejudice toward [or] against any party.

ECF 887 at 9. In fact, in closing, Dr. Wright's counsel expressly asked the jury *not* to decide the case on sympathy. ECF 851 at 117.

Significantly, the Estate *admits* it made a tactical decision not to object to certain questions, or ask for curative instructions, claiming it didn't want to draw more "attention" to supposedly improper questions. Initial Br. at 47–48. It cannot now avoid the consequences of that tactical decision. *See, e.g., Cephus v. CSX Transp., Inc.*, 771 Fed. Appx. 883, 894-95 (11th Cir. 2019) (rejecting defendant's theory that "its failure to object should be excused because . . . objecting would only draw attention to the misconduct rather than stop it from occurring"). The district court was correct, and the Estate waived its right to complain.

## B. Even If There Had Been No Waiver, the District Court Would Not Have Abused Its Discretion in Denying a New Trial

Besides the purported errors to which the Estate did not object, its other purported violations of the order in limine consist of four questions to which it *did* object, two going unanswered when its objections were sustained, and two answered when its objections were overruled. Neither the unanswered questions nor the overruled objections warrants a new trial.

### 1. The Two Questions That Went Unanswered Because the Estate's Objections Were Sustained Were Not Evidence

The District Court sustained objections to the following two questions:

**Q. Let me restate the question.  The last time you saw your brother in person was in 2009?**
MR. BRENNER: Your Honor, just renew the objection from yesterday on this issue.

THE COURT: I'm sorry. The objection is?

MR. BRENNER: It violates an order of the Court.

THE COURT: Sustained.

ECF 840 at 23:12–24:1.

> Q. Mr. Kleiman, before I come back to these email exchanges between your brother and Craig Wright, I just want to talk with you about one other subject and that is your telephone communications with David Kleiman. **Would you agree with me that between March 12 and April 7th, 2013, on the cell phone at least, you spoke with David Kleiman six times?**
>
> A. What time again?
>
> Q. This is between—this is in the last year, the last 13 months of your brother's life.
>
> MR. BRENNER: Objection, Your Honor. Subject to court order.
>
> THE COURT: The objection is sustained.

ECF 841 at 68:7–21.

These questions—asked a full day apart and *not* part of a series—were never answered, and no evidence was elicited by them. On the first day of trial, Judge Bloom instructed the jury that counsel's questions do *not* constitute evidence, and further stated that "when I sustain an objection to a question, you must ignore the question and not guess what the answer might have been." ECF 837 at 174:18–24; 175:9–11. At the close of the evidence, the District Court reminded the jury that its decision should be based only on the evidence presented.  ECF 851 at 20:9–11;

46

44:12–15.[31] These questions elicited no evidence on which the jury could have erroneously relied in rendering its verdict. *E.g., ML Healthcare Servs., LLC v. Publix Super Markets, Inc.,* 881 F.3d 1293, 1305 (11th Cir. 2018) (citation omitted).

In denying the Estate's new trial motion, the district court noted that the Estate never asked for a curative instruction after any allegedly improper questions, including these two. ECF 887 at 7. Nor were these questions so outrageous that curative instructions would have been ineffective. Still, the Estate sat on its hands. In these circumstances, the unanswered questions—which did not adduce any evidence—cannot constitute reversible error. *Scott v. Dunnam*, 2016 WL 1452413, at *4 (S.D. Ga. 2016) (new trial held unwarranted where question violated prior order, because the "Court interrupted defense counsel's line of questioning before any improper evidence or comment could be presented to the jury").

### 2. The Two Questions That Were Answered Because the Estate's Objections Were Overruled Did Not Support a New Trial

On the third day of trial, the following two questions were answered over the Estate objections:

Q. All right. You spoke very little – if I remember correctly, the only thing you commented on in the period between 2008 and April of

---

[31]"We always presume that the jury follows its instructions." *United States v. Colston*, 4 F.4th 1179, 1192 (11th Cir. 2021).

2013 is Thanksgiving Day 2009; isn't that right?

A. Yes.

Q. Okay.  And that was a – that was November 26th, 2009, right?

A. Correct.

**Q. Okay.  And you know that date because that's the last day you saw your brother in life, correct?**

MR. BRENNER:  Objection.  May we approach?

MR. RIVERO: Judge, I'll –

THE COURT: The objection is overruled at this point.

BY MR. RIVERO:

Q. Sir?

A. I'm not exactly certain if that's the very last day.  But that's the – I guess the best memory of last seeing him.  I may have seen him other times after that, but I just don't recall it.

