## 22-11150

# United States Court of Appeals

## *for the*

# Eleventh Circuit

IRA KLEIMAN, as the Personal Representative of the Estate of David Kleiman,

*Plaintiff/Appellant,*

– v. –

CRAIG WRIGHT,

*Defendant/Appellee.*

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO: 9:18-cv-80176-BB
(Hon. Beth Bloom)

# REPLY BRIEF OF APPELLANT

DEVIN (VELVEL) FREEDMAN
FREEDMAN NORMAND
FRIEDLAND LLP
1 SE 3rd Avenue, Suite 1240
Miami, Florida 33131
(305) 753-3675
vel@fnf.law

ANDREW BRENNER
BOIES SCHILLER FLEXNER LLP
100 SE 2nd Avenue, Suite 2800
Miami, Florida 33131
abrenner@bsfllp.com

*Counsel for Plaintiff/Appellant*

Ira Kleiman v. Craig Wright, 22-11150

## <u>CERTIFICATE OF INTERESTED PERSONS AND<br>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Produce 26.1 and Eleventh Circuit Rule 26.1-1, Appellant IRA KLEIMAN, as the Personal Representative of the Estate of David Kleiman, respectfully submits the following Certificate of Interested Parties and Corporate Disclosure Statement:

1. The Honorable Judge Beth Bloom, *U.S. District Judge*

2. Boies Schiller Flexner LLP, *Counsel for Plaintiff-Appellant*

3. Brenner, Andrew, *Counsel for Plaintiff-Appellant*

4. BTCN 1610-491 LLC (CE)

5. Cyrulnik, Jason[1]

6. Delich, Joseph, *Counsel for Plaintiff-Appellant*

7. Devine Goodman & Rasco, LLP, *Counsel for non-party Andrew O'Hagan*

8. Economides, Constantine Philip *Counsel for Plaintiff-Appellant*

9. Estate of David Kleiman, *Plaintiff-Appellant*

10. Fernandez, Amanda Lara, *Counsel for Defendant-Appellee*

11. Fernandez, Michael*, Counsel for Defendant-Appellee*

---

[1] Former attorney at the firm Freedman Normand Friedland LLP (f/k/a Roche Freedman LLP), and claims an interest, which Freedman Normand Friedland disputes, in any fees paid to the firm in connection with this matter.

C-1

Ira Kleiman v. Craig Wright, 22-11150

12. Freedman, Velvel, *Counsel for Plaintiff-Appellant*

13. Glaser, Patricia, *Counsel for non-party John Doe*

14. Glaser Weil Fink Howard Avchen & Shapiro LLP, *Counsel for non-party John Doe*

15. Harrison, Laselve, *Counsel for Plaintiff-Appellant*

16. *Holtzman, Alexander, *Counsel for Plaintiff-Appellant*

17. Kass, Zalman, *Counsel for Defendant-Appellee*

18. Kleiman, Ira, *Plaintiff-Appellant*

19. Lagos, Stephen, *Counsel for Plaintiff-Appellant*

20. Licata, Samantha, *Counsel for Plaintiff-Appellant*

21. Lohr, Whitney, *Counsel for Defendant-Appellee*

22. *Markoe, Zaharah*, Counsel for Defendant-Appellee*

23. McGovern, Amanda *Counsel for Defendant-Appellee*

24. Mestre, Jorge, *Counsel for Defendant-Appellee*

25. Opportunistic Resources LLC[2]

26. Payne, Darrell Winston, *Counsel for non-party John Doe*

27. Pritt, Maxwell, *Counsel for Plaintiff-Appellant*

28. Rasco, Guy Austin, *Counsel for non-party Andrew O'Hagan*

---

[2] Provided funding to Freedman Normand Friedland LLP (f/k/a Roche Freedman LLP) at its founding in July 2019 (which post-dated the commencement of litigation below by more than one year).

C-2

Ira Kleiman v. Craig Wright, 22-11150

29. The Honorable Judge Bruce Reinhart, *U.S. District Magistrate Judge*

30. Rivero, Andres, *Counsel for Defendant-Appellee*

31. Rivero Mestre LLP, *Counsel for Defendant-Appellee*

32. Freedman Normand Friedland LLP, *Counsel for Plaintiff-Appellant*

33. Roche, Kyle

34. Rolnick, Alan, *Counsel for Defendant-Appellee*

35. Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., *Counsel for non-party John Doe*

36. Wright, Craig, *Defendant-Appellee*

37. Zack, Stephen, *Counsel for Plaintiff-Appellant*

* = no longer involved in representation

Appellant certifies that no publicly traded company or corporation has an interest in the outcome of the case of appeal.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ......................................................................C-1

TABLE OF AUTHORITIES ...................................................................... ii

I.    Introduction ...................................................................................1

II.   The District Court Improperly Instructed the Jury on Partnership
      Formation ....................................................................................2

      A.    The Estate has not waived its objection to the partnership
            instruction .........................................................................2

      B.    The partnership instruction incorrectly stated current
            Florida law .........................................................................6

            1.    The district court's instruction is inconsistent with
                  the plain statutory language .........................................7

            2.    Numerous cases and treatises confirm that the district
                  court's instruction misstated the law. ..........................8

            3.    The Estate is entitled to reversal or at least
                  to certification ..........................................................12

III.  The District Judge Abused Her Discretion By Applying An
      Incorrect Legal Standard To Reverse Issue Sanctions the
      Magistrate Judge Imposed Under Rule 37 ...................................13

      A.    The District Judge applied an incorrect legal standard that
            ignores Rule 37's plain text and syntax, and conflicts with
            Supreme Court and Eleventh Circuit precedent...................13

      B.    The District Judge's Order denying a subsequent motion for
            sanctions pursuant to the Court's inherent authority does not
            excuse the Court's abuse of discretion in applying its own
            incorrect legal standard ......................................................18

IV.   The District Court Abused Its Discretion In Denying The Estate's
      Motion For A New Trial Despite Wright's Multiple, Intentional
      Violations Of The *In Limine* Order .............................................21

CONCLUSION ....................................................................................25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Cephus v. CSX Transp., Inc.*,
    771 Fed. Appx. 883 (11th Cir. 2019) .............................................................25

*Chicago Truck Drivers, Helpers & Warehouse Workers Union Pension
    Fund v. Bhd. Lab. Leasing*,
    166 F.3d 1269 (8th Cir. 1999) .......................................................................19

*Compaq Computer Corp. v. Ergonome Inc.*,
    387 F.3d 403 (5th Cir. 2004) .........................................................................17