**Q. Sir, your testimony under oath and your best memory is that that was the last day you saw your brother in life, is it not?**

MR. BRENNER: Same objection, Your Honor.

THE WITNESS: Like I said, I'm not certain that was –

THE COURT: The objection is noted. It's overruled at this point.

THE WITNESS: I could have possibly seen him other days.

ECF 839 at 149:22–150:24.

48

Ira Kleiman answered these questions *with denials*. Accordingly, they elicited *no* evidence prejudicial to the Estate.

In any event, the district court did not abuse its discretion in overruling the Estate's objections. It possessed "broad discretion to determine the relevance and admissibility of any given piece of evidence" at trial. *United States v. Clay*, 832 F.3d 1259, 1314 (11th Cir. 2016). This is so even where such a ruling modifies a preliminary order in limine, which is, by definition, subject to modification. *See ML Healthcare Servs*., 881 F.3d at 1297. No such modification occurred here, although it would have been permissible.

These two questions did *not* violate the order in limine because they were asked for a proper purpose—to which that order expressly referred—namely, to discredit the Estate's story about the purported "Thanksgiving dinner conversation." Specifically, Ira Kleiman testified on direct that, on November 26, 2009, his brother told him he was working on a digital currency with a "rich foreign guy" and drew a "logo" of a B with one line through it. ECF 839 at 145:4–7. However, no such logo existed as of Thanksgiving 2009. ECF 842 at 185:2–20 (Wright); ECF 846 at 227:8–13 (Madura). It was all but *essential* to Dr. Wright's defense to call that implausible testimony into doubt *because that was the only time David Kleiman allegedly told anybody he was working on Bitcoin*. Judge

Bloom correctly concluded that this testimony did not violate her order in limine [ECF 887 at 9], and she did not err in refusing to grant a new trial on this basis.

### C. A Juror's Post-Trial Statements to the Media Are Not Evidence of Substantial Prejudice Warranting a New Trial

After mischaracterizing what were, at most, de minimis evidentiary errors as "misconduct" that substantially prejudiced the jury, the Estate offers its own purported "evidence" of purported prejudice—a juror's post-trial interview with an online publication. That juror allegedly stated: "In three years [Ira Kleiman] didn't go to the hospital? That clouded my view as far as what the actual record stated." ECF 861 Ex. G at 2. This statement—even if it were complete and in context, which it is not—is insufficient to warrant overturning the carefully considered jury verdict after seven days of deliberation. The District Court correctly rejected it.

*First*, a juror's statement to the media obviously is not evidence. It is not in the record, and therefore cannot support a new trial. *Bartholomew v. Universe Tankships, Inc.*, 263 F.2d 437, 448 (2d Cir. 1959) (Jurors' statements are not part of the trial record.).

*Second*, jurors' statements about their own mental processes and personal perspectives on the jury's deliberations are legally insufficient to call a jury verdict into question. *See U.S. v. Blackwell,* 459 F.3d 739, 769-70 (6th Cir. 2006) (defendant not entitled to new trial where juror stated in post-trial interview that seeing defendant mouth "I hate you" to his ex-wife during trial "virtually sealed" his fate).

In this regard, "[t]he verdict of a jury may not be impeached by evidence of the thought processes and undisclosed subjective prejudices of individual jurors." *United States v. Krall,* 835 F.2d 711, 716 (8th Cir. 1998). Accordingly, one juror's purported post-hoc statement to the media about his personal views on the Kleiman brothers' relationship cannot undermine the integrity of the jury's deliberations as a whole.

      *Third*, the Estate's carefully selected excerpt of the juror's alleged statement to the media is misleading. The article also quoted the juror as saying this:

> "**They never proved to me without a shadow of a doubt that he was involved in bitcoin in any way***,"* the juror said. "**Everybody said he wasn't a miner, he wasn't a coder. I just felt like he may have written papers for Dr. Wright, and that's where their friendship was.**"

> Jurors deliberated for more than a week, as the two holdouts in Kleiman's camp pored through all the evidence, according to the juror.

> "**They finally realized there was no positive connection with bitcoin***,"* the juror said. "**That's when they agreed that as far as liability towards bitcoin, there was none**."