*Cordero v. Transamerica Annuity Serv. Corp.*,
    34 F.4th 994 (11th Cir. 2022) .................................................................. 12-13

*Davis v. Oasis Legal Fin. Operating Co., LLC*,
    936 F.3d 1174 (11th Cir. 2019) .....................................................................15

*Dreyfuss v. Dreyfuss*,
    701 So. 2d 437 (Fla. 3d DCA 1997)......................................................7, 8, 12

*Eric T. v. Nat'l Med. Enterprises, Inc*.,
    700 A.2d 749 (D.C. 1997) ...............................................................................5

*Ford ex rel. Est. of Ford v. Garcia*,
    289 F.3d 1283 (11th Cir. 2002) .......................................................................6

*Fuentes v. Classica Cruise Operator Ltd., Inc.*,
    32 F.4th 1311 (11th Cir. 2022) ......................................................................20

*Garcia v. Lee*,
    2018 WL 2268129 (S.D.N.Y. May 17, 2018) .................................................3

*Griffin v. Habitat for Human. Int'l, Inc*.,
    641 F. App'x 927 (11th Cir. 2016).................................................................3

*Griffith Energy, Inc. v. Evans*,
    925 N.Y.S.2d 282 (N.Y. App. 2011).............................................................10

*Hammond Packing Co. v. State of Arkansas*,
    212 U.S. 322 (1909)................................................................................15, 17

*Harbaugh v. Greslin*,
  436 F. Supp. 2d 1315 (S.D. Fla. 2006), *aff'd*, 2007  WL 595962
  (11th Cir. 2007) ........................................................................................11

*Harley-Davidson Motor Co. v. Daniel*,
  244 Ga. 284, 260 S.E.2d 20 (1979) ..............................................................23

*Herbert Warren & Assocs., Inc. v. Ramada Inns, Inc*.,
  1991 WL 94382 (9th Cir. 1991) .....................................................................6

*Hillman v. Cannon*,
  2011 WL 6670657 (Iowa Ct. App. 2011)........................................................9

*Hudson v. D.C.*,
  558 F.3d 526 (D.C. Cir. 2009)........................................................................3

*In re KeyTronics*,
  744 N.W.2d 425 (Neb. 2008) ........................................................................10

*Ingram v. Deere*,
  288 S.W.3d 886 (Tex. 2009) ...........................................................................9

*Insurance Corp. of Ireland v. Campagnie des Bauxites de Guinee*,
  456 U.S. 694 (1982)..............................................................13, 15, 16, 17

*Jackson Nat'l Life Ins. Co. v. Crum*,
  25 F.4th 854 (11th Cir. 2022) ......................................................................12

*Key Brands Int'l Ltd. v. Wilson*,
  2019 WL 6622856 (C.D. Cal. Sept. 3, 2019) ...............................................10

*Kislak v. Kreedian*,
  95 So.2d 510 (Fla.1957) ...........................................................................4, 7

*Marine v. Crown Equip. Corp*.,
  1998 WL 171829 (9th Cir. 1998) ...................................................................5

*Mary M. v. City of Los Angeles*,
  814 P.2d 1341 (Cal. 1991)..............................................................................5

*McGregor v. Crumley*,
  775 N.W.2d 91 (S. Dak. 2009) .....................................................................10

*O2 Micro Int'l Ltd v. Beyond Innovation,*
  *Tech.*, 2009 WL 2047617 (E.D. Tex. July 10, 2009) ...................................24

*Peer v. Lewis*,
    606 F.3d 1306 (11th Cir. 2010) ....................................................19

*Penney v. Penney*,
    2021 WL 3828134 (Ala. Aug. 27, 2021)..........................................9

*Pete's Towing Co. v. City of Tampa, Fla.*,
    378 F. App'x 917 (11th Cir. 2010)..................................................17

*Queen v. Schultz*,
    747 F.3d 879 (D.C. Cir. 2014)........................................................10

*Rafael J. Roca, P.A. v. Lytal & Reiter, Clark, Roca, Fountain & Williams*,
    856 So.2d 1 (Fla. 4th DCA 2003).............................................8, 11

*Ray v. Ropes & Gray LLP*,
    799 F.3d 99 (1st Cir. 2015)...............................................................6

*Scott v. Dunnam*,
    2016 WL 1452413 (S.D. Ga. 2016) ...............................................23

*SEC v. Yun*,
    327 F.3d 1263 (11th Cir. 2003) .....................................................12

*Serra Chevrolet, Inc. v. General Motors Corp.*,
    446 F.3d 1137 (11th Cir. 2006) ...................................16, 17, 18, 20

*Simmons v. Bradshaw*,
    879 F.3d 1157 (11th Cir. 2018) .....................................................12

*Thale v. Collector Imports, LLC*,
    2008 WL 4386769 (W.D. Ky. Sept. 23, 2008) ..............................10

*TLC Properties, Inc. v. Pennsylvania Dep't of Transportation*,
    2022 WL 2706104 (M.D. Pa. July 12, 2022) ...................................3

*U.S. upon rel. of Tenn. Valley Auth. v.*
    *Easement & Right-of-Way Over 4.42 Acres of Land*,
    782 F. App'x 945 (11th Cir. 2019)..................................................17

*U.S. v. Twenty-Nine Pre-Columbian and Colonial Artifacts From Peru*,
    695 F. App'x 461 (11th Cir. June 2, 2017) ....................................14

*United States v. Cochran*,
    682 F. App'x 828 (11th Cir. 2017).....................................................3

*United States v. Harris*,
    740 F.3d 956 (5th Cir. 2014) ............................................................3

*United States v. Hernandez*,
    574 F.2d 1362 (5th Cir. 1978) ..........................................................3

*United States v. Squires*,
    440 F.2d 859 (2d Cir. 1971) .............................................................5

*Villanueva v. Villanueva*,
    2019 WL 6327396 (Conn. Super. Ct. Oct. 30, 2019), *aff'd*,
    260 A.3d 568 (Conn. App. 2021) ...................................................10

*Williams v. Obstfeld*,
    314 F.3d 1270 (11th Cir. 2002) ..................................................4, 12

*Yaffa v. Weidner*,
    717 F. App'x 878 (11th Cir. 2017)..........................................17, 18

*Yusuf v. Hamed*,
    2013 WL 5429498 (V.I. 2013) .......................................................10

**Statutes and Other Authorities:**

Fed. R. Civ. P. 37 .......................................................................*passim*

Fed. R. Civ. P. 37(b)(2).................................................................17