ECF 861 Ex. G at 2 (emphasis added).[32] In other words, the jury awarded no Bitcoin-related damages to the Estate (or W&K) because they failed to prove their

---

[32] The Estate makes a newly minted argument that this juror's supposed reference to proof "without a shadow of a doubt" means that the jury somehow applied the wrong standard (i.e., beyond a reasonable doubt versus preponderance of the evidence) in its deliberations. Initial Br. at 52. Nothing supports this theory. The jury was correctly instructed that the Estate had to prove its claims by a preponderance of the evidence. ECF 800-1 at 5. A jury is presumed to follows its instructions, and there is no evidence that this jury did otherwise. *See Colston*, 4 F.4th at 1192.

claims, not because the jurors wanted to punish Ira Kleiman for being a bad brother. The fact that the jury awarded *no* Bitcoin-related damages *either* to the Estate or W&K proves this point. If the jury had refused to award Bitcoin damages to the Estate only because it perceived Ira Kleiman as an "undeserving" bad brother, then it logically should have awarded Bitcoin damages to W&K—an entity incapable of a personal relationship with anyone. But it did not. This is because the Estate failed to prove its case, not because of the impact of any "relationship" evidence.

### D. Even If There Was Any Error, It Was Harmless Error

Finally, the limited testimony elicited about the brothers' relationship was cumulative of other relationship evidence, some elicited by the Estate itself. During his day-long direct examination by his own lawyers, Ira Kleiman testified about communicating with his brother only once, on Thanksgiving Day 2009. ECF 839 at 143:5–45:25. He later admitted that, despite David's lengthy hospitalizations and serious health issues, he had no idea his brother was sick. ECF 839 at 176:18–177:1. In stark contrast, David Kleiman's close friend, Kimon Andreou, testified that he had personal knowledge of David's health issues, visited him daily in the hospital, and spoke to and texted with him daily. ECF 848 (P.M.) at 99:3–16; 110:6–19. Considered in context, to the extent any evidence was improperly

admitted (it wasn't), that evidence was cumulative, and any error was harmless.

*E.g., Brough v. Imperial Sterling Ltd*., 297 F. 3d 1172, 1179 (11th Cir. 2002).

## <u>CONCLUSION</u>

For all the foregoing, good and sufficient reasons, this Court should affirm

the judgment of the district court.

Respectfully submitted,

RIVERO MESTRE LLP
565 Fifth Avenue, 7th Floor
New York, New York 10017
Telephone: (212) 880-9451
Fax: (212) 504-9522
MICHAEL A. FERNÁNDEZ
AMY C. BROWN

RIVERO MESTRE LLP
*Counsel for Appellee*
2525 Ponce de Leon Boulevard
Suite 1000
Miami, Florida 33134
Telephone: (305) 445-2500
Fax: (305) 445-2505

By:    <u>s/ Andrés Rivero</u>
ANDRÉS RIVERO
JORGE A. MESTRE
AMANDA MCGOVERN
ALAN H. ROLNICK
ROBERT J. KUNTZ JR.
ALLISON HENRY

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Fed. R. App.

P. 32(a)(7)(B) because it contains 12,944 words, excluding those parts that 11th

Cir. R. 32-4 exempts. This brief also complies with typeface requirements of Fed.

R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6)

because this brief has been prepared in a proportionally spaced typeface using

Microsoft Word, Office 365 Pro Plus and 14-point Times New Roman type style

/s/ Andrés Rivero
ANDRÉS RIVERO

## **CERTIFICATE OF SERVICE**

I CERTIFY that on November 23, 2022, I electronically filed this

document with the Clerk of Court using CM/ECF. I also certify that this

document is being served today on all counsel of record by transmission of

Notices of Electronic Filing generated by CM/ECF.

/s/ Andrés Rivero
ANDRÉS RIVERO

# Addendum of Additional Legal Authorities

# Exhibit A

Jury Instructions from

Baybrook Homes of Polk County, LLC, a Florida Limited Liability Company,
Braxton Green Jr. and Elenora Green, Husband and Wife, Estates of Lake Wales,
LLC

v.

Auburndale Estates INC., a Florida Corporation, Richard A. Quaid, an individual,
and RQ Holdings Corporation, a Florida Corporation

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
IN AND FOR ORANGE COUNTY, FLORIDA
COMPLEX BUSINESS LITIGATION COURT

BAYBROOK HOMES OF POLK COUNTY,
LLC, a Florida limited liability company,
BRAXTON GREEN, JR. and ELEANOR
GREEN, husband and wife, ESTATES OF
LAKE WALES, LLC,

      Plaintiffs,

v.                            Case No.: 48-2008-CA-3871-O
                                 Division 32

AUBURNDALE ESTATES, INC., a Florida
corporation, RICHARD A. QUAID, an
individual, and RQ HOLDINGS
CORPORATION, a Florida corporation,

      Defendants.
_____/

### JURY INSTRUCTIONS

      Members of the jury, I shall now instruct you on the law that you must

follow in reaching your verdict. It is your duty as jurors to decide the issues, and

only those issues, that I submit for determination by your verdict. In reaching your

verdict, you should consider and weigh the evidence, decide the disputed issues of

fact, and apply the law on which I shall instruct you, to facts as you find them from

the evidence.