Fed. R. Civ. P. 37(b)(2)(A) ...........................................................14

Fed. R. Civ. P. 37(b)(2)(A)(i) ............................................. 14, 15-16

Fed. R. Civ. P. 37(b)(2)(A)(iii) ......................................................16

Fed. R. Civ. P. 37(c)......................................................................17

Fla. Stat. § 620.8202(3)(c) ...............................................................7

Fla. Stat. § 620.8401(b)(2) ..............................................................8

Fla. Stat. § 620.8401(b)(6) ..............................................................8

2 Discovery Proceedings in Federal Court § 22:14 (3d ed.)...................16

59A Am.Jur.2d Partnership § 89 (2d ed. 2015) .....................................11

A. Donn, R. Hillman & D. Weidner, The Revised Uniform Partnership Act
§ 202 (2022-2023 ed.) ........................................................................7, 11

C. Hurt et al., 1 Bromberg & Ribstein on Partnership (2d ed. 2016) .....................11

Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* (2012) .......14, 15

W. Gregory, The Law of Agency and Partnership § 175 (3d ed. 2001).................11

## I.    Introduction

The parties briefing to date crystallizes the issues for this Court's consideration.  Specifically, Appellant raised three issues in their initial brief: (1) the trial court's instruction on the issue of partnership relied on outdated law, and was not consistent with Florida's governing statutory scheme regarding partnership formation; (2) the trial court erred when it essentially excused Wright's perjury and intentional frustration of discovery on one of the central elements of the Estate's claims; and (3) the trial court erred in denying the Estate's Motion for New Trial based on the intentional, and repeated, violations of the Court's pretrial ruling on a Motion *in Limine*.

Appellee's responses to each of these points is remarkably thin on the merits.[3] He does not, for example, dispute that the Court's jury instruction on partnership relied on law that predated Florida's adoption of the Revised Uniform Partnership Act ("RUPA").  He does not dispute that it had been established by the Magistrate

---

[3] Again straying from the merits of the issues on appeal, Wright asserts in his Facts section there was no evidence that he and Dave were business partners or that Dave was involved with Bitcoin. The District Court held otherwise, ECF No. [796] ("…there is sufficient evidence in the record from which a reasonable jury could conclude that David Kleiman and Defendant entered into an oral partnership.").  In reality, there were numerous documents, many from Wright himself, evidencing the partnership and Dave's involvement in the Bitcoin project. *See* Opening Br. At 4-5. Wright dismisses these and numerous other similar documents as merely his effort to "inflate Kleiman's accomplishments so he'd be well regarded and long remembered," Response Br. at 6. That is not credible at all, particularly with respect to his statements to the police, courts, and other authorities.

Judge (and adopted by the trial court Judge) that he committed perjury and frustrated discovery. Nor does he deny that his counsel intentionally elicited evidence which clearly violated the Court's Order on the Estate's Motion in Limine.

Instead, the main thrust of Appellee's argument on each of the points above is that: (1) the Estate did not object clearly enough to the Court's partnership jury instruction; (2) Wright's conduct was not tied closely enough to the central issues in the case to warrant the remedies fashioned by the Magistrate Judge; and (3) the Estate did not object enough times to Wright's counsel's intentional violations of a Court Order excluding evidence.

As set forth below, enough is enough. In addition to the prejudice caused by the incorrect jury instruction on the central claim in the case, Wright is again asking the Courts to reward his flouting of the rules. Reversal is warranted.

## II.    The District Court Improperly Instructed the Jury on Partnership Formation.

### A. The Estate has not waived its objection to the partnership instruction.

Wright incorrectly asserts (Response Br. at 18) that the Estate waived its objection to the jury instructions because, instead of "pressing the district court to exclude the language it disputed, the Estate invited the court to add certain language if it kept the instruction." But an alternative request for lesser relief if the main request is denied surely does not constitute a "waiver" of the main request. The

Estate expressly objected to the jury charge defining partnership under pre-RUPA law. Nothing more was required to preserve the issue for appeal.

A waiver is a "voluntary, intentional relinquishment of a known right," and "the acts, conduct, or circumstances relied upon to show waiver must make out a clear case." *Griffin v. Habitat for Human. Int'l, Inc.*, 641 F. App'x 927, 932 (11th Cir. 2016) (quotations omitted). Waivers are disfavored, and courts "indulge in every reasonable presumption against waiver." *United States v. Hernandez*, 574 F.2d 1362, 1371 (5th Cir. 1978); accord, e.g., *TLC Properties, Inc. v. Pennsylvania Dep't of Transportation*, 2022 WL 2706104, at *4 (M.D. Pa. July 12, 2022) (collecting cases). Even an objection that is "far from a model of clarity" is sufficient to preserve an issue for appeal, as long as it "adequately informed the district court" of the issue. *United States v. Cochran*, 682 F. App'x 828, 835 (11th Cir. 2017); accord, e.g., *United States v. Harris*, 740 F.3d 956, 964 (5th Cir. 2014) (although not "a model of clarity," objection was "minimally sufficient to alert the court to the substance of the objection"); *Hudson v. D.C.*, 558 F.3d 526, 533 (D.C. Cir. 2009) ("inartful" objection sufficient because it was stated with "enough specificity to alert the district court and opposing counsel to the basis for the objection"). Objections are "liberally construe[d]" in favor of issue preservation. *Garcia v. Lee*, 2018 WL 2268129, at *6 (S.D.N.Y. May 17, 2018).

3

In the present case, during summary judgment briefing, the Estate asserted its position that it did not need to prove all five of the *Williams*/*Kislak* elements because RUPA statutorily overruled the "five required elements" test in favor of a test that "looks at the parties' relationship as a whole." ECF No. [549] at 12-14. The District Court declined to decide the issue at that time, finding that "under either analysis, Plaintiffs have demonstrated a genuine dispute of material fact that a partnership existed between Defendant and Mr. Kleiman." ECF No. [615] at 54-62.

The issue resurfaced at the charging conference. Although absent from a prior set of proposed instructions circulated by the Court, the evening before the conference the Court circulated a revised instruction (ECF No. [800-1] at 8) that added the "five required factors" test, based on *Williams v. Obstfeld*, 314 F.3d 1270 (11th Cir. 2002) and *Kislak v. Kreedian*, 95 So.2d 510, 515 (Fla.1957), each decided under pre-RUPA law.   The Estate expressly "object[ed] to the new instruction" and re-asserted its position that "the elements Defendant argues are no longer appropriate because of RUPA's defaults."  ECF No. [851] at 10-11; [802-1] at 1. The District Court asked the Estate's counsel, "But you would agree that the four factors of the elements are appropriate to instruct the jury?" Counsel unequivocally answered: "No. I believe that *William*s is pre-RUPA. And so I don't agree." ECF No. [851] at 11.