      The evidence in this case consists of the sworn testimony of the witnesses,

all exhibits received in evidence and all facts that may be admitted or agreed to by

the parties.

eFiled in the Office of Clerk of Court, Orange County Florida 2010 Feb 16 01:44 PM Lydia Gardner

Add. 2

In determining the facts, you may draw reasonable inferences from the evidence. You may make deductions and reach conclusions which reason and common sense lead you to draw from the facts shown by the evidence in this case. But, you should not speculate on any matters outside the evidence.

In determining the believability of any witness and the weight to be given the testimony of any witness, you may properly consider the demeanor of the witness while testifying; the frankness or lack of frankness of the witness; the intelligence of the witness; any interest the witness may have in the outcome of the case; the means and opportunity the witness had to know the facts about which the witness testified; the ability of the witness to remember the matters about which the witness testified; and the reasonableness of the testimony of the witness, considered in the light of all the evidence in the case and in the light of your own experience and common sense.

You have heard opinion testimony from persons referred to as expert witnesses. Some of the testimony before you was in the form of opinions about certain technical subjects.

You may accept such opinion testimony, reject it, or give it the weight you think it deserves, considering the knowledge, skill, experience, training or education of the witness, the reasons given by the witness for the opinion expressed, and all the other evidence in the case.

2

Add. 3

In your deliberations you are to consider the distinct claims that Plaintiffs have brought against Defendants. The Plaintiffs claim a partnership exists amongst the parties to acquire land, develop land, construct homes, sell homes and/or land and share in the profits and losses of the partnership. Plaintiffs claim that Defendants breached the partnership by diverting partnership profits and pledging and encumbering partnership assets for money of which Plaintiffs never received the benefit by failing to retain and appropriately distribute profits and by distributing unauthorized profits to Defendants.

Plaintiffs have also brought breach of contract claims against Defendants. The Plaintiffs claim that Defendants have breached the August 24 Agreement and Reciprocal Option Agreement entered into between the parties by refusing to accept Eleanor Green's tender to exercise her option to purchase an ownership interest. Additionally, Plaintiffs claim Defendants breached the Profit Participation Agreements by diverting profits to the detriment of Plaintiffs by refusing to disburse profits, by failing to put back agreed to percentages of profits, by increasing lot prices of Auburndale Estates, Inc. and not sharing the profits by encumbering Auburndale Estates, Inc. with a $1,000,000 lien that was not used for Plaintiffs' benefit and by wrongfully attempting to terminate contracts for Defendants' own benefit.

Plaintiffs further claim that Defendant, Richard Quaid, breached his fiduciary duties to Eleanor Green regarding the Estates of Auburndale, Inc. by

3

pledging the sole asset of Estates of Auburndale, Inc. for money for which Estates of Auburndale, Inc. did not benefit. Plaintiffs claim Defendant, Richard Quaid, breached his fiduciary duties to Plaintiffs in general regarding the partnership by pledging partnership assets for money of which Plaintiffs never received the benefit.

In the alternative to the breach of contract counts, Plaintiffs have brought an action against Defendants for unjust enrichment.

Defendants have filed a counterclaim against the Plaintiffs for breach of contract, specifically the Profit Participation Agreements alleging that Plaintiffs failed to disburse profits to the Defendants.

Plaintiffs have asserted certain defenses to the Defendants' counterclaims including prior material breach, waiver and unclean hands.

Although all claims have been tried together, each is separate from the others and each party is entitled to have you separately consider each claim as it effects that party. Therefore, in your deliberations, you should consider the evidence as it relates to each claim separately as you would have if each claim had been tried before you separately.

If the greater weight of the evidence does not support the claims of Plaintiffs then your verdict should be for Defendants. If the greater weight of the evidence does support the claims of Plaintiffs then your verdict should be for Plaintiffs.

4

Add. 5

On the Counterclaim filed by the Defendants, if the greater weight of the evidence does not support the claims of Defendants then your verdict should be for Plaintiffs. On the Counterclaim filed by Defendants, if the greater weight of the evidence does support their claims, then you shall consider any defenses raised by Plaintiffs. If the greater weight of the evidence supports any defense raised by Plaintiffs, then you should find for the Plaintiffs. If, however, the greater weight of the evidence does support the Counterclaim of Defendants, and the greater weight of the evidence does not support the defenses raised by Plaintiffs then your verdict should be for Defendants, on their Counterclaim.