Wright's focus on the Estate's alternative request is misplaced as that request was made only if the Court rejected its initial position. ECF No. [851] at 11 ("our position is if Your Honor's going to do those elements, we believe it's appropriate to also instruct on the presumptions according to RUPA"); ECF No. [802-1] at 1 ("If the Court is going to keep the new instruction, we would ask that the court include that you don't have to intend to form a partnership ... and the relevant RUPA defaults").

A party does not waive an objection to a jury instruction by seeking the best alternative outcome if the district court overrules its primary objection. *See, e.g.*, *Marine v. Crown Equip. Corp.*, 1998 WL 171829 at *2 (9th Cir. 1998) ("acting with the knowledge that the court intended to give an instruction on misuse, appellant's submission of alternative instructions does not detract from his original objection"); *United States v. Squires*, 440 F.2d 859, 862 (2d Cir. 1971) (same); *Mary M. v. City of Los Angeles*, 814 P.2d 1341, 1346 (Cal. 1991) (an attorney who submits to the authority of an adverse ruling after making appropriate objections "does not waive the error in the ruling by proceeding in accordance therewith and endeavoring to make the best of a bad situation"); *Eric T. v. Nat'l Med. Enterprises, Inc.*, 700 A.2d 749, 759 n.20 (D.C. 1997) ("we know of no authority, and the plaintiffs have cited

none, suggesting that a party's request, in the alternative, ... constitutes a waiver of the primary contention").[4]

In sum, the Estate did not waive its argument by seeking the best alternative outcome after its requested instruction was denied, "endeavoring to make the best of a bad situation."

## B. The partnership instruction incorrectly stated current Florida law.

Conspicuous by its absence in Wright's brief is any mention at all of RUPA's plain language, which is inconsistent with the now defunct "five required elements" test. Indeed, Wright misstates RUPA's Uniform Comments which expressly state that RUPA *did* change the law on partnership formation. Finally, Wright's only other contention is that some post-RUPA cases have mentioned the old *Williams/Dreyfuss* elements but, with one exception, none of his cases, from any jurisdiction, involved the issue whether RUPA modified prior law on partnership formation. Numerous cases that have adjudicated this issue concluded RUPA changed prior law, and in light of RUPA's plain language, no other outcome makes sense.

---

[4] The "invited error" cases cited by Wright have no similarity to the present case. In *Ford ex rel. Est. of Ford v. Garcia*, 289 F.3d 1283, 1293–94 (11th Cir. 2002), "the court recited its understanding of the proximate cause requirement to which Appellants' counsel ***responded in agreement***," so any error was deemed invited. And there was apparently no pertinent objection at all in *Ray v. Ropes & Gray LLP*, 799 F.3d 99, 112 (1st Cir. 2015) (appellant just "requested a modification"), or in *Herbert Warren & Assocs., Inc. v. Ramada Inns, Inc*., 1991 WL 94382, at *1 (9th Cir. 1991) (no mention of any objection).

1. *The district court's instruction is inconsistent with the plain statutory language.*

The district court's instruction is at odds with RUPA.  For example, Fla. Stat. § 620.8202(3)(c), states that a partner who "receive[d] a share of the profits of a business *is presumed to be a partner* in the business," subject to certain exceptions not applicable here.

Under this rebuttable presumption, if a plaintiff proves he was entitled to receive a share of the profits of the business – and nothing more – he wins unless the defendant rebuts the presumption.  However, under prior law, and as the Court instructed here, he would lose summarily, because he failed to prove any duty to share in losses, any common purpose, any right to control, or any "proprietary interest." *See Kislak*, 95 So.2d 510 (Fla.1957); *Dreyfuss v. Dreyfuss*, 701 So. 2d 437, 438-39 (Fla. 3d DCA 1997) ("the absence of even one [of the five *Kislak* factors is] fatal to the finding of a partnership"). The leading RUPA treatise explains that this is a "*major change*[]" from prior law. A. Donn, R. Hillman & D. Weidner, The Revised Uniform Partnership Act § 202 (2022-2023 ed.).[5]

_____

[5] There was ample evidence in this case, much from Wright's own hand, that he and Dave agreed that Dave was entitled to a share of the profits. *See e.g.*, P-161 (the Estate can "cash out right now" for $12 million); P-867 ("Dave and I had a project in the US…. I am not looking for anything, just that Dave's estate gets what was in it"); P-727 (Wright was holding "Founder Shares" on "behalf of the late Dave Kleiman's interest in the business"); P-161 ("Dave and I arranged for the sale of around 500,000 BTC"; "Dave and I decided to start Coin-Exch so that we could lock in some of the value"; "I convinced [Dave] that we could make it to Oct 2014 when

Thus, in *Rafael J. Roca, P.A. v. Lytal & Reiter, Clark, Roca, Fountain & Williams*, 856 So.2d 1 (Fla. 4th DCA 2003), the court found sufficient evidence of partnership without requiring proof of each of the five "required elements." Wright objects that *Roca* "did not expressly criticize" *Dreyfuss* and other pre-RUPA cases, but there was no need for the court to do so.

Wright also incorrectly asserts (Response Br. at 25) that "the *Williams*/*Dreyfuss* factors are merely a stylized version of RUPA's default provisions". The older cases stated that ***proof*** of ***each*** of the five factors was ***required*** before a jury could properly find the existence of a partnership. The RUPA default provisions, however, do not require ***any*** particular type of proof ***at all***. Instead, they create certain defaults for written or oral partnership agreements. *See* Fla. Stat. § 620.8401(b)(2) (profits will be split evenly among partners and losses will be split in the same proportion as profits); *id*. § 620.8401(b)(6) (equal rights in the management and conduct of the partnership). The RUPA defaults ***replaced*** the former requirements of proof.

2. *Numerous cases and treatises confirm that the district court's instruction misstated the law.*

Wright misleadingly asserts (Response Br. at 21-22) that "numerous Florida federal and state courts" in post-RUPA cases have continued to apply the

---

if he needed we could take some of the . . . money . . and . . . both spend a little time on us time.").

*Williams*/*Dreyfuss* "five required elements" rule.  Although it is true that several courts have cited these older cases by rote, Appellant is not aware of a single federal or state case where a court 1) squarely faced the question whether RUPA modified the "five required elements" test and 2) held that this test survives RUPA. Quite the contrary, with one possible exception (from Iowa),[6] all the many courts that have addressed this issue have held that RUPA changed the old test.