"Greater weight of the evidence" means the more persuasive and convincing force and effect of the entire evidence in the case.

The first issue for your determination is whether there was a partnership between the parties and if so, whether the Defendants breached the partnership. A partnership is an association of two or more persons or entities to carry on a business for profit or join together or agree to join together in a business for their common benefit, each contributing property, money or services and each having an interest in any profits. If such an association exists, it is a partnership, regardless of whether the persons intended to form a partnership. A joint venture is a form of partnership and both types of entities are generally governed by the same rules of law. The existence of a partnership may be implied or inferred from the conduct of the parties or from acts and circumstances that in fact make it appear that they are

5

Add. 6

participants in a partnership. A person or entity who receives a share of the profits of a business is presumed to be a partner in the business but this presumption can be rebutted. For a partnership to exist all of the following factors must be present:

1. Both parties contributed capital or labor to the business.

2. The parties had a community of interest in the performance of a common purpose.

3. The parties exercised joint control or had the right to joint control of the business.

4. The parties had the right to share in the profits.

5. The parties had a duty to share in any losses.

You may look at the interpretation the parties' gave to their agreements and their conduct throughout their course of dealings to ascertain their intent and the meaning of their agreements.

If you find that a partnership existed you must next determine whether Defendants breached the partnership.

A partner is responsible to the other partners in the partnership for a partner's breach of trust in misapplying money or property. If you determine that a Defendant partner failed to perform a partnership duty as required by the Partnership Agreement then you should find for Plaintiffs on the breach of partnership issue.

6

Add. 7

The next issue for your determination is the breach of contract claims brought by the Plaintiffs. The Plaintiffs allege that Defendants breached the August 24 Option Agreement and the Profit Participation Agreements. The Court will now instruct you on the elements of a cause of action for breach of contract. The elements of a cause of action for breach of contract are: (1) formation of the contract; (2) performance by the party seeking affirmative relief; (3) failure by other party to perform their part of the contract; and (4) damages.

In this action, Plaintiffs and Defendants entered into multiple written contracts regarding the purchase of land, development of land, construction of homes on the land, and the shared obligations and division of profits from these endeavors. A contract is an agreement establishing the parties' rights and duties.

The terms of a contract may be expressed or implied. Implied provisions of a contract require the assent of the parties. A written contract may have legal effect beyond its actual words. Whether the parties assent to the implied terms may be inferred from circumstances which fairly raise a presumption that the parties understood and intended the implied terms.

Every agreement imposes an obligation to act in good faith in the performance or enforcement of the contract. When a party to a contract has the discretion to perform an obligation of the contract, that party must act in good faith and in a reasonable time. "Good faith" means honesty in fact in the conduct or

7

transaction at issue. In determining the breach of contract claim in this case you may consider the good faith of the parties.

The next item for your determination is the breach of fiduciary duty claim brought by Plaintiffs. A fiduciary relationship exists between parties when one of them is under a duty to act for the benefit of another within the scope of the relationship. A fiduciary has an obligation not to conceal anything and to make a full disclosure to the beneficiary. The failure to make the disclosure is a breach of fiduciary duty. A partner owes a fiduciary duty to the other partners not to divert assets of the partnership. The elements of a cause of action for breach of fiduciary duty are (1) the existence of a fiduciary duty; (2) the breach of that duty; and (3) damage proximately caused by that breach.

The next matter for your consideration is the claim that Plaintiffs have brought against Defendants, for unjust enrichment. Unjust enrichment is characterized as the effect of a failure to make restitution for property received by one under such circumstances as to give rise to a legal or equitable obligation, thereby requiring such person to account for his retention of the property. Stated differently, the doctrine is a recognition that a person is accountable to another on the ground that if the former were not required to do so, he would unjustly benefit, or the other would unjustly suffer loss.

The elements of this cause of action are: (1) The Plaintiffs conferred a benefit on Defendants; (2) Defendants had knowledge of the benefit or requested

8

Add. 9

the benefit; (3) Defendants accepted or retained the benefit; and (4) Under the circumstances it would be unjust for the Defendants to retain the benefit without paying fair value.

As previously mentioned, Defendants have filed a Counterclaim against Plaintiffs for breach of contract concerning the Profit Participation Agreements. The Court has already instructed you on the elements of a breach of contract claim.