For example, the Texas Supreme Court found that while "proof of all five common law factors was a prerequisite to partnership formation under the common law," a "totality-of-the-circumstances test" has replaced it under Texas's version of RUPA. *Ingram v. Deere*, 288 S.W.3d 886, 896 (Tex. 2009). Similarly, the Alabama Supreme Court has held that under RUPA there is no "arbitrary test," the court "looks to all the attendant circumstances in determining the existence of a partnership," and the five factors are just "[i]ndicia of the existence of a partnership." *Penney v. Penney*, 2021 WL 3828134, at *5 (Ala. Aug. 27, 2021). Likewise, the Nebraska Supreme Court has held that, under RUPA the "five indicia of co-ownership are only that; they are not all necessary to establish a partnership

---

[6] The only case from any jurisdiction that has even hinted possible disagreement with this interpretation of RUPA is the unpublished, intermediate appellate decision in *Hillman v. Cannon*, 2011 WL 6670657 at *3 (Iowa Ct. App. 2011) Putting aside the limited precedential value of an intermediate state court decision from outside Florida, *Hillman* did not involve the "five required elements" test at all.

relationship, and no single indicium of co-ownership is either necessary or sufficient to prove co-ownership…." *In re KeyTronics*, 744 N.W.2d 425, 441-43 (Neb. 2008).

Numerous cases from other jurisdictions are in full accord. *See, e.g.*, *Queen v. Schultz*, 747 F.3d 879, 886–87 (D.C. Cir. 2014) (whether a partnership exists turns "less on the presence or absence of legal essentials than on the intent of the parties gathered from their agreement, conduct, and the circumstances surrounding their transactions"); *McGregor v. Crumley*, 775 N.W.2d 91, 97–98 (S. Dak. 2009) ("no arbitrary test for determining the existence of a partnership"); *Villanueva v. Villanueva*, 2019 WL 6327396, at *3 (Conn. Super. Ct. Oct. 30, 2019), *aff'd*, 260 A.3d 568 (Conn. App. 2021) ("totality of evidence satisfied the test for formation of a partnership set by statute"); *Key Brands Int'l Ltd. v. Wilson*, 2019 WL 6622856, at *11 (C.D. Cal. Sept. 3, 2019) ("it is undisputed that Plaintiff and Defendants agreed to split the profits [and thus under RUPA] Plaintiff is presumed to be a partner in the business"); *Yusuf v. Hamed*, 2013 WL 5429498 *4 (V.I. 2013) ("no single factor is determinative, necessary to examine the ... relationship as a whole") (quotation omitted); *Griffith Energy, Inc. v. Evans*, 925 N.Y.S.2d 282, 283 (N.Y. App. 2011) ("No one factor is determinative; it is necessary to examine the ... relationship as a whole"); *Thale v. Collector Imports, LLC*, 2008 WL 4386769, at *3 (W.D. Ky. Sept. 23, 2008) ("no particular test" for existence of a partnership).

The leading treatises all agree with these decisions. *See* C. Hurt et al., 1 Bromberg & Ribstein on Partnership 2.04[A], 2.06[A] (2d ed. 2016) ("According to R.U.P.A, neither profit sharing nor control … is necessarily sufficient or absolutely necessary");[7] Donn, Hillman & Weidner, *supra* at § 202 (RUPA provision making profit sharing a rebuttable presumption was a "major change" in the law); W. Gregory, The Law of Agency and Partnership § 175 (3d ed. 2001) (RUPA replaces the older UPA "with some modifications," specifically "profit sharing creates a rebuttable presumption of partnership rather than the older language of prima facie evidence" and "any one factor is not conclusive"); 59A Am.Jur.2d Partnership § 89 (2d ed. 2015) (partnership existence determined by the "totality of the attendant facts and circumstances").

No authority cited by Wright even remotely suggests that any party raised, or any court considered, whether RUPA modified prior law mandating a "five required factors" test. In Wright's primary case, *Harbaugh v. Greslin*, 436 F. Supp. 2d 1315 (S.D. Fla. 2006), *aff'd*, 2007  WL 595962, at *1 (11th Cir. 2007), the court cited

---

[7] *See also id*. 2.06[B][2] (it is "not strictly true" that profit sharing is necessary for the existence of a partnership); *id*. 2.06[C][2] ("it is clear that one may be a partner without exercising control"); *id*. 2.06[D][2] (partnership may exist even if no sharing of losses); *id*. 2.06[E][2] (lack of capital contribution is "inconclusive"); *id*. 2.06[F][1] (lack of joint title to partnership property is "inconclusive"); *id*. 2.07[B] (in light of RUPA presumption, if proponent of partnership simply introduces evidence of profit sharing, he is "probably entitled to a directed verdict" that a partnership exists if his opponent fails to introduce evidence against partnership).

*Dreyfuss* and *Williams* for the proposition that "all" of the five factors must be proved before a partnership may be found to exist, but neither the parties nor the courts raised or alluded to any issue regarding whether the "five required elements test" survived the enactment of RUPA. *See* 2005 WL 4123175 (plaintiff's district court brief); 2006 WL 4877254 (plaintiff's appellate brief). The same is true for every other case cited by Wright.

    3. *The Estate is entitled to reversal or at least to certification.*

Wright does not dispute that if the District Court's instruction incorrectly required the jury to find all five "required elements," the Estate was prejudiced, and the judgment below must be reversed. *See Simmons v. Bradshaw*, 879 F.3d 1157, 1162 (11th Cir. 2018) (new trial required if instruction at the least induced "a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations"); *SEC v. Yun*, 327 F.3d 1263, 1282 (11th Cir. 2003) (new trial if instruction "erroneous and prejudicial").

If this Court has any "substantial doubt" whether RUPA changed this point of Florida law, at the least, the issue should be referred to the Florida Supreme Court for definitive resolution. *Jackson Nat'l Life Ins. Co. v. Crum*, 25 F.4th 854, 862 (11th Cir. 2022) ("Under our precedent, we should certify questions to the state supreme court when we have substantial doubt regarding the status of state law") (quotations omitted); *Cordero v. Transamerica Annuity Serv. Corp.*, 34 F.4th 994, 999 (11th Cir.

2022) (same). The Estate submits that RUPA is sufficiently clear for this Court to reverse the decision below on its own, but if there is any doubt, the Court should certify the issue.