Plaintiffs have asserted several defenses to the Counterclaim brought by Defendants. The first defense is prior material breach of contract.

Plaintiffs contend that they are excused from performing their remaining obligations under the contract because of Defendants' prior material breach of diverting profits and wrongfully encumbering partnership assets. If you find Defendants materially breached the Profit Participation Agreements prior to the alleged breach by Plaintiffs, then Plaintiffs are excused from performing their obligations under the contract.

The next defense for your determination is waiver. Waiver is the intentional relinquishment of a known right. It may be inferred from the conduct leading the other party to believe that a right has been waived. Waiver may be direct or implied from the conduct of the parties.

The next defense that Plaintiffs assert is unclean hands. Under unclean hands, if a party has acted in bad faith, resorted to trickery and deception, or been guilty of fraud, injustice or unfairness, that party may not recover from the other

9

party. Any willful act relating to the subject matter of the litigation that would be condemned and declared wrongful by honest and fair-minded persons is sufficient to establish unclean hands.

If you find in favor of Plaintiffs on any of their claims you must consider the amount of money damages to be awarded to Plaintiffs. You should award them an amount of money that the greater weight of the evidence shows will fairly and adequately compensate Plaintiffs for their loss and damages, including any such damage as is reasonably certain to incur in the future. Plaintiffs are entitled to recover damages that would put them in the same position as if Defendants would have properly performed their duties. The measure of damages may include any gains prevented, any losses sustained, including loss of future profits.

If you find for Defendants on all of Plaintiffs' claims you will not consider the matter of damages on Plaintiffs' claims.

If you find in favor of Defendants on their Counterclaim you must consider the amount of money damages to be awarded to Defendants. You should award them an amount of money that the greater weight of the evidence shows will fairly and adequately compensate them for their loss and damages, including any such damage as is reasonably certain to incur in the future. Defendants are entitled to recover damages that would put them in the same position as if Plaintiffs would have properly performed their duties. The measure of damages may include any gains prevented, any losses sustained, including loss of profits.

10

Add. 11

If a party seeks to recover profits lost as the direct and proximate result of the wrongful acts of another, the loss must be proven so that it can be ascertained with reasonable certainty and cannot be based entirely upon speculation or conjecture.

Uncertainty as to the amount of damages or difficulty in proving the exact amount will not prevent recovery where it is clear that substantial damages were suffered and there is a reasonable basis in the evidence for the amount awarded. Ultimately, the degree of certainty simply requires that the mind of a prudent impartial person be satisfied with the damages.

Your verdict must be based on the evidence that has been received and the law on which I have instructed you. In reaching your verdict, you are not to be swayed from the performance of your duty by prejudice, sympathy or any other sentiment for or against any party.

When you retire to the jury room, you should select one of your number to act as foreperson to preside over your deliberations and sign your verdict. Your verdict must be unanimous, that is, your verdict must be agreed to by each of you.

You will be given a form of verdict, which I shall now read to you:

When you have agreed on your verdict the foreperson, acting for the jury, should date and sign the verdict. You may now retire to consider your verdict.

Given February 15, 2010

Add. 12

# Exhibit B

Transcript from

HAROUT SAMRA

V.

VICKEN BEDOYAN, individually, WPM MIAMI, INC., a Florida corporation, WPM BOCA, INC., a Florida corporation, and WPM LPZ-BOL SRL, a foreign limited liability company organized under the laws of Bolivia

Filing # 53841280 E-Filed 03/16/2017 03:58:32 PM

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO: 14-22854 CA 44

**Complex Business Litigation**

HAROUT SAMRA, individually,

      Plaintiff / Counter-Defendant,

v.

VICKEN BEDOYAN, individually, WPM
MIAMI, INC., a Florida corporation, WPM
BOCA, INC., a Florida corporation, and WPM
LPZ-BOL SRL, a foreign limited liability
company organized under the laws of Bolivia,

      Defendants / Counter-Plaintiffs.

_____/

## NOTICE OF FILING TRIAL TRANSCRIPTS AND VERDICT

      Defendants, Vicken Bedoyan, WPM Miami, Inc., and WPM Boca, Inc., hereby file a

copy of the trial transcript and Verdict.

Respectfully submitted,

GUNSTER
*Counsel to Vicken Bedoyan and WPM
Miami, Inc.*
600 Brickell Avenue, Suite 3500
Miami, Florida 33131
Telephone: 305-376-6000
Facsimile: 305-376-6010

By: /s/ Angel A. Cortiñas
      Angel A. Cortiñas, FBN: 797529
      Jonathan H Kaskel, FBN: 52718

1

Add. 14

## CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2017, I served the foregoing *via* email on the

following Service List and to the Court at cbl44@jud11.flcourts.org.