### III. The District Judge Abused Her Discretion By Applying An Incorrect Legal Standard To Reverse Issue Sanctions the Magistrate Judge Imposed Under Rule 37.

#### A. The District Judge applied an incorrect legal standard that ignores Rule 37's plain text and syntax, and conflicts with Supreme Court and Eleventh Circuit precedent.

Wright argues that the District Judge got it right when she held that issue sanctions cannot be imposed under Rule 37 unless they "cure" the "discovery abuse." ECF No. [373] at 20; *see* Response Br. at 31-35 & 34 n. 26 (arguing courts can only deem established facts with "a clear nexus" to the "discovery abuse" or "derelictions"). But that is not the standard. In *Insurance Corp. of Ireland v. Campagnie des Bauxites de Guinee*, the Supreme Court held that Rule 37 authorized courts to deem facts established so long as they are related to the ultimate issue or "claim" the moving party seeks to establish through the discovery at issue. 456 U.S. 694 (1982). Here, that issue or "claim," as both the Magistrate Judge *and* the District Judge found, was the existence of a partnership between Wright and David Kleiman, and the provenance/ownership in its assets. ECF No. [277] at 27; [311] at 21; [373]

at 20.  The Deemed Facts[8] clearly related to those claims, and thus were proper under the correct legal standard.

That standard—not the restrictive one applied by the District Judge—is also consistent with this Court's interpretation of Rule 37 to give courts broad discretion "to fashion sanctions against parties who fail to engage in discovery . . . or otherwise disobey court orders."  *U.S. v. Twenty-Nine Pre-Columbian and Colonial Artifacts From Peru*, 695 F. App'x 461, 466 (11th Cir. June 2, 2017).

The plain text of Rule 37 conflicts with the legal standard advocated by Wright and adopted by the District Judge.  As a sanction for not obeying a discovery order, Rule 37(b)(2)(A) authorizes district courts to issue "just orders," which include directing that matters embraced in the discovery order (ECF No. [277]) *or other designated facts* be taken as established for purposes of the action, as the prevailing party claims[.]" Fed. R. Civ. P. 37(b)(2)(A)(i) (emphasis added).  Plainly, a court's ability to deem established "designated facts" *other than* those "embraced in the order" means those facts necessarily would *not* cure the specific "discovery violations."  *See* Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* (2012), ("Under the conjunctive/disjunctive canon, *and* combines items while *or*

---

[8] The Deemed Facts were that (i) a 50/50 partnership existed between Wright and David Kleiman; (ii) Bitcoin-related intellectual property developed by Wright, if any, and bitcoin mined by Wright, if any, were property of that partnership; and (iii) the Estate retained an ownership interest in that property. ECF No. [277] at 28-29.

creates alternatives.") (emphasis in original).  Indeed, if issue sanctions had to cure the specific discovery violations at issue, then the reference to "other designated facts" would have no apparent meaning apart from "matters embraced in the order," and thus violate the surplusage cannon.  *See Davis v. Oasis Legal Fin. Operating Co., LLC*, 936 F.3d 1174, 1180 (11th Cir. 2019) (explaining that this Court "disfavor[s]" interpretations that render clauses "meaningless, redundant, or mere surplusage") (quotation marks omitted); *see also* Scalia & Garner, *supra*, at 174.

If Appellee's argument were correct, *Insurance Corp. of Ireland* also would have come out the other way.  There, the specific discovery violation was the defendant's failure to produce business interruption insurance policies, and the issue/claim deemed established was the existence of contacts with Pennsylvania sufficient to establish personal jurisdiction over the defendant.  *See id.*, 456 U.S. at 698.  Under Wright's and the District Judge's standard, that issue sanction would have been improper "because the amount of [contacts] by the Defendant remain[ed] unknown, or at the very least, [was] still at issue." ECF No. [373] at 20.  But as the Supreme Court and this Court has explained, that is not the standard; rather, consistent with Rule 37's text, the proper standard simply "reflects the rule of *Hammond Packing Co. v. State of Arkansas*, 212 U.S. 322 (1909)," *i.e.*, that the facts deemed establish relate to the ultimate issue or "claim" the party "was seeking to establish through discovery."  *Insurance Corp of Ireland,* 456 U.S. at 709.  Rule

15

37(b)(2)(A)(i)'s text makes this clear in including both "other designated facts" and the clause "as the prevailing party claims." *See* Fed. R. Civ. P. 37, Notes of Adv. Committee on Rules—1937 (explaining Rule 37 is "in accord with *Hammond Packing*"); *see* 2 Discovery Proceedings in Federal Court § 22:14 (3d ed.) ("The facts that will be taken as established typically related to allegations in a complaint or an answer to a complaint. . . . However, facts relating to claims contained in a motion may also be taken as established.").

Wright incorrectly argues that this Court's decision in *Serra Chevrolet, Inc. v. General Motors Corp.*, 446 F.3d 1137, 1152 (11th Cir. 2006), and two later unpublished decisions, adopted a legal standard limiting courts' ability to impose sanctions under Rule 37 to those with a "nexus between the documents the court ordered produced and the magistrate's sanction." Response Br. at 32-33. But *Serra Chevrolet* says nothing of the sort. It just applied *Insurance Corp. of Ireland*, holding that affirmative defenses (of res judicata, issue preclusion, judicial estoppel, and law of the case) the trial court struck in that case "had no apparent relationship with the discovery" at issue (failing to produce information about satellite car dealerships and vehicle allocation data), which was relevant only to the plaintiffs' causes of action, not the affirmative defenses.[9] *Serra Chevrolet*, 446 F.3d at 1141-

---

[9] Also, unlike here, *Serra Chevrolet* involved Rule 37(b)(2)(A)(*iii*) sanctions, and the trial court imposed them *sua sponte*.

42, 1152. Thus "the legal defenses were not 'specifically related to the particular "claim" which was at issue in the order to provide discovery.'" *Id.* (quoting *Ins. Corp. of Ireland*, 456 U.S. at 707); *accord Compaq Computer Corp. v. Ergonome Inc.*, 387 F.3d 403, 414 (5th Cir. 2004) (Rule 37(b)(2) sanction of deeming an entity an alter ego of defendant was "specifically related" to the "'claim' at issue in Compaq's repeated discovery requests" given that the "[t]he purpose of the discovery . . . was to discover facts that would support a finding of alter ego").[10] The two unpublished cases Wright cites (*U.S. upon rel. of Tenn. Valley Auth. v. Easement & Right-of-Way Over 4.42 Acres of Land*, 782 F. App'x 945, 948–49 (11th Cir. 2019) and *Pete's Towing Co. v. City of Tampa, Fla.*, 378 F. App'x 917, 920 (11th Cir. 2010)) are even further afield; they involved sanctions under Rule 37(c), and only cite *Serra Chevrolet* for the standard of review on appeal.