By: /s/ Jonathan H Kaskel
Jonathan H Kaskel, FBN: 52718

**SERVICE LIST**
**Jose M. Ferrer, Esquire**
**Melissa Pallett-Vasquez, Esquire**
**Desiree Fernandez, Esquire**
BILZIN SUMBERG, LLP
*Attorneys for Plaintiff*
jferrer@bilzin.com
mpallett@bilzin.com
dfernandez@bilzin.com

2

Add. 15

Harout Samra vs Vicken Bedoyan Vol 6 Hearing
March 01, 2017

```
 1        IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT
              IN AND FOR MIAMI-DADE COUNTY, FLORIDA
 2
                    CASE NO.: 14-22854 CA 40
 3

 4

 5   HAROUT SAMRA, individually,

 6           Plaintiff,

 7   vs.

 8

 9   VICKEN BEDOYAN, individually,
     WPM MIAMI, INC., a Florida corporation,
10   WPM BOCA, INC., a Florida corporation,
     WORLD PRECIOUS METALS REFINING,
11   INC., a Florida corporation, WORLDS PRECIOUS METALS
     REFINERIES, INC.,
12   a Florida corporation, and WPM LPZ-BOL SRL,
     is a foreign limited liability company organized
13   Under the laws of Bolivia,

14           Defendants.
     _____/
15

16                      Volume VI

17           Proceedings had and taken place before the

18   Honorable Judge William Thomas, one of the judges of said

19    Court, at the Dade County Courthouse, 73 West Flagler

20    Street, Miami, Florida, on March 1, 2017, commencing at

21           the hour of 8:44 a.m., and being a trial.

22

23                  Stenographically Reported By:
                       SHARON VELAZCO, RPR
24               Registered Professional Reporter

25
```

U.S. LEGAL SUPPORT
(305) 373-8404

Add. 16

Harout Samra vs Vicken Bedoyan Vol 6 Hearing
March 01, 2017                                           2

```
1                      APPEARANCES

2   On Behalf of the Plaintiff:

3
      BILZIN SUMBERG BAENA PRICE & AXELROD, LLP
4     1450 Brickell Avenue, 23rd Floor
      Miami, Florida 33131-3456
5     Tel: 305.374.7580
      Fax: 305.374.7593
6     Jferrer@bilzin.com
      Mpallett@bilzin.com
7     BY: JOSE FERRER, ESQUIRE
      MELISSA PALLETT-VASQUEZ, ESQUIRE
8

9   On Behalf of the Defendants:

10    GUNSTER
      Brickell World Plaza
11    600 Brickell Avenue
      Suite 3500
12    Miami, FL  33131
      Phone 305.376.6043
13    Acortinas@gunster.com
      Jkaskel@gunster.com
14    BY: ANGEL CORTINAS, ESQUIRE
      JONATHAN KASKEL, ESQUIRE
15    STEPHANIE TURK, ESQUIRE

16

17                       _    _    _

18

19           (No Exhibits marked to this volume.)

20

21

22

23

24

25
```

U.S. LEGAL SUPPORT
(305) 373-8404

Add. 17

1     Mr. Bedoyan must prove each of defenses by the

2   greater weight of the evidence.  I will now define

3   some of the terms you will be using in deciding this

4   case.  You will have a copy of these instructions

5   when you go back into the jury room, so it is not

6   necessary for you to take notes unless you really

7   want to.

8     Greater weight of the evidence means the more

9   persuasive and convincing force and effect of the

10  entire evidence in the case.

11    One of the issues you will determine in this case

12  is whether Mr. Samra and Mr. Bedoyan entered into a

13  partnership agreement commencing in 2009 to buy and

14  sell gold for profit.

15    Florida law defines partnership as the

16  association of two or more persons to carry on as

17  co-owners of a business for profit, and specifically

18  provides that such an association results in a

19  partnership, whether or not the persons intend to

20  form a partnership.