*Yaffa v. Weidner*, on the other hand, cited in the Estate's Opening Brief, did discuss *Serra Chevrolet* and explained it required only that Rule 37 sanctions "have some rationale and some connection to the sanctioned conduct" to comport with due process, consistent with the text of Rule 37, *Hammond Packing*, and *Insurance Corp. of Ireland*. *See Yaffa v. Weidner*, 717 F. App'x 878, 885 (11th Cir. 2017). Wright

---

[10] *Serra Chevrolet* used the word "nexus" just once, when quoting the defendant's argument on appeal that there was "absolutely no nexus" between discovery at issue and the sanctions, *i.e.*, the affirmative defenses that were entirely unrelated to the plaintiff's claims. *Serra Chevrolet*, 446 F.3d at 1152.

tries to distinguish *Yaffa* because it involved monetary sanctions under Rule 16 and "not a case-ending 'issues sanction' under Rule 37," but he fails to explain how either has any bearing on *Yaffa*'s discussion of *Serra Chevrolet*. It does not. Wright similarly tries to distinguish some (but not all) of the decisions by other Circuits cited in the opening brief that contradict the legal standard applied by the District Judge here (*see* Response Br. at 37), on the grounds that the sanction at issue "did not amount to a default judgment." Response Br. at 34. But the Deemed Facts in no way "amount[ed] to a default judgment" against Wright on *any* of Plaintiffs' causes of action – indeed, he even still had some affirmative defenses remaining. It is also irrelevant because Rule 37 authorizes courts to render defaults judgments against disobedient parties like Wright. The only difference is that such "severe" sanctions require a finding of willfulness or bad faith, which the Magistrate Judge also found here. *See* ECF No. [277] at 27.

### B. The District Judge's Order denying a subsequent motion for sanctions pursuant to the Court's inherent authority does not excuse the Court's abuse of discretion in applying its own incorrect legal standard.

Wright's only response to the Estate's argument that the District Judge also abused her discretion by ignoring or misunderstanding that the evidence established that her own incorrect legal standard was met, is (1) he is not aware of any Circuit case holding that a district court abused its discretion "in declining to impose case-ending issue sanctions," and (2) any abuse of discretion is irrelevant because the

District Judge "considered this issue . . . [a] second time" in denying a subsequent motion for sanctions.  Response Br. at 28, 35-36.  The former is merely a straw man, and the latter is incorrect and thus irrelevant.  None of the Deemed Facts were "case-ending," and a quick search reveals decisions by both this Court and other Circuits that held district courts abused their discretion in denying sanctions.  *See, e.g.*, *Peer v. Lewis*, 606 F.3d 1306 (11th Cir. 2010); *Rowe*, 703 F. App'x at 780; *Chicago Truck Drivers, Helpers & Warehouse Workers Union Pension Fund v. Bhd. Lab. Leasing*, 166 F.3d 1269, 1270 (8th Cir. 1999).  Further, the District Court did not "reject for a second time" (Response Br. at 28) the Rule 37 sanctions at issue here.  Plaintiffs subsequently moved for default sanctions or, alternatively, lesser sanctions including deeming established certain facts (similar but not identical to the Deemed Facts), under the Court's inherent authority, *not* Rule 37, and for Wright's perjury, forgeries, and judicial abuse "since the Objections Order was entered," *not* just Wright's conduct at issue in the Rule 37 motion.  ECF No.[507]; [595] at 2, 19, 36.[11]  Wright otherwise does not address the evidence in the Opening Brief showing the District Court abused its discretion by ignoring or misunderstanding that evidence, on which the Magistrate Judge based his decision, in holding that the Deemed Facts did not

---

[11]  Wright refers repeatedly to the fact that the Court's order denying Plaintiffs' motion for default sanctions was 39 pages.  Response Br. at 15, 36.  In addition to being irrelevant, 33 pages set forth Wright's misconduct and the parties' arguments about it, and three pages set forth the legal standards.  *See* ECF No. [595] at 1-35.

specifically relate to the discovery issues that were pending before the Magistrate Judge. *See* Response Br. at 42-43; ECF [277] at 27-28 (finding Wright's failure to comply with discovery orders "prevented Plaintiffs from obtaining evidence that the Court found relevant to Plaintiffs' claim that Dr. Wright and David Kleiman formed a partnership to develop Bitcoin technology and to mine bitcoin," and that "Plaintiffs have also been prejudiced by not being able to try to trace the bitcoin that was mined"). For those reasons, the District Court's application of its own incorrect legal standard was an abuse of discretion and must be reversed. *See e.g.*, *Fuentes v. Classica Cruise Operator Ltd., Inc.*, 32 F.4th 1311, 1321 (11th Cir. 2022) (abuse of discretion where district court's decision concerning whether to impose sanctions "constitute[s] a clear error of judgment"); *Serra Chevrolet*, 446 F.3d at 1147 (abuse of discretion where district court "ignores or misunderstands the relevant evidence, and bases its decision upon considerations having little factual support").

Finally, the Court also should vacate the judgement and remand for a new trial for the separate reason that Wright does not dispute the Estate's alternative argument that, at the very least, the District Court should have given a spoliation instruction (*see* Opening Br. at 44).

**IV.    The District Court Abused Its Discretion In Denying The Estate's Motion For A New Trial Despite Wright's Multiple, Intentional Violations Of The *In Limine* Order.**

In his Response, Wright does not deny that his attorney's questions were purposeful in injecting the sibling relationship[12] into the trial.  Nor does he deny that the Court had excluded this evidence in a pretrial Order granting Plaintiff's motion *in limine* of the issue.  Yet, Wright advances a tortured reading of the Court's pretrial *in limine* Order to excuse this obvious misconduct.[13]

Specifically, Wright argues that the Court's Order did not need to be followed because it was "preliminary" and open to reconsideration during trial.  In support, he cites the Order stating "[A]ny party may seek reconsideration at trial in light of the evidence actually presented and shall make contemporaneous objections when evidence is elicited."  ECF No. [623] at 3.  Wright interprets this to mean that the

---

[12] *See* Response Br. at 49 ("These two questions did *not* violate the order *in limine* because they were asked for a proper purpose…").