21    The existence of a contract is essential to the

22  creation of a partnership relationship.  Although a

23  contract need not be embodied in a formal written

24  agreement, a contract must be firm or definite in its

25  terms, and -- essential terms.

```
 1        To succeed on its claim that a partnership

 2   agreement existed between Mr. Samra and Mr. Bedoyan,

 3   Mr. Samra must show by the greater weight of the

 4   evidence all of the following:  One, the essential

 5   contract terms were clear enough that the parties

 6   could understand what each was required to do; two,

 7   the parties agreed to give each other something of

 8   value; and three, the parties agreed to the essential

 9   terms of the contract.

10        A partnership exists when each of the following

11   elements is present:  One, a community of interest in

12   the performance of a common purpose of partnership;

13   two, joint control or right of control; three, joint

14   proprietary interest in the subject matter; four, a

15   right to share in profits; and five, a duty to share

16   in any losses.

17        Mr. Samra claims that Mr. Bedoyan breached a

18   partnership agreement between them.  To succeed on

19   the claim for breach of partnership agreement,

20   Mr. Samra must show by the greater weight of the

21   evidence each of the following:  One, Mr. Samra and

22   Mr. Bedoyan entered into a partnership agreement;

23   two, Mr. Samra did all or substantially all of the

24   essential things which the contract required him to

25   do; and three, all conditions precedent by the
```

Harout Samra vs Vicken Bedoyan Vol 6 Hearing
March 01, 2017                                                    61

```
 1    partnership agreement for Mr. Bedoyan's performance

 2    had occurred; and four, Mr. Bedoyan failed to do

 3    something essential which the partnership agreement

 4    required him to do.

 5         Mr. Samra claims that Mr. Bedoyan owed him a

 6    fiduciary duty of loyalty, trust, honestly, fairness,

 7    full disclosure, and fair dealing, and that

 8    Mr. Bedoyan breached that duty.  A fiduciary

 9    relationship is one in which confidence is reposed on

10    one side, and there is resulting superiority and

11    influence on the other.  A fiduciary relationship

12    exists when one is under a duty to act or give advice

13    for the benefit of another upon matters in the scope

14    of that relation.  A fiduciary relationship need not

15    be express.  A fiduciary relationship may be implied

16    in law, based on the specific factual situation

17    surrounding the transaction and the relationship of

18    the parties.

19         To succeed on a claim for breach of fiduciary

20    duty, Mr. Samra must show by the greater weight of

21    the evidence that one, Mr. Bedoyan owed Mr. Samra a

22    fiduciary duty, and two, Mr. Bedoyan breached that

23    duty such that it is the proximate cause of Mr.

24    Samra's injury.

25         Mr. Samra claims that if there was no enforceable
```

Harout Samra vs Vicken Bedoyan Vol 6 Hearing
March 01, 2017                                        62

1   partnership agreement, Mr. Bedoyan was unjustly

2   enriched by Mr. Samra's actions, and Mr. Samra should

3   be compensated for his contributions --

4   contributions, correct?

5          MR. FERRER:  Yes, your Honor; correct.

6          THE COURT:  To succeed on such a claim for unjust

7   enrichment, Mr. Samra must have show by the greater

8   weight of the evidence that one, Mr. Samra has

9   conferred a benefit on Mr. Bedoyan who has knowledge

10  of the benefit; two, Mr. Bedoyan voluntarily accepted

11  and retained the benefit from Mr. Samra; and three,

12  it would be inadequate -- I'm sorry, it would be

13  inequitable for Mr. Bedoyan to retain the benefit

14  without paying or compensating Mr. Samra for his

15  efforts.

16         Mr. Samra claims that Mr. Bedoyan intentionally

17  and knowingly made false statements to Mr. Samra

18  concerning the nature of their relationship, upon

19  which Mr. Samra relied to his detriment.

20         Material act.  A material act -- material fact --

21  I'm sorry, I said "material act."  I meant to say

22  material fact.  A material fact is one that is of

23  such important that Mr. Samra would not have acted as

24  he did but for the false statement.

25  Misrepresentation of a material fact is a legal cause

```
 1

 2                    CERTIFICATE OF REPORTER

 3    STATE OF FLORIDA

 4    COUNTY OF MIAMI-DADE

 5

 6          I, SHARON VELAZCO, Registered Professional

 7    Reporter, certify that I was authorized to and did

 8    stenographically report the foregoing proceedings and that

 9    the transcript is a true record of my stenographic notes.

10

11          I further certify that I am not a relative,

12    employee, attorney, or counsel of any of the parties, nor

13    am I a relative or employee of any of the parties'

14    attorneys or counsel connected with the action, nor am I

15    financially interested in the action.

16

17          Dated this 7th day of March, 2017.

18

19

20          _____

21          SHARON VELAZCO, RPR
            Registered Professional Reporter

22

23

24

25
```

Add. 22