[13] In addition to violating the MIL to impugn the character of Ira Kleiman, Wright's counsel used testimony he knew or should have known to be false to label Ira as a liar to the jury.  *See e.g.*, ECF No. [820], [848], P-767; ECF No. [851] at 162.  Specifically, Wright's counsel solicited testimony from Dave's friend that they never discussed bitcoin even though that testimony contradicted a sworn declaration they had the friend execute, the friend's deposition testimony, and the friend's own emails. *See e.g.*, *id.* Then in closing, they told the jury that Ira was lying about these very same discussions.  ECF No. [851] at 162.

Order entitled his counsel, as they did multiple times at trial, to ask any question they wanted because the onus is on the other party to object even if it violates an existing Court Order. This, of course, turns the whole purpose of an *in limine* ruling on its head.

Plaintiffs moved, pretrial, for an Order precluding Defendant from introducing evidence of the sibling relationship between Ira and David Kleiman. Plaintiff did so because the issue was legally irrelevant, and would undoubtedly cause severe prejudice to the Plaintiffs. The Court agreed, unequivocally and definitively granting the Estate's motion. Specifically, the Court held that "evidence about Ira Kleiman's sibling-relationship with Mr. Kleiman is excluded except as to the Thanksgiving Day 2009 dinner conversations." *See* Order, ECF No. [623] at 15. Nevertheless, Defendant elected to treat the Court's Order as merely advisory and repeatedly violated it, apparently because he had concluded that this irrelevant, unduly prejudicial evidence was "essential"[14] to his defense.[15]

The Court's *in limine* Order was clear and it was final. While it is true that it did allow a party to ask the Court to reconsider it during trial, it ordered that it be done by way of a proffer outside the presence of the jury. *Id.* ("any party may seek

---

[14] See Response Br. at 49.

[15] Defendant appears to excuse his counsel's behavior arguing that he intentionally violated the Court's pretrial ruling only 8 times. The undersigned is aware of no law that allows a party to purposely violate a Court Order, so long as they do so less than 9 times.

reconsideration at trial in light of the evidence actually presented…"The court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion *in limine*.").

Relatedly, Wright places great weight on the fact that certain questions did not elicit any testimonial evidence from the witness. Response Br. at 46-47. He argues that because the prohibited questions, without answers, were not technically evidence, the questions could not have prejudiced the verdict because the jury was not permitted to rely upon or consider them. This line of thinking would allow for counsel to ask any question it wants regardless of the Court's rulings because only the witnesses' answer has the potential to violate the Order.[16] However, a question alone, regardless of its response, can violate a motion *in limine* and prejudice a party during trial. *See e.g., Harley-Davidson Motor Co. v. Daniel*, 244 Ga. 284, 285, 260 S.E.2d 20, 22 (1979) ("The purpose in filing a motion *in limine* . . . is to prevent the asking of prejudicial questions . . . **It is the prejudicial effect of the questions asked or statements made in connection with the offer of the evidence, not the prejudicial effect of the evidence itself, which the motion *in limine* is intended**

---

[16] In support of this notion, Wright cites *Scott v. Dunnam* 2016 WL 1452413, at *4 (S.D. Ga. 2016). This case, however, does not stand for the proposition that without an answer, there cannot be prejudice. Rather, the Court here held that it was able to "halt the line of questioning" before any questions were asked that clearly violated the motion *in limine*. The initial question that was asked, which was whether the Plaintiff loved his children, was not enough for the jurors to connect this to the excluded topic of Plaintiff's prior sexual assault convictions.

**to reach**.") (emphasis added); *O2 Micro Int'l Ltd v. Beyond Innovation Tech.*, 2009 WL 2047617, at *2 (E.D. Tex. July 10, 2009) (question posed violated order *in limine* and was intended to cause prejudice).

Indeed, many of Wright's counsel's questions contained exactly the evidence the Court ruled should not be presented to the jury. For example, in just two questions (that were unanswered due to the Estate's sustained objections), Wright's counsel communicated to the jury that Ira Kleiman did not see his brother for years and rarely spoke to him on the phone (**Q**: Let me restate the question. The last time you saw your brother was in 2009?" ECF No. [840] 23:12-24:1; **Q**: …Would you agree with me that between March 12 and April 7th, 2013, on the cell phone at least, you spoke with David Kleiman six times?" ECF No. [841] at 68:7-21). These questions, regardless of their answers or lack thereof, were in direct violation of the Court's Order and prejudiced the Estate (and undoubtedly the reason they were asked).

Lastly, Wright argues that because the Estate "made a tactical decision" not to object to certain questions so as to not direct the jury's attention to the improper questions, it must sit with the consequences of that choice. Yet again, Wright shifts the blame to the Estate for his counsel's purposeful violation of the Order. Within the first few questions of Ira Kleiman's cross-examination, Wright's counsel introduced the sibling relationship (see Opening Br. at 12). Even though the Estate

immediately objected both times, the objections were overruled and the request for a side-bar was denied without any explanation. Counsel for the Estate was then forced to make strategic choices to manage Wright's counsel's abuse of the Order with the somewhat unpredictable rulings from the Court, all while not drawing the jury's attention to the very thing it wanted to keep out. This is not a burden the Estate should bear, and the Estate has not "waived its right to complain."[17]

## CONCLUSION

For the reasons stated above and in our Opening Brief, the judgment below against the Estate should be reversed, and the case should be remanded for a new trial on the Estate's claims against Wright.

---

[17] Wright cites to *Cephus v. CSX* to say that a party's failure to object should not be excused on the basis that an objection would draw attention to the misconduct. That is not the holding of this case. Instead, *Cephus* exemplifies the rule that an issue may be preserved without objection where the party has made its position clear, and a further objection would be futile. *Cephus v. CSX Transp., Inc.*, 771 Fed. Appx. 883, 894-95 (11th Cir. 2019).

Respectfully Submitted,

*/s/ Devin (Velvel) Freedman*
Devin (Velvel) Freedman
Freedman Normand Friedland LLP
1 SE 3rd Avenue, Suite 1240
Miami, Florida 33131
(305) 753-3675
vel@fnf.law


Andrew Brenner
BOIES SCHILLER FLEXNER LLP
100 SE 2nd Avenue, Suite 2800
Miami, Florida 33131
abrenner@bsfllp.com

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) as the brief contains 6,490 words, excluding those parts exempted by 11th Cir. Local R. 32-4.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) as this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

*/s/ Devin (Velvel) Freedman*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 9, 2023, a copy of the brief was served on all counsel of record via CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.


*/s/ Devin (Velvel) Freedman*